Robert P. Goe – State Bar No. 137019
Thomas J. Eastmond – State Bar No. 211591
**GOE & FORSYTHE, LLP**
18101 Von Karman Avenue, Suite 1200
Irvine, CA 92612
rgoe@goeforlaw.com / teastmond@goeforlaw.com

Telephone:  (949) 798-2460
Facsimile:   (949) 955-9437

General Counsel for Steven Speier, Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION**

| | |
|---|---|
| In re:<br><br>JOHN E. TACKETT and ELLEN O. TACKETT,<br><br><br>Debtors.<br>―――――――――――――――<br>STEVEN M. SPEIER, solely in his capacity as Chapter 7 Trustee for the Bankruptcy Estate of John E. Tackett and Ellen O. Tackett,<br><br>Plaintiff,<br><br>vs.<br><br>CONESTOGA SETTLEMENT SERVICES, LLC, a Delaware limited liability company; CONESTOGA INTERNATIONAL HOLDINGS LLC aka CONESTOGA INTERNATIONAL LLC, a Delaware limited liability company; CONESTOGA TRUST, a Delaware statutory trust; PROVIDENT TRUST GROUP, LLC, a Nevada limited liability company; DE LEON & WASHBURN, P.C., a Texas professional corporation; JEFF CONVERSE, an individual resident of California; MICHAEL WOODS, an individual; resident of Texas; MICHAEL McDERMOTT, an individual resident of Puerto Rico; THOMAS WASHBURN, an individual resident of Texas; and HECTOR DE LEON, an individual resident of Texas,<br><br>Defendants. | Case No. 6:16-bk-15813-MH<br><br>Adversary Case No.:<br><br>Chapter 7 Proceeding<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF WRITTEN CONTRACT**<br>2. **RESCISSION AND RESTITUTION FOR FRAUD**<br>3. **MONEY HAD AND RECEIVED**<br>4. **UNJUST ENRICHMENT**<br>5. **FRAUD**<br>6. **NEGLIGENT MISREPRESENTATION**<br>7. **NEGLIGENCE**<br>8. **RESCISSION AND RESTITUTION FOR SALE OF UNQUALIFIED SECURITIES [Cal. Corp. §25503)**<br>9. **DAMAGES FOR SALE OF UNQUALIFIED SECURITIES [Cal. Corp. §25503)**<br>10. **RESCISSION: SECURITIES: MISREPRESENTATION [Cal. Corp. §25501]**<br>11. **DAMAGES: SECURITIES: MISREPRESENTATION [Cal. Corp. §25501]**<br>12. **CONTEMPT FOR WILLFUL VIOLATION OF AUTOMATIC STAY PURSUANT TO   11 U.S.C. § 105**<br>13. **ELDER FINANCIAL ABUSE [CAL. Welf & Inst. Code § 15600 et seq.]** |

For his Complaint, Plaintiff Chapter 7 Trustee Steven Speier ("Trustee" or "Plaintiff"), solely in his capacity as duly appointed Trustee for the bankruptcy estate of John E. Tackett and Ellen O. Tackett ("the Tacketts" or "Debtors"), hereby alleges and avers as follows:

## STATEMENT OF JURISDICTION, PARTIES AND PROCEEDINGS

1.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a), as this is a core proceeding under 28 U.S.C. § 157(b)(2)(A).  Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a) because this is a civil proceeding arising in and/or related to the Debtor's chapter 7, currently pending in the Riverside Division of the United States Bankruptcy Court for the Central District of California.

2.      On June 29, 2016, (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United State Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California.

3.      The Trustee is the representative of the bankruptcy estate whose authority in this regard includes, but is not limited to pursuing, suing on, and settling all actions, arising under Bankruptcy Code sections 502, 510, 541, 542, 544, 545, 547 and 551 through and/or 553, or under related state or federal statutes and common law, including without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such actions.  The Trustee is also empowered to prosecute, pursue, and resolve all objections to claims in the Bankruptcy Case.

## PARTIES

4.      Trustee brings this action solely in his capacity as Trustee for the benefit of the estate and its creditors in the Bankruptcy Case.  To the extent that the Trustee hereby asserts claims under 11 U.S.C. § 544(b), the Trustee is informed and believes an, on that basis alleges thereon, that there exists in these cases one or more creditors holding unsecured claims allowable under 11 U.S.C. § 502 or that are not allowable only under 11 U.S.C. § 502(e) who could have avoided the respective transfers or obligations under California or other applicable law before the petition was filed. Pursuant to Bankruptcy Rule 7008, the Trustee consents to entry of final orders and/or judgment by the Bankruptcy Court.

2

1       5.     The Trustee was appointed after the filing of the Bankruptcy Case.  As a result, the

2   Trustee does not have personal knowledge of many of the facts alleged in this Complaint that

3   occurred prior to its appointment and, therefore, alleges all those facts on information and belief.

4   Trustee reserves its right to amend this Complaint to allege additional claims against the

5   defendants.

6       6.     Defendant Conestoga Settlement Services, LLC ("Conestoga") is a limited liability

7   company formed under the laws of the State of Delaware.

8       7.     Defendant Conestoga International Holdings, LLC ("CI") is a limited liability

9   company formed under the laws of the State of Delaware. The Trustee is informed and believes

10   and on that basis alleges that CI is the parent company, successor in interest, or alter ego of

11   Conestoga.

12       8.     Defendant Conestoga Trust ("CT") is a Delaware statutory trust. The Trustee is

13   informed and believes and on that basis alleges that the function and purpose of CT is to serve as

14   the vehicle for holding the "life settlement" securities that are referenced in this action.

15       9.     Defendant Provident Trust Group, LLC ("Provident") is a Nevada limited liability

16   company.

17       10.    Defendant De Leon & Washburn, P.C. ("DL&W") is a Texas professional

18   corporation.

19       11.    Defendant Jeff Converse ("Converse") is an individual resident of California. The

20   Trustee is informed and believes that Converse is not licensed in the securities industry in any

21   capacity.

22       12.    Defendant Michael Woods ("Woods") is an individual resident of Texas. The

23   Trustee is informed and believes and on that basis alleges that at all times relevant hereto, Woods

24   was and acted as the agent of Conestoga for purposes of the transactions referenced herein.  The

25   Trustee is informed and believes that Woods is not licensed in the securities industry in any

26   capacity.

27       13.    Defendant Michael C. McDermott ("McDermott") is an individual resident of

28   Puerto Rico. At all times relevant hereto, McDermott was Manager of Conestoga, the sole member

1   and President of CI, and the trustor of CT. The Trustee is informed and believes and on that basis

2   alleges that McDermott also controlled the largest single block of membership interests in

3   Conestoga.  The Trustee is informed and believes that McDermott is not licensed in the securities

4   industry in any capacity.

5         14.     Defendant Thomas Washburn ("Washburn) is an individual resident of Texas, and

6   a controlling shareholder or member, with Defendant Hector De Leon, of Defendant DL&W.

7         15.     Defendant Hector De Leon ("De Leon") is an individual resident of Texas, and a

8   controlling shareholder or member, with Defendant Washburn, of Defendant DL&W.

9         16.     Each defendant alleged to have committed any act did so pursuant to and in

10   furtherance of a common plan, scheme and conspiracy and as the agent for each and every co-

11   defendant.  In particular, each defendant acted in conspiracy to violate the provisions of the

12   California Corporate Securities Law ("CSL"), Cal. Corp. Code §25500 et seq. The Trustee is

13   informed and believes and on that basis alleges that Conestoga, CI, and/or CT operate, and/or

14   operated during the transactions herein referenced, as a multi-level marketing scheme for the sale

15   of securities.

16         17.     The Trustee is informed and believes and on such information and belief alleges

17   that, at all relevant times, each and every defendant, directly or indirectly controlled other co-

18   defendants by knowingly inducing, or by knowingly providing substantial assistance to other co-

19   defendants, to violate the provisions of the CSL, as alleged in the complaint within the meaning of

20   California Corporations Code section 25403.

21

22               **ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

23         18.     Debtor John E. Tackett ("John") and Ellen O. Tackett ("Ellen") are 68 and 66 years

24   old, respectively, and have been married since 2000.

25                         **Ellen's Inheritance**

26         19.     Prior to the investments of a total of $250,000 with Conestoga, comprising the

27   majority of their savings, as set forth in greater detail below, the Tacketts had very limited

28   investment experience. In or about 1998, Ellen invested a $35,000 divorce settlement involved

with the dissolution of her first marriage in mutual funds. Those investments were liquidated (significantly reduced by the 2008 recession) between 2006 and 2009, to provide funds for living expenses.

20.    In February, 2012, Debtor Ellen O. Tackett ("Ellen") inherited an interest in a house located at 716 Bayonne Street, El Segundo, California, when her mother (her last surviving parent) passed away. Ellen and her sister Evelyn (who also inherited an interest in the Bayonne Street property, and was living there along with her son and his family) agreed that Evelyn would buy out Ellen's interest. Pursuant to this agreement, Evelyn and Ellen obtained a loan and paid Ellen the sum of $300,000.

21.    Approximately $50,000 of these funds was used to pay certain of the Tacketts' debts, for home repairs, and for other miscellaneous expenses, leaving $250,000.

**Converse Introduces the Tacketts to Conestoga's Life Settlement Investment Scheme**

22.    From 2003 to the present, Debtors have been Amway United States ("Amway") Individual Business Owner ("IBO") distributors. Amway is a multilevel marketing company where individual distributors (IBOs) can market Amway health, beauty and home care products to customers and mentor other people to become IBOs. IBOs may earn income from the products they sell, plus compensation based on the sales they and people they have mentored have generated. Until 2014, the Tacketts actively participated in Amway networking functions, when they had to stop due to John's declining medical condition.

23.    At a large, weekend long Amway convention in Las Vegas, Nevada in April 2012, the Tacketts encountered Converse, with whom they were acquainted through Amway, which Converse also worked with. During a conversation that developed, Converse had a short conversation with John about an opportunity to make life settlement investments with Conestoga, and how they were sound investments based on the fact that everybody dies and when they do, their insurance policies pay out. Converse and John arranged to have further conversations later.

24.    In a life settlement contract, the beneficiary under a life insurance policy sells his or her interest to a third party, who in turn becomes the beneficiary who will receive the insurance benefit when the insured dies. Essentially, the purchaser wagers that the insured will die soon

1  enough that the total of the cash paid to acquire the policy, plus the premiums that must be paid to

2  keep the policy in force, will be less than the ultimate death benefit, yielding a positive return.

3      25.    Conestoga is in the business of entering into such life settlement contracts to

4  acquire policies, and in turn selling participation interests in those policies to investors.  The

5  investors' funds may not be withdrawn, and there is no payout until the insureds die.

6  **First Meeting with Converse (April 2012)**

7      26.    Later in April, 2012, Converse met with the Tacketts at a Panera Bread casual

8  restaurant in Riverside, California, for approximately 1.5 to 2 hours.

9      27.    During this meeting, Converse stated that he represented Conestoga as a selling

10  agent. He discussed Conestoga's life settlement investment opportunities. He told the Tacketts

11  they would have to invest anywhere between $150,000 to $200,000 with Conestoga. He continued

12  to explain why this was a sound investment opportunity, and gave examples (including but not

13  limited to Warren Buffett) of people who made life settlement investments.

14      28.    Converse stated that several "Amway Diamonds" (Amway distributors who had

15  achieved a certain level of success) were making life settlement investments. He stated that

16  Michael Woods (the above-defined "Woods"), a successful and wealthy Amway Diamond who

17  resided in Texas, with whom the Tacketts were familiar as a motivational Amway speaker, was

18  involved with Conestoga, although Converse did not explain Woods' involvement in detail.

19      29.    Converse stated that the Tacketts might not be qualified for the investment, but that

20  he would talk with "his supervisors" about their participation and get back to them. The Tacketts

21  were excited by the opportunity Converse had described. The Trustee is informed and believes

22  that the principal one of these unnamed "supervisors" was defendant Woods.

23  **Second Meeting with Converse (April/May 2012)**

24      30.    About two to five days after this initial meeting, Converse called the Tacketts and

25  informed them they were approved and qualified by his supervisors. He asked if they wanted to

26  pursue making the investment, and they set up another meeting at the same Panera Bread in

27  Riverside.

28

31.     This meeting took place in late April or early May of 2012, and also took approximately 1.5 to 2 hours. Converse presented information to the Tacketts with a professionally prepared "flip chart," with the basics in chart form of what Converse had explained during the first meeting. Converse delivered his sales presentation with the same exuberance the Tacketts had heard him display at Amway rallies when Converse had been a speaker there. The presentation described scenarios where the investment could double the Tacketts' money in seven years.

32.     Converse stated that "his supervisor" would prefer that the Tacketts invest the $250,000 from Ellen's share of the funds from the mortgage of the house she and her sister had inherited from their mother. A third meeting was tentatively arranged. The Trustee is informed and believes and on that basis alleges that this unnamed "supervisor" was defendant Woods.

**Third Meeting with Converse (Mid-May 2012)**

33.     The third meeting (again at Panera Bread) took place in mid-May, 2012, and lasted approximately 30-45 minutes. Converse ran through his flip chart again as a refresher. The Tacketts had questions about the information in the presentation. Converse explained that a portion of the investment funds would be for the purchase of a percentage of each policy, and a portion of the funds would be held in reserve to continue paying premiums in the event that the insureds lived past their life expectancy dates.

34.     Converse stated that there was approximately an average of five years of premium monies that would be held in an escrow account on each policy. At that point, Converse chuckled, and said, "Off the record though, if you know what I mean, we have selected these policies for your investment because all these folks already have one foot in the grave so that money won't ever be used for premiums." He and the Tacketts joked about whether they should "pray for the old folks to be in good health, or for a quick end to a long-lived life," commenting on how amusingly morbid the conversation was.

35.     The Tacketts asked about what would happen to the money being held in the escrow account after the insured passes away and the insurance proceeds are distributed to investors. Converse told them that the money in the escrow account would be returned to them,

1  and that they would be able to reinvest the money in another policy or have it deposited into their

2  checking account.

3      36.      The Tacketts left this third meeting with the understanding that they would make a

4  total investment of $250,000, using Ellen's inheritance money, and that they would set up another

5  meeting to sign the paperwork.

6      **Fourth (Rushed) Meeting: Agreement Signed, May 31, 2012**

7      37.      This fourth meeting took place, again at Panera Bread, on May 31, 2012. This

8  meeting was very brief, lasting between 15 and 20 minutes. Converse told the Tacketts that he was

9  in a "rush" because he had booked another meeting too close in time to theirs, and apologetically

10 asked if the Tacketts might just quickly sign the contracts, as that was "just a formality" at that

11 point.

12     38.      Without time to read or review the documents Converse brought, the Tacketts

13 quickly signed the contract (the "Life Settlement Agreement") where they had been tagged in

14 advance by Converse or another party (not the Tacketts) for signature. A true copy of the Life

15 Settlement Agreement, with the attachments to it, is attached hereto as Exhibit 1. Defendant

16 Woods' name appeared at the top of the cover page of this document, under "Independent

17 Contractor Name."  The Tacketts gave Converse a personal check for $30,000, constituting the

18 first installment of the investment funds.

19     39.      The documents the Tacketts were presented to for signature included an exhibit

20 designated "Exhibit A" to the Life Settlement Agreement, entitled "Policy Selection Sheet." The

21 Policy Selection Sheet contained key information about the insurance policies (the "Policies")

22 associated with the Tacketts' participation interests in the Life Settlement Agreement, including a

23 "policy code" (a designation for the particular policy), the current age of the insured, the age of the

24 insured when Conestoga purchased the insured's insurance policy, the remaining life expectancy

25 (as represented by Conestoga) of the insured, and the number of months for which policy

26 premiums had been reserved (the "Premium Reserves"). This last item is particularly important,

27 because the Life Settlement Agreements provide that in the event an insured significantly outlives

28 his life expectancy – by more than the additional margin built into the Premium Reserves – the

8

1  investor may be required to make additional payments to Conestoga (or its designee), purportedly

2  to continue paying premiums so as to keep the policies in force.

3       40.     The Policy Selection Sheet indicated that the Tacketts purchased and became

4  fractional owners of a total of nine insurance policies, with premium reserves ranging from 75 to

5  85.5 months. Since the Conestoga-provided life expectancies of the insureds were given as

6  ranging from 39 months to 55.5 months, the Tacketts reasonably expected that this provided an

7  ample margin for error, and did not anticipate that they would be obligated to make additional

8  premium contributions.

9           **Fifth Meeting: Investment Raised to $250,000 -- Virtually All of Tacketts' Savings**

10       41.     A fifth meeting took place, again at Panera, in August of 2012. The purpose of this

11  meeting was to receive instructions and sign a document to transfer the remaining $220,000 of the

12  $250,000 investment from the Tacketts' joint checking account to Provident. At this time, the

13  Tacketts were not required to sign all of the same documents they did back in May, when they

14  paid the initial $30,000. Converse assured the Tacketts that the documents from the first

15  investment would cover the second as well. A true copy of a "Policy Selection Sheet," updated to

16  reflect the additional $220,000, is attached hereto as Exhibit 2.

17       42.     The $250,000 Inheritance Funds comprised substantially all of the Tacketts'

18  savings, which Conestoga induced the Tacketts to invest in an illiquid, speculative investment.

19       **After The Tacketts' Bankruptcy, And With Notice Of It, Conestoga Took the Tacketts'**

20                                   **Interests in the Policies.**

21       43.     Since November 1998, John had been employed as a probation officer with the San

22  Bernardino County Probation Department. In 2013, he was required to take a Ground Defense

23  Training class to meet a new qualification standard within that position. On March 26, 2013, he

24  was seriously injured training, drastically reducing his ability to work. Ellen was John's sole

25  caretaker, as well as his driver to frequent medical specialist treatments due to his injury, and has

26  been unable to work.

27       44.     On June 29, 2016, the Tacketts filed jointly for Chapter 7 bankruptcy. A true copy

28  of the Tacketts' bankruptcy petition is attached hereto as Exhibit 3 for the Court's convenience.

45.     On January 16, 2017, Conestoga sent the Tacketts a notice entitled "Required Premium Payment Due" for Policy No. TC042210. In this notice (hereafter, "Premium Call"), Conestoga represented that "[t]he monies escrowed for the payment of premiums at the time of the purchase of this policy have been depleted…Pursuant to the provisions of the [Life Settlement Agreement], in order to maintain your interest in this policy, you must contribute your pro-rata share of the premium currently due." Conestoga further stated that if the Tacketts did not do so before February 20, 2017, Conestoga would assume their interest in the policy, and the Tacketts would have 30 days to redeem their interest by making up the demanded payment.

46.     On February 13, 2017, counsel for the Trustee, having become aware of the above-referenced Premium Call, sent a letter to Conestoga, c/o Strategix Solutions, Ltd. [the entity designated by Conestoga for communications concerning the investment], enclosing a Notice of Bankruptcy for the above-referenced case, notifying Conestoga of the existence of the automatic stay and the consequences for violating it, and expressly warning Conestoga that any attempt to assume the Tacketts' interest in the policy would violate the automatic stay. A true copy of this letter is attached hereto as Exhibit 4.

47.     On February 20, counsel for the Trustee received, in response to the above-referenced letter, an e-mail communication from Thomas Pat Washburn, who announced he represented Conestoga, acknowledged receipt of the above letter and the existence of the Tacketts' bankruptcy, and proposed to buy out the Tacketts' interest in the Policies for substantially less than half the amount the Tacketts had paid. Mr. Washburn proposed that the transaction be structured as a "settlement" rather than a sale. A true copy of this e-mail communication is attached hereto as Exhibit 5.

48.     On May 3, 2017, Conestoga sent the Tacketts a "Forfeiture Notice/Notice of Right to Redeem" ("Forfeiture Notice") stating that their interest in Policy No. TC042210 had been forfeited and that they had 30 days to redeem it.

49.     On May 4, 2017, Mr. Washburn transmitted to counsel for the Trustee a proposed "Confidential Settlement Agreement and Mutual Release." Counsel for the Trustee proposed changes to the agreement. On July 10, 2017, Mr. Washburn notified the Trustee's counsel that

"the settlement offer has been withdrawn." A true copy of the e-mail chain concluding with this July 10, 2017 message is attached hereto as Exhibit 6.

50.    For several months after the initial January 16, 2017 Premium Call (viz., on March 3, May 5, June 9, and July 28), the Tacketts received similar Premium Calls for Policies Nos. BH051510JH (March 3), WM051510 (May 5), PE042210 (June 9), 2J042210 (June 9), CP051910 (July 28) and CP042210 (July 28). They have also received an undated Premium Call for Policy No. SR0531. These Premium Calls were followed, in due course, with similar Forfeiture Notices/, stating that the Tacketts' interest in the policies had been forfeited. True copies of the Premium Calls are attached hereto, collectively, as Exhibit 7. True copies of the Forfeiture Notices are attached hereto as Exhibit 8.

51.    Thus, out of the 9 insurance policies in which the Tacketts acquired a fractional interest (based in significant part on the Conestoga-provided information as to the insured's life expectancy and the Premium Reserve), a full 8 significantly outlived the life expectancy Conestoga had represented.

52.    The Premium Calls, though they represented that the Premium Reserves for the various policies "ha[d] been depleted," were sent prematurely. Based on the numbers of months shown as "Premium Reserves," in Exhibit A to the Life Settlement Agreements, in each case in which Conestoga represented that the premiums were depleted, there were (or should have been) several months' worth of premiums to go – both at the time the Premium Calls were made, and at the times they specified for the demanded payments.

53.    Believing that the Premium Calls had been made in error, in that it appeared that the premium reserves, as reflected on the Policy Selection Sheet, should not have been exhausted when the Premium Calls were made, the Tacketts sent a letter on February 8, 2017 to Strategix Solutions, as agent for Conestoga, articulating their position that the Premium Calls had been prematurely made. A true copy of this letter is attached hereto as Exhibit 9.  The Tacketts never received a response addressing this letter.

54.    In January, 2018, the Tacketts received an annual statement showing that all funds had been transferred from their escrow account to Conestoga. The Policies no longer showed the Tacketts' names as beneficiaries.

### **FIRST CLAIM FOR RELIEF**

### **(Breach of Written Contract)**

### *(Against Conestoga, CT and CI)*

55.    The Trustee re-alleges and incorporates herein by this reference the allegations of paragraphs 1 through 54, inclusive.

56.    On or about May 31, 2012, the Tacketts entered into a written contract with Conestoga, to wit, the above-defined Life Settlement Agreement, whose principal terms are memorialized in the document attached hereto as Exhibit 1.

57.    The Tacketts have performed all conditions, covenants, and promises required on their part to be performed in accordance with the terms and conditions of the Life Settlement Agreement, except that to the extent payment of premiums might have been required to be paid, such payment was excused by, among other things, Conestoga's prematurely made Premium Calls.

58.    Commencing on or about January 16, 2017, and continuing through July 28, 2017, Conestoga breached the Life Settlement Agreement by, among other things, sending Premium Calls prematurely, sending Forfeiture Notices prematurely, and misappropriating the Tacketts' interests in the life insurance policies specified in the Life Settlement Agreement.

59.    Conestoga further breached the Life Settlement Agreement, in that the full terms of the agreement memorialized by the document attached hereto as Exhibit 1 included representations and warranties by Conestoga, through its agent Converse, that (1) Conestoga would verify that the Tacketts qualified as investors for the type of investment being promoted; (2) the money held in the escrow accounts for the insurance policies in which the Tacketts were to participate would not have to be used for premiums, due to the impending deaths of all of the insureds involved. Conestoga failed to verify that the Tacketts qualified for the investment, and not only used the

1    Tacketts' money held in the escrow accounts to pay premiums, but demanded additional monies

2    from them to pay premiums.

3        60.     Conestoga further breached the Life Settlement Agreement's implied covenant of

4    good faith and fair dealing, by the following: With least 8 out of the 9 Policies, the insureds have

5    significantly outlived the life expectancies which were provided to the Tacketts and which

6    provided the basis for the premium reserves. The Trustee is informed and believes that Conestoga

7    intentionally and willfully underestimated the life expectancies of insureds, and under-reserved

8    premium reserves, with the ultimate, concealed objective of depriving the Tacketts, and others

9    similarly situated, of their beneficial interests in the Policies, as follows: By targeting people like

10   the Tacketts, with little disposable wealth, and inducing them to invest most or all of their

11   disposable wealth with Conestoga, Conestoga ensured that – if additional premiums had to be paid

12   (and by underestimating life expectancies, and under-reserving against future premium

13   obligations, Conestoga ensured that this would occur) – the Tacketts would be unable to pay the

14   additional premiums, and Conestoga could appropriate for itself their entire interest in the Policies.

15       61.     As a result of Conestoga's breaches of the Life Settlement Agreement, the Tacketts

16   have been damaged in an amount subject to proof, not less than $250,000.

17       62.     With respect to its breach of its duty of good faith and fair dealing, described in

18   paragraph 57, above, Conestoga acted with recklessness, oppression, fraud, and malice, and the

19   Trustee therefore is entitled (on behalf of the Tacketts) to an award of exemplary or punitive

20   damages pursuant to Welfare and Institutions Code Section 15657.5 and Civil Code Section 3294,

21   and to treble damages pursuant to Civil Code Section 3345.

22                        **<u>SECOND CLAIM FOR RELIEF</u>**

23               **<u>(Rescission and Restitution For Fraud)</u>**

24                   ***(Against Conestoga, CT and CI)***

25       63.     The Trustee re-alleges and incorporates herein by this reference the allegations of

26   paragraphs 1 through 54, inclusive.

27       64.     On or about the dates set forth in paragraphs 19 through 34, above, at Riverside,

28   California, Conestoga, through its agent Converse, with the approval of Conestoga's agent Wood,

1    with all those defendants knowing the representations to be false and with the intent to deceive the

2    Tacketts to enter into the Life Settlement Agreement, falsely and fraudulently represented to the

3    Tacketts that (1) Conestoga would verify that the Tacketts were qualified investors for the type of

4    investment being promoted; (2) the Tacketts did in fact qualify as investors for the type of

5    investment being promoted; (3) the persons on whose lives the insurance policies associated with

6    the Life Settlement Agreement were taken were so near to death that the funds held in the escrow

7    accounts would not have to be used to pay premiums, let alone that additional premium calls

8    would be made on the Tacketts; and (4) Conestoga had taken proper care in the selection of

9    insureds and the calculation of premium reserves such that additional premium calls would not

10    have to be made.

11         65.    Further, on or about May 31, 2012, Conestoga, through its agent Converse, with

12    knowledge that the information being represented was false, caused the Tacketts to sign or initial

13    disclosures purportedly representing that they were accredited or otherwise qualified investors,

14    including but not limited to a representation that the $250,000 investment contemplated

15    constituted 2% of the Tacketts' net worth.  Under a pretense of being in a hurry to attend another

16    meeting, Converse concealed the true nature of what he pressured the Tacketts to sign,

17    representing falsely that their initialing of the various pages he rushed through was "just a

18    formality."

19         66.    These representations were in fact false. The true facts were that Conestoga did not

20    intend to, and did not, conduct any substantive analysis or investigation as to whether the Tacketts

21    were in fact accredited or otherwise qualified investors for the investment being promoted; that the

22    Tacketts did not, in fact, qualify as investors for the type of investment being promoted; that the

23    persons on whose lives the insurance policies associated with the Life Settlement Agreement were

24    taken were not in fact known by Conestoga to be so near to death that the funds held in the escrow

25    accounts would not have to be used to pay premiums, let alone that additional premium calls

26    would be made on the Tacketts; and that Conestoga had taken no substantial care in selecting

27    insureds and calculating premium reserves to avoid the need for additional premium calls.

28

67.    At the time the representations were made, at the time the Tacketts entered into the Life Settlement Agreement on or about May 31, 2012, and at the time the Tacketts rendered their performance, the Tacketts believed them to be true and reasonably relied on them.  The Tacketts were acquainted with both Converse and Woods through Amway, and knew, at the time, of no reason to suspect their honesty. In the case of Woods, the Tacketts understood him to be an extremely successful businessman and "Amway Diamond."  Had the Tacketts known the true facts, they would not have entered into the Life Settlement Agreements and would not have rendered or accepted performance thereunder.

68.    Pursuant to the Life Settlement Agreement, the Tacketts paid Conestoga the total sum of $250,000.

69.    Thereafter, commencing on January 16, 2017, the Tacketts discovered the true facts to be those as stated in paragraph 66, above.

70.    The Tacketts will suffer substantial injury if the Life Settlement Contract is not rescinded, in that the funds extracted from them by Conestoga constituted substantially the entirety of their net investable worth, and Conestoga has purported to appropriate the entirety of these funds and the Tacketts' interest in the insurance policies listed in the Life Settlement Agreement for itself.

71.    The Tacketts intend service of the summons and complaint in this action to serve as notice of rescission of the Life Settlement Agreement, and hereby demands that Conestoga restore to them the consideration furnished by them, specifically the total sum of $250,000.

72.    The aforementioned conduct of the defendants was an intentional misrepresentation, deceit, or concealment of a material fact known to the defendants with the intention on the part of the defendants of thereby depriving the plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected the plaintiff to a cruel and unjust hardship in conscious disregard of the plaintiff's rights, so as to justify an award of exemplary and punitive damages.

### THIRD CLAIM FOR RELIEF

### (Money Had and Received)

#### *(Against Conestoga, CT, CI and Provident)*

73.    The Trustee re-alleges and incorporates herein by this reference the allegations of paragraphs 1 through 54, and 55 through 64, inclusive.

74.    Within the past four years, at San Bernardino, California, Conestoga became indebted to the Tacketts in the sum of $250,000 for money had and received by defendant for the use and benefit of plaintiff.

75.    Neither the whole nor any part of this sum has been paid, although demand therefor has been made, and there is now due, owing, and unpaid the sum of $250,000 with interest thereon at the legal rate from June 5, 2018.

76.    The Trustee is informed and believes, and on that basis alleges, that a portion of the $250,000 paid by the Tacketts to Conestoga was transferred to Provident, as escrow holder for certain amounts that were to be used to pay premiums on the Policies. The Trustee is informed and believes and on that basis alleges that the full amount of these monies was not used for that purpose. Accordingly, the Trustee is entitled to recover those monies from Provident.

### FOURTH CLAIM FOR RELIEF

### (Unjust Enrichment)

#### *(Against Conestoga, CI and CT)*

77.    The Trustee re-alleges and incorporates herein by this reference the allegations of paragraphs 1 through 54, and 73 through 76, inclusive.

78.    By the acts and omissions specific in the above-referenced paragraphs, Conestoga received money and property from the Tacketts to which Conestoga was not entitled, and was thereby enriched.

79.    The enrichment that Conestoga received was unjust.

80.    It would be unjust for Conestoga to retain the benefits that it received at the expense of the Tacketts, and therefore the Trustee is entitled to recover, for the benefit of the Tacketts' bankruptcy estate, all unjust benefits Conestoga received.

1

### FIFTH CLAIM FOR RELIEF

2

### (Fraud)

3

### *(Against Conestoga, CT, CI, Converse, Wood, and McDermott)*

4       81.     The Trustee re-alleges and incorporates herein by this reference the allegations of

5 paragraphs 1 through 54, inclusive.

6       82.     On or about the dates set forth in paragraphs 20 through 35, above, at Riverside,

7 California, Conestoga, through its agent Converse, with the knowledge and approval of

8 Conestoga's agent Wood and its Manager McDermott,  with all those defendants knowing the

9 representations to be false (or, in the alternative, with reckless disregard for their truth or falsity,

10 and with the intent to deceive the Tacketts to enter into the Life Settlement Agreement, falsely and

11 fraudulently represented to the Tacketts that (1) Conestoga would verify that the Tacketts qualified

12 investors for the type of investment being promoted; (2) the Tacketts did in fact qualify as

13 investors for the type of investment being promoted; (3) the persons on whose lives the insurance

14 policies associated with the Life Settlement Agreement were taken were so near to death that the

15 funds held in the escrow accounts would not have to be used to pay premiums, let alone that

16 additional premium calls would be made on the Tacketts; and (4) Conestoga had taken proper care

17 in the selection of insureds and the calculation of premium reserves such that additional premium

18 calls would have to be made.

19       83.     Further, on or about May 31, 2012, Conestoga, through its agent Converse, with

20 knowledge that the information being represented was false, caused the Tacketts to sign or initial

21 disclosures purportedly representing that they were accredited or otherwise qualified investors,

22 including but not limited to a representation that the $250,000 investment contemplated

23 constituted 2% of the Tacketts' net worth.  Under a pretense of being in a hurry to attend another

24 meeting, Converse concealed the true nature of what he pressured the Tacketts to sign,

25 representing falsely that their initialing of the various pages he rushed through was "just a

26 formality."

27       84.     These representations were in fact false. The true facts were that Conestoga did not

28 intend to, and did not, conduct any substantive analysis or investigation as to whether the Tacketts

1    were in fact accredited or otherwise qualified investors for the investment being promoted; that the

2    Tacketts did not, in fact, qualify as investors for the type of investment being promoted; that the

3    persons on whose lives the insurance policies associated with the Life Settlement Agreement were

4    taken were not in fact known by Conestoga to be so near to death that the funds held in the escrow

5    accounts would not have to be used to pay premiums, let alone that additional premium calls

6    would be made on the Tacketts; and that Conestoga had taken no substantial care in selecting

7    insureds and calculating premium reserves to avoid the need for additional premium calls.

8        85.    At the time the representations were made, at the time the Tacketts entered into the

9    Life Settlement Agreement on or about May 31, 2012, and at the time the Tacketts rendered their

10   performance, the Tacketts believed them to be true and reasonably relied on them.  The Tacketts

11   were acquainted with both Converse and Woods through Amway, and knew, at the time, of no

12   reason to suspect their honesty. In the case of Woods, the Tacketts understood him to be an

13   extremely successful businessman and "Amway Diamond."  Had the Tacketts known the true

14   facts, they would not have entered into the Life Settlement Agreements and would not have

15   rendered or accepted performance thereunder.  In reliance on these representations, the Tacketts

16   were induced to enter into the Life Settlement Agreement and pay Conestoga the sum of

17   $250,000.

18       86.    The Tacketts are informed and believe, and on that basis allege, that the defendants

19   herein knew the true state of their (the Tacketts') limited financial means, and intentionally set up

20   the Life Settlement Agreement, and the selection of insureds and the premium reserves in the

21   escrow account associated with it, with the knowledge that contrary to their representations to the

22   Tacketts, the insureds would in fact outlive the estimated life expectancies represented by

23   defendants, resulting in demands to the Tacketts for additional premiums, which defendants knew

24   the Tacketts would likely or certainly be unable to pay. Accordingly, defendants intended to use

25   this anticipated, ostensible default in the Tacketts' obligations as a pretext for appropriating to

26   themselves the Tacketts' interest in the insurance policies.

27       87.    As a proximate result of the fraudulent conduct of defendants as herein alleged, the

28   Tacketts were deprived of their $250,000 in savings, or in the alternative the value of their

investment in the transactions memorialized by the Life Settlement Agreement had the true facts been as defendants represented them, by reason of which the Tacketts have been damaged in an amount subject to proof, not less than $250,000.

88.     The aforementioned conduct of the defendants was an intentional misrepresentation, deceit, or concealment of a material fact known to the defendants with the intention on the part of the defendants of thereby depriving the plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected the plaintiff to a cruel and unjust hardship in conscious disregard of the plaintiff's rights, so as to justify an award of exemplary and punitive damages.

## **SIXTH CLAIM FOR RELIEF**

### **(Negligent Misrepresentation)**

### *(Against Conestoga, CT, CI, Provident, Converse, Wood, and McDermott)*

89.     The Trustee re-alleges and incorporates herein by this reference the allegations of paragraphs 1 through 54, inclusive.

90.     On or about the dates set forth in paragraphs 26 through 41, above, at Riverside, California, Conestoga, through its agent Converse, with the approval of Conestoga's agent Wood, with all those defendants lacking reasonable grounds for believing the representations to be true, falsely represented to the Tacketts that (1) Conestoga would verify that the Tacketts qualified investors for the type of investment being promoted; (2) the Tacketts did in fact qualify as investors for the type of investment being promoted; (3) the persons on whose lives the insurance policies associated with the Life Settlement Agreement were taken were so near to death that the funds held in the escrow accounts would not have to be used to pay premiums, let alone that additional premium calls would be made on the Tacketts; and (4) Conestoga had taken proper care in the selection of insureds and the calculation of premium reserves such that additional premium calls would have to be made.

91.     Further, on or about May 31, 2012, Conestoga, through its agent Converse, with knowledge that the information being represented was false, caused the Tacketts to sign or initial disclosures purportedly representing that they were accredited or otherwise qualified investors,

1    including but not limited to a representation that the $250,000 investment contemplated

2    constituted 2% of the Tacketts' net worth.  Under a pretense of being in a hurry to attend another

3    meeting, Converse concealed the true nature of what he pressured the Tacketts to sign,

4    representing falsely that their initialing of the various pages he rushed through was "just a

5    formality."

6        92.    These representations were in fact false. The true facts were that Conestoga did not

7    intend to, and did not, conduct any reasonable inquiry or substantive analysis or investigation as to

8    whether the Tacketts were in fact accredited or otherwise qualified investors for the investment

9    being promoted; that the Tacketts did not, in fact, qualify as investors for the type of investment

10   being promoted; that the persons on whose lives the insurance policies associated with the Life

11   Settlement Agreement were taken were not in fact known by Conestoga to be so near to death that

12   the funds held in the escrow accounts would not have to be used to pay premiums, let alone that

13   additional premium calls would be made on the Tacketts; and that Conestoga had taken no

14   substantial care in selecting insureds and calculating premium reserves to avoid the need for

15   additional premium calls.

16       93.    On June 8, 2012, Provident sent a letter to the Tacketts, stating that it would serve

17   as custodian for their account and escrow agent for Conestoga. This letter contained a list of the

18   Policies, and indicating the number of months of premiums in escrow (which ranged from 65

19   months to 85.5 months). A true copy of this letter is attached hereto as Exhibit 10.

20       94.    The Trustee is informed and believes, and on that basis alleges, that the figures

21   given for months of premiums in escrow were incorrect, and that Provident had no reasonable

22   grounds for believing them true, and had not conduct any reasonable inquiry or substantive

23   investigation into the accuracy of those figures.

24       95.    At the time the representations were made, at the time the Tacketts entered into the

25   Life Settlement Agreement on or about May 31, 2012, within the time for responding to the policy

26   selections following receipt of Provident letter of June 8, 2012 (i.e., Exhibit 10) and at the time the

27   Tacketts rendered their performance, the Tacketts believed them to be true and reasonably relied

28   on them.  The Tacketts were acquainted with both Converse and Woods through Amway, and

1    knew, at the time, of no reason to suspect their honesty. In the case of Woods, the Tacketts

2    understood him to be an extremely successful businessman and "Amway Diamond."  Had the

3    Tacketts known the true facts, they would not have entered into the Life Settlement Agreements

4    and would not have rendered or accepted performance thereunder.  In reliance on these

5    representations, the Tacketts were induced to enter into the Life Settlement Agreement and pay

6    Conestoga the sum of $250,000.

7        96.    As a proximate result of the fraudulent conduct of defendants as herein alleged, the

8    Tacketts were deprived of their $250,000 in savings, or in the alternative the value of their

9    investment in the transactions memorialized by the Life Settlement Agreement had the true facts

10    been as defendants represented them, by reason of which the Tacketts have been damaged in an

11    amount subject to proof, not less than $250,000.

12                    **SEVENTH CLAIM FOR RELIEF**

13                        **(Negligence)**

14                    ***(Against Conestoga and Provident)***

15        97.    The Trustee re-alleges and incorporates herein by this reference the allegations of

16    paragraphs 1 through 54, inclusive.

17        98.    In selecting the insurance policies to include in the pool of insurance policies in

18    which Conestoga induced the Tacketts to participate, and in calculating the amounts of premium

19    reserves to hold in escrow based on the insureds' life expectancies, Conestoga owed the Tacketts a

20    duty to exercise reasonable care.

21        99.    At the times and dates specified above, Conestoga failed to exercise reasonable

22    care in its selection of insureds and calculation of premium reserves to be held in escrow, with the

23    result that as of the date of this Complaint, 8 out of 9 of the insureds have significantly outlived

24    the Conestoga-calculated life expectancies.

25        100.    By agreeing to serve as Conestoga's escrow agent to make premium payments on

26    the Policies, Provident undertook a duty to the Tacketts, who would foreseeably be harmed if

27    Provident failed to do so properly (by, among other things, potentially being deprived of their

28    interests in the Policies, by being caused to pay additional premium amounts that were not in fact

1  due). Provident failed to discharge this duty, in that it unreasonably failed to (1) ensure that its

2  disclosure to the Tacketts of the months of premiums held in reserve (i.e., Exhibit 9) was accurate,

3  and/or (alternatively) (2) by erroneously determining that the Tacketts' premium reserves for the

4  Policies had been exhausted, and sending premature Premium Calls, with the resulting purported

5  assumption by Conestoga of the Tacketts' interest in the Policies.

6      101.    As a result of these failures of defendants to exercise due care, the Tacketts faced

7  demands by Conestoga to pay additional premium amounts they could not afford, which

8  Conestoga's agent Converse expressly stated would not be required, with the result that Conestoga

9  purported to appropriate the Tacketts' interest in the insurance policies for itself.

10      102.    As a result, the Tacketts have sustained damages in an amount subject to proof, not

11  less than $250,000, up to the amount the Tacketts would have received by their investment had

12  Conestoga exercised due care by selecting insureds who truly did have the proverbial "one foot in

13  the grave," as Conestoga's agent Converse put it, and/or by accurately determining the appropriate

14  premium reserve.

15  **EIGHTH CLAIM FOR RELIEF**

16  **(Rescission and Restitution for Violation of Securities Qualification Requirements: Cal.**

17  **Corp. Code §25503)**

18  ***(Against Conestoga, CI, CT, DL&W, Converse, Wood, McDermott, Washburn, and De Leon)***

19      103.    The Trustee re-alleges and incorporates herein by this reference the allegations of

20  paragraphs 1 through 54, inclusive.

21      104.    California Corporations section 25110 provides, in pertinent part:

22  "It is unlawful for any person to offer or sell in this state any security in an issuer transaction . . .

23  unless such sale has been qualified under Section 25111, 25112, or 25113 . . . or unless such

24  security or transaction is exempted or not subject to qualification under Chapter 1 (commencing

25  with section 25100) of this part."

26      105.    The investments offered and sold by Conestoga are "securities" within the meaning of

27  California Corporations Code section 25019 and case law thereunder.

28

106.     The offer and sale of securities referred to herein are not exempt from the requirement of qualification under California Corporations Code section 25110, in that, without limitation, they were not made to qualified purchasers (which the Tacketts were not), nor did Conestoga reasonably believe, after reasonable inquiry, that they were qualified purchasers. (See Corp. Code § 25102(q)(1).)

107.     At the time of the sale of the securities, the sale was not, and to date of this complaint has not been, qualified as any kind of securities transaction with the Commissioner of Business Oversight.

108.     As a result of the above-described acts, Conestoga and its parents, successors, and/or agents, including CI and CT, are liable to the Trustee, who is entitled to, and hereby does, rescind the above-described purchase. Prior to entry of judgment, the Trustee will tender to Conestoga whatever interest the Tacketts may retain in the Policies.

109.     At the time of the acts alleged herein, Converse, as a securities agent to Conestoga, materially assisted in the sale of the securities in violation of law, in that he falsely represented to the Tacketts that they qualified for the investment, actively concealed the true nature of the statements on the Life Settlement Agreement pertaining to their investment qualifications that he rushed them to initial or sign, did not reasonably believe them to be qualified investors, and willfully failed to conduct a reasonable inquiry as to whether they were qualified investors. In so acting, Converse acted with intent to deceive or defraud.

110.     At the time of the acts alleged herein, Wood, as a securities agent to Conestoga, materially assisted in the sale of the securities in violation of law, in that, upon information and belief, he conspired and colluded with Converse to cause Converse to falsely represent to the Tacketts that they qualified for the investment and actively conceal the true nature of the statements on the Life Settlement Agreement pertaining to their investment qualifications that he rushed them to sign. Further, he did not actually believe the Tacketts to be qualified investors, and willfully failed to conduct a reasonable inquiry as to whether they were qualified investors, proceeding with the sale of the securities with reckless disregard as to whether they were or not. In so acting, Wood acted with intent to deceive or defraud.

111.    At the time of the acts alleged herein, McDermott, as Manager of Conestoga, was a principal member of Conestoga's management, occupying a similar status to and performing similar functions to the president or chief executive of a corporation. McDermott also owned the largest block of membership interests in Conestoga, and thereby directly or indirectly controlled Conestoga.  At the same time, McDermott was the sole member and President of CT, and thereby directly controlled CT.

112.    At the time of the acts alleged herein, DL&W, Washburn, and De Leon, in their capacity as counsel to Conestoga for the structuring of the transactions complained of herein, materially assisted in the sale of the securities in violation of law, in that they knew it was Conestoga's practice to sell unregistered securities through unregistered agents, knowing that victims of the schemes would be induced to sign disclosures concerning accredited-investor status that the Trustee is informed and believes DL&W, Washburn, and/or De Leon prepared for Conestoga, and in fact conspired with Conestoga to facilitate such non-accredited investors to sign those documents. In so acting, DL&W, Washburn and De Leon acted with intent to deceive or defraud.

## NINTH CLAIM FOR RELIEF

### (Damages In Lieu of Rescission for Violation of Qualification Requirements: Cal. Corp. Code §25503)

### (Against Conestoga, Converse, Wood, and McDermott)

113.    The Trustee re-alleges and incorporates herein by this reference the allegations of paragraphs 1 through 54 and 104 through 112, inclusive.

114.    In the alternative to the allegations contained in the Eighth Claim for Relief, above, and to the extent that the Tacketts may no longer own the securities as a result of Conestoga's purported assumption of the Policies, as a result of the above-described acts, Conestoga is liable to the Trustee for damages in lieu of rescission. The value of the securities at the time they were disposed of is subject to proof, not less than $250,000.

115.    At the time of the acts alleged herein, Converse, as a securities agent to Conestoga, materially assisted in the sale of the securities in violation of law, in that he falsely represented to

the Tacketts that they qualified for the investment, actively concealed the true nature of the

statements on the Life Settlement Agreement pertaining to their investment qualifications that he

rushed them to initial or sign, did not reasonably believe them to be qualified investors, and

willfully failed to conduct a reasonable inquiry as to whether they were qualified investors. In so

acting, Converse acted with intent to deceive or defraud.

116.    At the time of the acts alleged herein, Wood, as a securities agent to Conestoga,

materially assisted in the sale of the securities in violation of law, in that, upon information and

belief, he conspired and colluded with Converse to cause Converse to falsely represent to the

Tacketts that they qualified for the investment and actively conceal the true nature of the

statements on the Life Settlement Agreement pertaining to their investment qualifications that he

rushed them to sign. Further, he did not actually believe the Tacketts to be qualified investors, and

willfully failed to conduct a reasonable inquiry as to whether they were qualified investors,

proceeding with the sale of the securities with reckless disregard as to whether they were or not. In

so acting, Wood acted with intent to deceive or defraud.

117.    At the time of the acts alleged herein, McDermott, as Manager of Conestoga, was a

principal member of Conestoga's management, occupying a similar status to and performing

similar functions to the president or chief executive of a corporation. McDermott also owned the

largest block of membership interests in Conestoga, and thereby directly or indirectly controlled

Conestoga.  At the same time, McDermott was the sole member and President of CT, and thereby

directly controlled CT.

118.    At the time of the acts alleged herein, DL&W, Washburn, and De Leon, in their

capacity as counsel to Conestoga for the structuring of the transactions complained of herein,

materially assisted in the sale of the securities in violation of law, in that they knew it was

Conestoga's practice to sell unregistered securities through unregistered agents, knowing that

victims of the schemes would be induced to sign disclosures concerning accredited-investor status

that the Trustee is informed and believes DL&W, Washburn, and/or De Leon prepared for

Conestoga, and in fact conspired with Conestoga to facilitate such non-accredited investors to sign

those documents. In so acting, DL&W, Washburn and De Leon acted with intent to deceive or defraud.

### **TENTH CLAIM FOR RELIEF**

### **(Rescission and Restitution for Material Misrepresentation in the Sale of Securities: Cal. Corp. Code § 25501)**

### *(Against Conestoga, CI, CT, DL&W, Converse, Wood, McDermott, Washburn, and De Leon)*

119.    The Trustee re-alleges and incorporates herein by this reference the allegations of paragraphs 1 through 54 and 104 through 112, inclusive.

120.    The sale of the securities to the Tacketts was accomplished by oral and written statements by Converse, as Conestoga's agent, that (1) Conestoga would verify that the Tacketts qualified investors for the type of investment being promoted; (2) the Tacketts did in fact qualify as investors for the type of investment being promoted; (3) the persons on whose lives the insurance policies associated with the Life Settlement Agreement were taken were so near to death that the funds held in the escrow accounts would not have to be used to pay premiums, let alone that additional premium calls would be made on the Tacketts; and (4) Conestoga had taken proper care in the selection of insureds and the calculation of premium reserves such that additional premium calls would have to be made.

121.    As a result of the above-described acts, Conestoga and its parents, successors, and/or agents, including CI and CT, are liable to the Trustee, who is entitled to, and hereby does, rescind the above-described purchase. Prior to entry of judgment, the Trustee will tender to Conestoga whatever interest the Tacketts may retain in the Policies.

122.    At the time of the acts alleged herein, Converse, as a securities agent to Conestoga, materially assisted in the sale of the securities in violation of law, in that he falsely represented to the Tacketts that they qualified for the investment, actively concealed the true nature of the statements on the Life Settlement Agreement pertaining to their investment qualifications that he rushed them to initial or sign, did not reasonably believe them to be qualified investors, and willfully failed to conduct a reasonable inquiry as to whether they were qualified investors. In so acting, Converse acted with intent to deceive or defraud.

123.    At the time of the acts alleged herein, Wood, as a securities agent to Conestoga, materially assisted in the sale of the securities in violation of law, in that, upon information and belief, he conspired and colluded with Converse to cause Converse to falsely represent to the Tacketts that they qualified for the investment and actively conceal the true nature of the statements on the Life Settlement Agreement pertaining to their investment qualifications that he rushed them to sign. Further, he did not actually believe the Tacketts to be qualified investors, and willfully failed to conduct a reasonable inquiry as to whether they were qualified investors, proceeding with the sale of the securities with reckless disregard as to whether they were or not. In so acting, Wood acted with intent to deceive or defraud.

124.    At the time of the acts alleged herein, McDermott, as Manager of Conestoga, was a principal member of Conestoga's management, occupying a similar status to and performing similar functions to the president or chief executive of a corporation. McDermott also owned, either directly or indirectly, the largest block of membership interests in Conestoga, and thereby directly or indirectly controlled Conestoga. At the same time, McDermott was the sole member and President of CT, and thereby directly controlled CT.

125.    At the time of the acts alleged herein, DL&W, Washburn, and De Leon, in their capacity as counsel to Conestoga for the structuring of the transactions complained of herein, materially assisted in the sale of the securities in violation of law, in that they knew it was Conestoga's practice to sell unregistered securities through unregistered agents, knowing that victims of the schemes would be induced to sign disclosures concerning accredited-investor status that the Trustee is informed and believes DL&W, Washburn, and/or De Leon prepared for Conestoga, and in fact conspired with Conestoga to facilitate such non-accredited investors to sign those documents. In so acting, DL&W, Washburn and De Leon acted with intent to deceive or defraud.

**ELEVENTH CLAIM FOR RELIEF**

**(Damages in Lieu of Rescission for Material Misrepresentation in the Sale of Securities: Cal.
Corp. Code §25501)**

***(Against Conestoga, CI, CT, DL&W, Converse, Wood, McDermott, Washburn, and De Leon)***

126.    The Trustee re-alleges and incorporates herein by this reference the allegations of paragraphs 1 through 54 and 104 through 112, inclusive.

127.    In the alternative to the allegations contained in the Tenth Claim for Relief, above, and to the extent that the Tacketts may no longer own the securities as a result of Conestoga's purported assumption of the Policies, as a result of the above-described acts, Conestoga is liable to the Trustee for damages in lieu of rescission. The value of the securities at the time they were disposed of is subject to proof, not less than $250,000.

128.    At the time of the acts alleged herein, Converse materially assisted in the sale of the securities in violation of law, in that he falsely represented to the Tacketts that they qualified for the investment, actively concealed the true nature of the statements on the Life Settlement Agreement pertaining to their investment qualifications that he rushed them to initial or sign, did not reasonably believe them to be qualified investors, and willfully failed to conduct a reasonable inquiry as to whether they were qualified investors. In so acting, Converse acted with intent to deceive or defraud.

129.    At the time of the acts alleged herein, Wood materially assisted in the sale of the securities in violation of law, in that, upon information and belief, he conspired and colluded with Converse to cause Converse to falsely represent to the Tacketts that they qualified for the investment and actively conceal the true nature of the statements on the Life Settlement Agreement pertaining to their investment qualifications that he rushed them to sign. Further, he did not actually believe the Tacketts to be qualified investors, and willfully failed to conduct a reasonable inquiry as to whether they were qualified investors, proceeding with the sale of the securities with reckless disregard as to whether they were or not. In so acting, Wood acted with intent to deceive or defraud.

130.    At the time of the acts alleged herein, McDermott, as Manager of Conestoga, was a principal member of Conestoga's management, occupying a similar status to and performing similar functions to the president or chief executive of a corporation. McDermott also owned the largest block of membership interests in Conestoga, and thereby directly or indirectly controlled Conestoga.  At the same time, McDermott was the sole member and President of CT, and thereby directly controlled CT.

131.    At the time of the acts alleged herein, DL&W, Washburn, and De Leon, in their capacity as counsel to Conestoga for the structuring of the transactions complained of herein, materially assisted in the sale of the securities in violation of law, in that they knew it was Conestoga's practice to sell unregistered securities through unregistered agents, knowing that victims of the schemes would be induced to sign disclosures concerning accredited-investor status that the Trustee is informed and believes DL&W, Washburn, and/or De Leon prepared for Conestoga, and in fact conspired with Conestoga to facilitate such non-accredited investors to sign those documents. In so acting, DL&W, Washburn and De Leon acted with intent to deceive or defraud.

## TWELFTH CLAIM FOR RELIEF

### Contempt for Willful Violation Of The Automatic

### Stay Pursuant To 11 U.S.C. § 105

#### (Against Conestoga, CI, CT, DL&W, McDermott, Washburn, and De Leon)

132.    The Trustee re-alleges and incorporates herein by this reference the allegations of paragraphs 1 through 54, inclusive.

133.    Conestoga willfully violated the automatic stay by (1) making Premium Calls after having actual knowledge of the Tacketts' property, commencing no later than February 20, 2017; and (2) sending Forfeiture Notices purporting to assume the Tacketts' interest in the insurance policies held in trust on their behalf after having actual knowledge of the Tacketts' property, commencing no later than February 20, 2017.

134.    Conestoga's violation of the automatic stay was "willful" because Conestoga knew of the automatic stay no later than February 20, 2017, the date its attorney responded to the

Trustee's letter of February 13, 2017 notifying Conestoga of the Tacketts' bankruptcy and acknowledged the existence of the same.

135.    DL&W, Washburn, and De Leon participated in Conestoga's violation of the automatic stay, by colluding with Conestoga to engage in a pretense of "settlement" discussions – with knowledge of the bankruptcy stay – while Conestoga proceeded to empty out the Tacketts' interests in the Policies, and then abruptly withdraw Conestoga's purported settlement offer.

136.    The Trustee has suffered damages as proximate result of the willful stay violation by Defendant.

137.    The Trustee retained counsel to institute this action under 11 U.S.C. § 105.

**THIRTEENTH CLAIM FOR RELIEF**

**(Elder Financial Abuse)**

*(Against Conestoga, CI, CT, DL&W, Converse, Wood, McDermott, Washburn, and De Leon)*

138.    The Trustee re-alleges and incorporates herein by this reference the allegations of paragraphs 1 through 54, inclusive.

139.    John Tackett was born on March 21, 1950. Accordingly, he achieved the age of 65 years on March 21, 2015.

140.    Ellen Tackett was born July 17, 1952. Accordingly, she achieved the age of 65 years on July 17, 2017.

141.    The Trustee is informed and believes, and on that basis alleges, that the assumption by Conestoga of some or all of the insurance policies referenced above took place subsequent to July 17, 2017, and that the assumption of all of them took place subsequent to March 21, 2015.

142.    The assumption by Conestoga of the Tacketts' interest in the insurance policies constituted takings and appropriations of property of elders for wrongful use and with the intent to defraud, in that, without limitation, (1) Conestoga knew that the Premium Calls had been sent prematurely, in that there still remained several months of premium reserves for each policy involved according to the Life Settlement Agreement; and (2) Conestoga, through its agent Converse, had represented to the Tacketts that no additional premiums would be required to be

paid. The takings and appropriations were further wrongful in that they violated the automatic

bankruptcy stay.

143.    In addition, the retention by Conestoga of the $250,000 paid by the Tacketts

subsequent to March 21, 2015 and/or July 17, 2017, constituted the wrongful retention of property

of elders for wrongful use and intent to defraud, in that, without limitation, (1) the property was

obtained by Conestoga by false and fraudulent representations, as set forth in paragraphs 71

through 77; and (2) the property was wrongfully obtained in violation of securities laws, as set

forth in paragraphs 104 through 112, above.

144.    At the time of the acts alleged herein, DL&W, Washburn, and De Leon, in their

capacity as counsel to Conestoga for the structuring of the transactions complained of herein,

materially assisted in the sale of the securities in violation of law, and thereby aided and abetted

the taking and retention of the Tacketts' property while they were senior citizens, in that they

knew it was Conestoga's practice to sell unregistered securities through unregistered agents,

knowing that victims of the schemes would be induced to sign disclosures concerning accredited-

investor status that the Trustee is informed and believes DL&W, Washburn, and/or De Leon

prepared for Conestoga, and in fact conspired with Conestoga to facilitate such non-accredited

investors to sign those documents. In so acting, DL&W, Washburn and De Leon acted with intent

to deceive or defraud.

145.    Defendants' taking and/or appropriating and/or obtaining and/or retaining the

Tacketts' funds for a wrongful use or with the intent to defraud as described herein constitute elder

financial abuse as defined by Welfare and Institutions Code Sections 15610.30 (2) and 15657.6,

and the Trustee, on the Tacketts' behalf, is entitled to the remedies provided by Welfare and

Institutions Code Sections 15657.5 and 15657.6.

146.    The Trustee is entitled to compensatory damages consisting of the return of the

Tacketts' funds from Defendant in the amount of $250,000 with interest, and a Writ of Attachment

pursuant to Welfare and Institutions Code Section 15657.01 should be issued to secure the return

of the Tacketts' funds.

147.    The Trustee has incurred, and will continue to incur, attorney's fees and costs in this litigation. The Trustee, if successful in this action, is entitled to recover such fees and costs from Defendant, under the provisions of Welfare and Institutions Code Section 15657.5(a).

148.    In committing the actions and conduct described above, Defendant[s, and each of them], acted with recklessness, oppression, fraud, and malice, and Plaintiff therefore is entitled to an award of exemplary or punitive damages pursuant to Welfare and Institutions Code Section 15657.5 and Civil Code Section 3294.

149.    Pursuant to California Civil Code section 3345, because the conduct of Defendants (who knew their conduct was directed at senior citizens and/or would result in senior citizens being harmed) caused the Tacketts substantial loss of property set aside for retirement or for personal or family care and maintenance, and assets essential to their health or welfare, the Trustee is entitled to recover treble damages.

## PRAYER

### ON THE FIRST CLAIM FOR RELIEF:

1.    For compensatory damages in the sum of not less than $250,000.

2.    For interest on each component of the above sum associated with each of the improperly cancelled Policies, from and after the date of cancellation of each such Policy;

3.    For exemplary and punitive damages for Defendants' breach of the duty of good faith and fair dealing;

4.    For costs of suit; and

5.    For such other and further relief as the Court may deem proper.

### ON THE SECOND CLAIM FOR RELIEF:

1.    That the Court declare that the Life Settlement Agreement is rescinded;

2.    That Conestoga be ordered to restore to the Trustee, on behalf of the Tacketts' bankruptcy estate, the $250,000 paid to Conestoga under the Life Settlement Agreement.

3.    For interest on the sum of $30,000 from May 31, 2012 to August 1, 2012, and on the sum of $250,000 from August 1, 2012 until paid;

4.    For exemplary and punitive damages;

5.    For costs of suit; and

6.    For such other and further relief as the Court may deem proper.

**ON THE THIRD CLAIM FOR RELIEF:**

1.    For the principal sum of $250,000;

2.    For interest on the sum of $30,000 from May 31, 2012 to August 1, 2012, and on the sum of $250,000 from August 1, 2012 until paid;

3.    For costs of suit; and

4.    For such other and further relief as the Court may deem proper.

**ON THE FIFTH CLAIM FOR RELIEF:**

1.    For damages in the sum of not less than $250,000;

2.    For interest on the sum of $30,000 from May 31, 2012 to August 1, 2012, and on the sum of $250,000 from August 1, 2012 until paid;

3.    For exemplary and punitive damages;

4.    For costs of suit; and

5.    For such other and further relief as the Court may deem proper.

**ON THE SIXTH CLAIM FOR RELIEF:**

1.    For damages in the sum of not less than $250,000;

2.    For interest on the sum of $30,000 from May 31, 2012 to August 1, 2012, and on the sum of $250,000 from August 1, 2012 until paid;

3.    For costs of suit; and

4.    For such other and further relief as the Court may deem proper.

**ON THE SEVENTH CLAIM FOR RELIEF:**

1.    For damages in the sum of not less than $250,000;

2.    For interest on the sum of $30,000 from May 31, 2012 to August 1, 2012, and on the sum of $250,000 from August 1, 2012 until paid;

3.    For costs of suit; and

4.    For such other and further relief as the Court may deem proper.

1

## ON THE EIGHTH CLAIM FOR RELIEF:

2       1.     For rescission of the purchase of the securities and recovery of $250,000, the

3 original consideration paid for the securities;

4       2.     For interest on the sum of $30,000 from May 31, 2012 to August 1, 2012, and on

5 the sum of $250,000 from August 1, 2012 until paid;

6       3.     For costs of suit; and for such other and further relief as the Court may deem

7 proper.

8

## ON THE NINTH CLAIM FOR RELIEF:

9       1.     For damages in the sum of not less than $250,000;

10      2.     For interest on the sum of $30,000 from May 31, 2012 to August 1, 2012, and on

11 the sum of $250,000 from August 1, 2012 until paid;

12      3.     For costs of suit; and

13      4.     For such other and further relief as the Court may deem proper.

14

## ON THE TENTH CLAIM FOR RELIEF:

15      1.     For rescission of the purchase of the securities and recovery of $250,000, the

16 original consideration paid for the securities;

17      2.     For interest on the sum of $30,000 from May 31, 2012 to August 1, 2012, and on

18 the sum of $250,000 from August 1, 2012 until paid;

19      3.     For costs of suit; and

20      4.     For such other and further relief as the Court may deem proper.

21

## ON THE ELEVENTH CLAIM FOR RELIEF:

22      1.     For damages in the sum of not less than $250,000;

23      2.     For interest on the sum of $30,000 from May 31, 2012 to August 1, 2012, and on

24 the sum of $250,000 from August 1, 2012 until paid;

25      3.     For costs of suit; and

26      4.     For such other and further relief as the Court may deem proper.

27 ///

28

## ON THE TWELFTH CLAIM FOR RELIEF:

1.      For a judgment by the Court determining that Conestoga willfully violated the automatic stay;

2.      For actual and punitive damages in amounts to be proven at trial.

3.      For costs of suit; and

4.      For such other and further relief as the Court may deem proper.

## ON THE THIRTEENTH CLAIM FOR RELIEF:

1.      For damages in the sum of not less than $250,000;

2.      For interest on the sum of $30,000 from May 31, 2012 to August 1, 2012, and on the sum of $250,000 from August 1, 2012 until paid;

3.      For exemplary and punitive damages;

4.      For treble damages pursuant to California Civil Code section 3345;

5.      For costs of suit; and

6.      For such other and further relief as the Court may deem proper.

Date: June 19, 2018                                  **GOE & FORSYTHE, LLP**


                                                     By: */s/Thomas J. Eastmond*
                                                         Thomas J. Eastmond, Counsel for
                                                         Steven M. Speier, Chapter 7 Trustee

# EXHIBIT 1

# EXHIBIT 1

RECEIVED

JUN 0 6 2012

SCANNED

## Conestoga Settlement Services, LLC
## Checklist for Participation (Non-Qualified Funds)
## FOR CALIFORNIA PARTICIPANTS ONLY

**Independent Contractor Name:** MIKE WOODS
**Independent Contractor Number:** C0510005

**Participant Name:** Ellen O. Tackett

## Documents included

✓ Confidential Participant Capacity Information Form

✓ Important Disclosures

✓ Important Disclosures for California Participants (use this form IN ADDITION TO Important Disclosures form)

✓ Life Insurance Policy Funding Agreement – For Use in California

✓ Conestoga Settlement Trust Participation Agreement

✓ IRS Form W-9 Request for Taxpayer Identification Number

## Documents to obtain from Participant

✓ Enlarged Copy (minimum 150%) of Participant's Driver's License or other government-issued photo ID (verify current address; obtain written explanation if current address is different than as shown on ID)

If Participant is a trust or another entity, obtain copy of organizational documents

✓ Make all checks payable to:

Provident Trust Group, LLC Escrow Account
for the benefit of Conestoga Settlement Trust

Write Participant's name in memo section

**Checklist**        - 1 -        **07/08/2010**



# CONESTOGA SETTLEMENT SERVICES, LLC

### Verification of Accredited Investor Status

In order to be able to acquire a beneficial interest in a fixed percentage participation in the proceeds of life insurance policies through the Conestoga Settlement Trust, the proposed participant must qualify as an "accredited investor" as that term is defined below.

**ACCREDITED INVESTOR: An individual or an entity is considered an *accredited investor* for purposes of a possible participation in the Conestoga Settlement Trust, if such individual or entity meets at least one of the following qualifications (initial every applicable item below):**

_____ **(1)** **I am a natural person whose individual net worth (or joint net worth with my spouse), including investments and all property and other assets, but excluding my primary residence, exceeds One Million Dollars ($1,000,000);**

_____ **(2)** **My individual annual income exceeded Two Hundred Thousand Dollars ($200,000) in each of the two most recent years and I expect my income to exceed Two Hundred Thousand Dollars ($200,000) in the current year;**

_____ **(3)** **My joint annual income with my spouse exceeded Three Hundred Thousand Dollars ($300,000) in each of the two most recent years and I expect my joint income with my spouse to exceed Three Hundred Thousand Dollars ($300,000) in the current year;**

_____ **(4)** **The participant in the Conestoga Settlement Trust is a legal entity, and all of such entity's equity owners meet at least one of the net worth or annual income tests listed in (1)-(3) above;**

_____ **(5)** **The participant in the Conestoga Settlement Trust is a trust which formed for a purpose other than that of participating in life settlements, which has total assets in excess of Five Million Dollars ($5,000,000), and the investment decisions of which are directed by a person who has such knowledge and experience in financial and business matters that he or she is capable of evaluating the merits and risks of the proposed participation;**

_____ **(6)** **The participant in the Conestoga Settlement Trust is a revocable trust created by an investor for his or her own benefits, who meets at least one of the net worth or annual income tests listed in (1)-(3) above;**

_____ **(7)** **The participant in the Conestoga Settlement Trust is a legal entity with total assets in excess of Five Million Dollars ($5,000,000) which was formed for a purpose other than that of participating in life settlements, and which is a corporation, partnership, limited liability company, business trust, or a tax-exempt organization as described in Section 501 (c)(3) of the Internal Revenue Code of 1986, as amended;**

Accredited Investor Verification                    - 1 -

(8) **The participant is an "accredited investor" as such term is defined in Securities and Exchange Commission Rule 501 under Regulation D for one or more of the reasons listed above, which I decline to specify due to issues of financial privacy.**

## PRIOR INVESTMENT EXPERIENCE

In order to be able to acquire a beneficial interest in a fixed percentage participation in the proceeds of life insurance policies through the Conestoga Settlement Trust, the proposed participant must have adequate prior investment experience, as listed below (initial each applicable statement):

**My business or investment experience is such that I can analyze a prospective investment and determine whether it is suitable for me.**

**I normally consult with my investment advisor before making decisions regarding participation in a life settlement.**

**I have experience as an investor in the following:**

**Stocks, bonds, and/or mutual funds traded on a national securities exchange
Life settlement transactions
Restricted stock, bulletin board stock or stock issued in a private placement
Commodities or futures contracts
Partnerships, limited liability companies, or corporations which invest in real estate or real estate investment trusts (REITs)
Other types of investments not mentioned in any of the previous categories (describe):** _Speculative Business Investments_

I represent and warrant that I have read the above definition of "accredited investor," that I, as a proposed beneficiary of and participant in the Conestoga Settlement Trust, am an "accredited investor" as such term is defined above, and that my affirmation herein may be relied upon by Conestoga Settlement Services, LLC and the Conestoga Settlement Trust. I further represent and warrant that I have had prior investment experience as listed above.

Signature: _Ellen O. Tackett_    Date: _05-31-2012_

Printed Name: ELLEN O. TACKETT    At: City: _San Bernardino_ State: _CA_

By joining in this Verification through my signature below, I make the same representations and warranties that appear above.

Spouse's Signature: _John E. Tackett_    Date: _05-31-2012_

Printed Name: JOHN E. TACKETT    At: City: _San Bernardino_ State: _CA_

**Accredited Investor Verification** - 2 -

# CONFIDENTIAL PARTICIPANT CAPACITY INFORMATION FORM

**Section I.**

Source of participant funds for acquisition of a beneficial interest in a life insurance policy:

individual funds as my separate property

✓ funds from myself and my spouse as community property

by an entity I control or direct as property of that entity, including an IRA, PSP, Trust, Partnership, Joint Venture, Corporation, Limited Liability Company, etc.

Client(s) Initials: _____

**Section II.**

If you are interested in acquiring certain beneficial interests in a trust which holds the rights to death benefits payable under one or more life insurance policies, please initial **each** statement that applies to you.

_____  My participation constitutes __Two__ percent ( __2__ ) of my present net worth. **[Note: If the percentage listed above is ten percent (10%) or more, please provide a full and complete explanation as to why you believe this is an appropriate acquisition for you.]** I represent that I am able to protect my own interests in connection with this transaction, and I have sufficient knowledge and experience in financial and business matters such that I am capable of evaluating the merits and risks of the prospective participation in one or more life insurance policies. My knowledge and experience are as follows (attach additional sheets as necessary):

Our business or investment experience is such that we can analyze a prospective investment and
determine if it is suitable for us.

_____  I have a professional financial advisor (a) who is not directly or indirectly affiliated with Conestoga Settlement Services, LLC or with the Conestoga Settlement Trust; (b) who is not directly or indirectly compensated by Conestoga Settlement Services, LLC or the Conestoga Settlement Trust, their affiliates or representatives; and (c) who has sufficient business and financial experience to protect my interests in connection with this transaction:

The name, address, and telephone number of my professional advisor are:

Name: _____

Address: _____

Telephone: _____

**Information Form**                    - 1 -                    **07/08/2010**

EXHIBIT "1"

**Section III.**

If you are acting as Trustee of a Trust that is interested in purchasing certain interests payable under one or more life insurance policies on behalf of such Trust, please initial **each** statement below that applies to you.

_____        I have sufficient knowledge and experience in financial and business matters such that I am capable of evaluating the merits and risks of the transaction.  My knowledge and experience are as follows (attach additional sheets as necessary):

_____

_____

_____

_____        An individual or entity that is representing me and/or the Trust has sufficient knowledge and experience in financial and business matters, such that he/she/it is capable of evaluating the merits and risks of the prospective acquisition.  This representative (a) is not directly or indirectly affiliated with Conestoga Settlement Services, LLC or with the Conestoga Settlement Trust; and (b) is not directly or indirectly compensated by Conestoga Settlement Services, LLC, the Conestoga Settlement Trust, or by their affiliates or representatives.

The name, address, telephone number, and profession of this representative are:

Name and Profession: _____

Address: _____

Telephone: _____

**I represent and warrant that the information contained herein is complete and accurate and may be relied upon by Conestoga Settlement Services, LLC.  I also agree to notify Conestoga Settlement Services, LLC of any material change in any of the information herein prior to my acquisition.  I further represent and warrant that I have carefully examined my financial resources, and tolerance of risk.  After conducting this examination and reviewing the terms of the Life Insurance Policy Funding Agreement, I have determined that this acquisition is appropriate for me.  I understand the terms and conditions of this transaction, either independently or as explained to me by one or more professional financial advisors not affiliated with or in any way compensated by Conestoga Settlement Services, LLC, its affiliates, or representatives.**

Signature: X  *Ellen O. Tackett*        Date: X  05/31/12

Printed Name: X  Ellen O. Tackett        At: City: X  San Bern.  State: X CA

*John E. Tackett*
*John E. Tackett*

**Information Form**        - 2 -        07/08/2010

EXHIBIT "1"

By joining in this Confidential Participant Capacity Information Form through my signature below, I make the same representations and warranties that appear above.

Spouse's Signature: X _~John E. Tackett~_          Date: X  5-31-12

Printed Name: X  John E. Tackett          At: City: X San Bern.  State: X CA


Signature of Financial Representative


Signature


Printed name of Financial Representative: _____

EXHIBIT "1"

**CONESTOGA SETTLEMENT SERVICES, LLC**
1201 Orange Street, #600
Wilmington, Delaware 19899
(302) 357-9385

**Important Disclosures**
**Significant Risk Factors**

**Please read the following before you decide to become a participant**

Life settlements offer an opportunity for diversification within your asset portfolio, because the risks associated with life settlements are not directly correlated with the financial markets or with other types of financial investments. There are, however, significant risk factors involved with life settlement transactions. We have described herein some of the risk factors involved, but there are additional risk factors associated with life settlements that have not been discussed herein. **As with any financial transaction, you are encouraged to seek competent legal and financial advice to assist you in understanding this transaction, the terms and conditions of the documents you are asked to sign, and any tax consequences of your decision to engage in a life settlement transaction.**

**Description of a life settlement transaction**

You are entering into an agreement to participate in a financial transaction, to own certain beneficial interests in the Conestoga Settlement Trust (the "Conestoga Trust") which holds certain life insurance policies resulting from life settlement transactions.

A "life settlement" is an acquisition of an existing life insurance policy by a third party. In such transaction, the person insured under the policy (the "insured") is paid a cash amount during his or her life. The amount paid is a discount from the actual death benefit payable under the policy. In return for receiving a cash payment during his or her lifetime, the insured transfers ownership of the policy and assigns the right to designate the beneficiary under the policy to the entity which has purchased the policy. In this transaction, the insured person who receives a cash payment in return for assigning the right to designate the beneficiary under the policy is called a "life settlor."

Life settlement transactions are distinguished from viatical settlement transactions, in that the life settlor does *not* have a catastrophic or life-threatening illness at the time of the transaction, whereas in a viatical settlement transaction, the insured person *does* currently have a catastrophic or life-threatening illness, and thus, such person's life expectancy is reduced.

Conestoga Settlement Services, LLC (hereinafter, "Conestoga") makes available certain life insurance policies for participation. In the transaction made available through Conestoga, you will acquire certain beneficial interests in a trust which holds certain life insurance policies. The beneficial interest which you will acquire in the life insurance policy may be either 100% of the death benefit, or a fractional interest in such death benefit. If the beneficial interest you choose to acquire is less than 100% of the death benefit of the policy, additional beneficial interests in

EXHIBIT "1"

such policy may be sold to other participants. When the life settlor dies, you receive the percentage of death benefits in which you hold a beneficial interest.

**The following is an example of a life settlement transaction:**

Mr. Smith owns a life insurance policy with a death benefit of $100,000, issued by ABC Insurance Company. Mr. Smith desires to "cash in" such policy so that he may receive some of the value of such policy before his death. Mr. Smith enters into an agreement to sell his policy to a third party. The third party pays Mr. Smith $50,000 in cash in return for the right to receive the $100,000 death benefit when Mr. Smith dies. Such third party then makes available for acquisition beneficial interests in the right to receive the $100,000 death benefit. Perhaps ten (10) separate participants each acquire a beneficial interest in ten percent (10%) of the death benefit payable under the policy. Conestoga then calculates and collects the amount required for each such participant to acquire their beneficial interest in 10% of the death benefit. In this example, each participant may be required to contribute $6,000 initially. Part of these funds are paid for acquisition of the policy, part of the funds are held in escrow to pay the premiums calculated to be due on the policy to keep it in force, and part of the funds are distributed for various fees to facilitate and service the transaction. Assume Mr. Smith two (2) years after entering into the life settlement transaction. The increase in value to each participant would be the difference between the amount he or she has paid, in this example $6,000, and each participant's beneficial interest in the percentage of the expected death benefit – 10% of $100,000, or $10,000.

The example described above is demonstrated in the following steps:

    (1)    Mr. Smith – owns $100,000 life insurance policy issued by ABC Life Insurance Company

    (2)    XYZ Life Settlement Company acquires the policy from Mr. Smith for $50,000

    (3)    XYZ Life Settlement Company sells the policy to the Conestoga Trust, which in turn permits Conestoga Settlement Services, LLC to make available beneficial interests in the death benefit payable under Mr. Smith's policy

    (4)    Conestoga Trust is named as the irrevocable beneficiary under the policy

    (5)    Conestoga makes available through independent contractors the right to refer their clients who desire to acquire beneficial interests in ten percent (10%) of the death benefits under Mr. Smith's policy. Then ten (10) such clients become beneficiaries in the Conestoga Trust, under which each of such clients will acquire a beneficial interest in 10% of the proceeds payable under Mr. Smith's policy, being a total of 100% of the death benefits. Each participant pays $7,000 for a beneficial interest in 10% of the death benefits.

    (6)    After two years, Mr. Smith dies; the Conestoga Trust files a claim for the death benefit payable under the policy

EXHIBIT "1"

(7)    After receipt of the death benefit, Conestoga Trust distributes the death benefit to the ten participants who each acquired a beneficial interest in 10% of the death benefits payable under the policy, paying $10,000 to each participant

**There is no annual "rate of return" on a life settlement transaction**

Unlike the case with many other financial transactions, there is no "annual rate of return" on your beneficial interest in the life settlement transaction. The percentage amount of your beneficial interest will be paid after the life settlor dies, and the life insurance company which issued the policy pays the death benefits payable under the policy. Only then will your beneficial interest in the death benefit proceeds be paid. The date the life settlor dies and you are paid your percentage of the death benefit will determine any increase in value on your participation.

**The life expectancy of the life settlor**

The primary risk factor in determining any increase in value on your participation is time. You will not receive any funds or distribution or any increase in value of your participation until the life insurance policy or policies in which you decide to acquire a beneficial interest have matured, meaning that the life settlor has died and the life insurance company has paid the death benefit under the policy or policies. The longer the life settlor lives, the more premiums need to be paid to keep the life insurance policy in force. The longer the life settlor lives and the more resulting premiums that are required to keep the life insurance policy in force, the lower the amount of any increase in value on your beneficial interest in the life settlement will be. No one can with certainty predict the date of death of the life settlor. For that reason, Conestoga escrows additional premiums for an additional amount of time beyond the estimated life expectancy of the insured, to keep the policy in force.

Any projected increase in the value of your participation in this transaction is based on an estimated life expectancy for the life settlor in whose like insurance policy you acquire a beneficial interest. The change in the value of your participation in this transaction may vary greatly from any expected increase in value, depending on when the insurance policy actually matures, resulting from the actual date of death of the life settlor and payment of the death benefit by the insurance company (referred to herein as the "maturity date"). The maturity date may be before than, at the same time, or after the estimated life expectancy of the life settlor. The change in the value of your participation will be higher than expected if the maturity date comes before the estimated life expectancy of the life settlor, and will be lower than expected if the maturity date comes after the estimated life expectancy of the life settlor.

**No one can predict the actual life expectancy of the life settlor.**

When the life insurance policies are made available for possible participation, Conestoga receives life expectancy estimates on the life settlors from a qualified third-party life expectancy provider. Any life expectancy report received is only an estimate of how long the life settlor will live, based on available medical and actuarial data. No one can predict when an individual will

EXHIBIT "1"

die. Within a given set of life insurance policies, there may be life settlors who die earlier than expected, other life settlors who die when expected, and still other life settlors who live much longer than expected.

Some factors that may affect the accuracy of an estimate of the life settlor's life expectancy include the following:

- the experience and qualifications of the medical professional or life expectancy company which provided the life expectancy estimate;

- the life settlor's health conditions and

- changes/improvements in medical treatments and technology

### The payment of the death benefit may be delayed

As stated above, a life settlement is simply the purchase of an existing life insurance policy by a third party. In some cases, the insurance company which issued the life insurance policy may contest the payment of the death benefit when the life settlor dies, because of a lack of an insurable interest, or for fraud in the insurance policy application. Generally, insurance companies cannot contest payment of the death benefit if the policy has been in effect for a certain period of time, usually two years. This period is called the "contestability period." In order to reduce this risk of contestability, Conestoga and its associated entities evaluate the policies made available for participation to see if there is a possibility of fraud or misrepresentation, or lack of insurable interest at the time the policy was issued. Further, Conestoga ensures that all policies it makes available for participation have been in force for at least two (2) years, and that all policies are beyond the applicable contestability period under the laws of the particular state in which the policy was issued.

### You may be required to pay additional money after your initial participation and deposit

By entering into this transaction, you will own a beneficial interest in the right to the future payment of a percentage of the death benefit payable under the life insurance policy, after the life settlor dies and the claim under the life insurance policy is paid. A vitally important part of this transaction is keeping the life insurance policy in force. The insurance company which issued the life insurance policy (ABC Life Insurance Company in the above example), may cancel the policy if the premiums due on such policy are not paid to keep the policy in force. If the policy is not in force at the time of the life settlor's death, ABC Life Insurance Company may not pay the death benefit, and your beneficial interest in the life settlement contract will be worthless.

At the time of your initial participation, a certain amount of the funds you will pay for participation will be placed into escrow for payment of expected premiums to keep the life insurance policy in force. If the life settlor lives longer than expected, and beyond the additional amount of time for which additional estimated premiums have been escrowed, you may be requested to pay your percentage share of additional premiums necessary to continue to keep the life insurance policy in force. If you fail to make such payments when requested, your beneficial

interest in the life settlement transaction may be terminated, and you will lose your position with respect to the life settlement transaction.

In the example used above, XYZ Life Settlement Company has estimated Mr. Smith's life expectancy, after reviewing Mr. Smith's current medical condition and history. If Mr. Smith lives beyond the life expectancy which has been estimated for him, and beyond the additional amount of time for which additional estimated premiums have been escrowed, the participants will be required to pay their portion of additional premiums necessary to keep Mr. Smith's policy in force. For example, presume that Mr. Smith lives longer than was originally expected, and the amount of funds held for the payment of premiums on Mr. Smith's policy is exhausted. A required premium payment of $3,000 becomes due, in order to keep the policy in force. The ten participants who each own a beneficial interest in 10% of the death benefit will each be asked to make an additional payment of $300 towards the premium due. If the participants fail to make such payments, it is possible that the participants will lose all of the funds they had previously paid to participate.

If the life settlor lives longer than expected and beyond the additional time for which premiums have been escrowed, and if those who held a beneficial interest in such life settlor's policy do not pay the additional premium payments required, and if Conestoga does not make the additional premium payments required or does not otherwise take any action to maintain the value of such policy, such policy may lapse. In such case, any participant who held a beneficial interest in the policy will lose the value of his or her beneficial interest.

**The following is an example of how a Participant may fare should a particular life settlor live longer than expected.**

Policy Number PE042210 – Principal Life Insurance Company – a $5 Million policy issued to a 78 year-old male non-smoker, who has a history of Dyslipidemia, Hypertension, Anemia, Gastroesophageal Reflux Disease, Diverticulosis, Duodenal Ulcer, Colon Polyps, Hiatal Hernia, Degenerative Joint Disease, Degenerative Disc Disease, Osteoarthritis, Osteopenia, Benign Prostatic Hypertrophy, Glaucoma, and Old Granulomatous Disease. The annual premium for this policy is estimated at $85,006.

**Policy Number PE042210 - Principal**
**Insured's Age = 78 years.**
**Life Expectancy = 58 months.**
**Premium Escrow = 88 months.**

An acquisition of $10,000 delivers a payout of $16,767 from the proceeds of $5 Million at maturity. The difference in value between the amount of the initial payment and the Participant's portion of the expected proceeds is $6,767 (calculated as $16,767 less the initial payment of $10,000). The annual premium to maintain this position is $285 (calculated as follows: the total amount of estimated annual premium, or $85,006, multiplied by the percentage of participation in the policy proceeds, being $16,767 divided by $5 Million, or 0.33534 percent participation).

EXHIBIT "1"

While the life expectancy for the life settlor is estimated at 58 months, Conestoga shall add an additional period of 30 months for which to keep the estimated premium amount in escrow. The expected premium amount for a total of 88 months (7.3 years) is maintained in an escrow account for the payment of the premium on such life insurance policy. For the Participant in this example, $2,080.50 is held in escrow for expected premiums, which will pay for the expected premiums until the life settlor reaches the age of 85.3 years (78 years plus 88 months = 85.3 years). If the life settlor lives beyond 88 additional months, then the Participant will need to pay an annual estimated premium amount of $285 to maintain his or her beneficial interest in this policy.

While premium amounts held in escrow will be placed in interest-earning accounts, in this example, any interest income is excluded. Interest earned on the escrowed amounts will increase the amounts available for payment of premiums, and will have the effect of extending the age the life settlor would attain for the Participant to reach a break-even point.

**Your participation in the life settlement contract is not liquid**

The death benefit resulting from a life insurance policy will not be paid until the life settlor dies. There is no established secondary market for life settlement contracts. You may not be able to sell your beneficial interest in the life settlement contract to get back the money you will pay in order to acquire such beneficial interest. Therefore, you should only use funds which you have for which you anticipate no immediate need and intend to hold as non-liquid for an indefinite period of time. Prior to using your funds to participate in a life settlement contract, you should consult with your financial advisor to ensure that you have enough liquid assets or income to provide for your daily needs.

**You will not directly own the percentage in the proceeds of the life insurance policy**

The ownership of the life insurance policy resulting from the life settlement transaction will be placed in the Conestoga Trust. The Conestoga Trust has arranged for the services of an independent escrow agent, which will be responsible for: (1) maintaining the life insurance policy, (2) making necessary premium payments to the insurance company to keep the policy in force, and (3) upon the death of the insured and receipt of the death benefits, distributing the proceeds of the death claim to the beneficiaries who held a beneficial interest in such policy, according to their percentage of participation. If you choose to participate, you will become a beneficiary of the Conestoga Settlement Trust, to the extent of your percentage of participation.

**Participating in a life settlement contract may have tax consequences**

Conestoga does not offer tax advice. You should consult with your own tax advisor regarding any possible tax consequences which may result from your beneficial interest in the life settlement contract, particularly if you desire to use funds in an individual retirement account (IRA) or any other self-directed retirement funds to acquire such beneficial interest in the life settlement contract.

EXHIBIT "1"

**Privacy laws and other factors may limit the information you are entitled to receive about the life settlor**

When a life settlor enters into a life settlement transaction to sell his or her interest in his or her life insurance policy, the life settlor consents to release certain of his or her confidential medical information and other identifying information. Some of this information, such as medical and contact information of the life settlor, is not released to participants, because of the confidential and sensitive nature of such information. When you decide to acquire a beneficial interest in a life settlement contract, your financial advisor will provide you some of this information in a confidential case history. Please be advised, however, that because we respect the privacy rights of the life settlors, we do not provide open access to such information to the participants. Even though the life settlor may have agreed to release some of his or her medical information, the Health Insurance Portability and Accountability Act (HIPAA) protects much of this information from disclosure.

After the closing of your acquisition of a beneficial interest in a life settlement contract, Conestoga will not ordinarily provide updated information about the life settlor. Conestoga will utilize the services of companies which monitor public databases, so that Conestoga will receive notification when a life settlor dies.

**Your deposited funds may not be able to be immediately used for acquiring a beneficial interest in life settlement policies**

If you decide to acquire a beneficial interest in a life settlement contract through Conestoga Settlement Trust, you will place your funds into an escrow account maintained by an escrow agent designated by the Trust. Conestoga has access to various life settlement policies resulting from previously-closed life settlement transactions, and not every policy will meet Conestoga's acceptance standards. Therefore, there might not be life settlement policies immediately available for participation, and your funds may sit inactive for some amount of time.

Conestoga will strive to provide you with suitable life settlement policies in which you may acquire a beneficial interest. Should you decide that that the placement process is taking too long, you may withdraw your funds from the escrow agent at any time prior to the acquisition of such beneficial interest in a life settlement policy.

**A portion of your initial deposit of funds will be used for fees and commissions associated with the acquisition of a beneficial interest in the life settlement policy and the closing of the life settlement contract**

For each life settlement policy in which you may choose to acquire a beneficial interest, part of your funds will be allocated for the "Acquisition Cost" for such life settlement policy. The Acquisition Cost includes the initial price for your acquisition of a beneficial interest in the life settlement policy. The Acquisition Cost includes the following:

   - The amount paid to the life settlor for the acquisition of the life settlement policy

- An amount to be held in an escrow account for expected premiums to keep the life settlement policy in force
- Fees paid to the life settlement provider
- Fees paid to the escrow agent for such agent's services in the transaction
- Fees paid to your financial consultant for his or her services in representing you in this transaction
- Fees paid to Conestoga for arranging for the transaction and facilitating the acquisition of a beneficial interest in the life settlement policy

After your initial deposit of funds, you will not be required to directly pay any additional fees to Conestoga or to your financial advisor. The escrow agent may charge additional fees for their escrow services. Such fees may be charged against the funds held on deposit. As stated herein, you may be required to pay additional premiums if the life settlor lives longer than the period for which estimated premiums have been deposited.

**You could lose some of the death benefit if the insurance company that issued the life insurance policy goes out of business**

All of the policies made available by Conestoga are policies issued by U. S. Legal Reserve life insurance companies. In the unlikely event that a U. S. Legal Reserve life insurance company goes out of business, the laws, rules and regulations regarding how an insurance company goes out of business and the payment of claims vary from state to state. The amount of claims payable by an insolvent insurance company may be limited, and in such cases, you may not receive all of the beneficial interest in your percentage of the death benefit. In addition, in such cases, the payment of claims may be significantly delayed, as the receiver of the insolvent company may take some amount of time to administer all claims.

Using the above example, presume ABC Insurance Company, the insurance company that issued Mr. Smith's insurance policy, goes out of business, and ABC is forced into a receivership and is liquidated. The receivership estate may limit claims to $75,000 each, so that the entire $100,000 death benefit under Mr. Smith's policy may not be payable. In such case, each of the ten participants would only be entitled to receive $7,500. Further, it may take many months after Mr. Smith's death for the receivership estate to pay out the death claim on Mr. Smith's policy, due to the additional time required for the receivership estate to administer claims.

**If you die before the life settlor dies**

If you die before the life settlor dies, the death benefit ultimately received will be payable to your estate. You are advised to discuss potential consequences and any necessary estate planning with your financial representative.

**Conestoga management**

One of the complaints brought against companies involved in the life settlement industry is the failure to disclose the background of the management of such companies. In order to address these concerns, Conestoga strives to provide all relevant information concerning its management.

EXHIBIT "1"

The manager of Conestoga, Michael McDermott, has over thirty (30) years of experience in the insurance industry, including owning a controlling interest in three insurance companies, and being a licensed insurance agent. Mr. McDermott has had no disciplinary actions taken by any insurance regulatory authority against his licenses in more than thirty years. Like many people, Mr. McDermott suffered economic reversals, and in 2005 he strategically filed for Chapter 7 bankruptcy protection. Such bankruptcy filing did not involve any debts to consumers or to insurance companies. Mr. McDermott was once charged with an offense on a charge unrelated to his business. Mr. McDermott agreed to accept deferred adjudication, and successfully completed a period of probation, and the charge was dismissed.

## Acknowledgement of receipt of these disclosures

I (or we), the undersigned, hereby confirm that I (we) have read the above disclosures. I (we) understand the risks involved in acquiring a beneficial interest in a life settlement contract. In making a decision to participate in a life settlement contract, I (we) have not relied on any rate of return or on any estimate of life expectancy. I (we) fully understand that I (we) will not receive any payment until after the death of the life settlor. I (we) also understand that the sole source for payment of our percentage in a life settlement contract is the proceeds from the life insurance company which issued the policy in which I (we) acquired a beneficial interest. I (we) further understand that I (we) may be required to pay additional funds as premiums required to keep the life insurance policy in force.

X SIGNED, this _31 ST_ day of _MAY_ , 20 _12_ , in the City of _SAN BERNARDINO_

State of _CA_ .

Participant:                              Joint Participant (if any)

X _~signature~_                          X _~signature~_
Signature                                 Signature

X _ELLEN O. TACKETT_                      X _JOHN E. TACKETT_
Typed or printed name of Participant      Typed or printed name of Joint Participant


Conestoga independent contractor

_~signature~_
Signature

MIKE WOODS
Typed or printed name of Conestoga Independent Contractor


**Important Disclosures**          - 9 -                    08/27/2010

EXHIBIT "1"

CONESTOGA SETTLEMENT SERVICES, LLC
1201 Orange Street, #600
Wilmington, Delaware 19899
(302) 357-9385

**IMPORTANT DISCLOSURES**
**FOR CALIFORNIA PARTICIPANTS**

**Pursuant to California Corporations Code §25102 (q)**

**Please read the following before you decide to become a participant**

(1)     The Participant's participation in a life insurance policy resulting from a life settlement transaction, through the Participant's beneficial interest in the Conestoga Settlement Trust as described in the accompanying documents, is available only to qualified purchasers or other persons that Conestoga Settlement Services, LLC ("Conestoga") reasonably believes, after reasonable inquiry, to be qualified purchasers. If the Participant is a corporation, partnership, or other organization, such organization must be specifically formed for the purpose of acquiring the beneficial interests in the Conestoga Settlement Trust offered through Conestoga, and each of the equity owners of the corporation, partnership, or other organization must be a qualified purchaser. As used in this document, the term "qualified purchaser" includes the following:

(A)     A person designated in Section 260.102.13 of Title 10 of the California Code of Regulations.

(B)     A person designated in California Corporations Code §25102 (i) or any rule of the California Corporations Commissioner adopted thereunder.

(C)     A pension or profit-sharing trust established by Conestoga, a self-employed individual retirement plan, or an individual retirement account, if the investment decisions made on behalf of the trust, plan, or account are made solely by persons who are qualified purchasers.

(D)     An organization described in Section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, each with total assets in excess of five million dollars ($5,000,000) according to its most recent audited financial statements.

(E)     A natural person who, either individually or jointly with the person's spouse, (i) has a minimum net worth of one hundred fifty thousand dollars ($150,000) and had, during the immediately preceding tax year, gross income in excess of one hundred thousand dollars ($100,000) and reasonably expects gross income in excess of one hundred thousand dollars ($100,000) during the current tax year or (ii) has a minimum net worth of two hundred fifty thousand dollars ($250,000). As used herein, the term "net worth" shall be determined exclusive of home,

EXHIBIT "1"

home furnishings, and automobiles. Other assets included in the computation of net worth may be valued at fair market value. Each natural person specified above, by reason of his or her business or financial experience, or the business or financial experience of his or her professional adviser, who is unaffiliated with and who is not compensated, directly or indirectly, by the issuer or any affiliate or selling agent of the issuer, can be reasonably assumed to have the capacity to protect his or her interests in connection with the transaction. The amount of the investment of each natural person shall not exceed 10 percent of the net worth, as determined by this subdivision, of that natural person.

(F)     Any other purchaser designated as qualified by rule of the California Corporations Commissioner.

(2)     The Participant hereby represents that the Participant is participating in the Conestoga Settlement Trust for the Participant's own account (or trust account, if the Participant is a trustee) and not with a view to or for sale in connection with a distribution of the security.

(3)     The following information is hereby provided to the Participant at least five (5) business days before the beneficial interest in the Conestoga Settlement Trust described in this subdivision are sold to, or a commitment to acquire is accepted from, the Participant:

(A)     Name, principal business and mailing address, and telephone number of issuer:

> Conestoga Settlement Services, LLC
> 1201 Orange Street, #600
> Wilmington, Delaware 19899
> (302) 357-9385 Telephone

(B)     Participant hereby acknowledges receipt of the suitability standards for prospective participants as set forth in paragraph (1) above.

(C)     The following description of Conestoga's type of business organization and the state in which the Conestoga is organized or incorporated:

Conestoga Settlement Services, LLC is a limited liability company organized and existing under the laws of the State of Delaware.

(D)     A brief description of the business of Conestoga is as follows:

Conestoga Settlement Services, LLC is organized to assist Participants to participate in life settlement transactions. Conestoga has arranged for these services through the establishment of the Conestoga Settlement Trust, a trust organized under the laws of the State of Delaware, by the appointment of an escrow agent to receive and hold the necessary funds, by engaging a qualified accounting firm to conduct audits of the Conestoga Settlement Trust and escrow

accounts, and by contracting with independent contractors to market these services to prospective Participants.

(E)   The actual owner of the life insurance policies resulting from the life settlement transactions will be the Conestoga Settlement Trust. Each Participant will be made a beneficiary of the Conestoga Settlement Trust, to the extent of such Participant's participation in the life insurance policies. Conestoga shall procure and provide, when available, an audit report of an independent certified public accountant together with a balance sheet and related statements of income, retained earnings, and cashflows that reflect the Conestoga Settlement Trust's financial position, the results of Trust's operations, and the Trust's cashflows as of a date within 15 months before the date of the initial issuance of the beneficial interests in the Trust. The financial statements listed in this subparagraph shall be prepared in conformity with generally accepted accounting principles. If the date of the audit report is more than 120 days before the date of the initial issuance of the beneficial interests in the Conestoga Settlement Trust described in this subdivision, Conestoga shall provide unaudited interim financial statements.

(F)   The names of all directors, officers, partners, members, or trustees of Conestoga, and of the Trustee of the Conestoga Settlement Trust, are as follows:

> Conestoga Settlement Services, LLC
> Michael C. McDermott, Manager
>
> Conestoga Settlement Trust
> De Leon & Washburn, P.C., Trustee

(G)   As of the date of this disclosure, there is no order, judgment, or decree that is final as to either Conestoga Settlement Services, LLC or the Conestoga Settlement Trust of any state, federal, or foreign country governmental agency or administrator, or of any state, federal or foreign country court of competent jurisdiction (i) revoking, suspending, denying, or censuring for cause any license, permit, or other authority of either Conestoga Settlement Services, LLC or the Conestoga Settlement Trust or of any director, officer, partner, member, trustee, or person owning or controlling, directly or indirectly, 10 percent or more of the outstanding interest or equity securities of Conestoga Settlement Services, LLC or the Conestoga Settlement Trust, to engage in the securities, commodities, franchise, insurance, real estate, or lending business or in the offer or sale of securities, commodities, franchises, insurance, real estate, or loans, (ii) permanently restraining, enjoining, barring, suspending, or censuring any such person from engaging in or continuing any conduct, practice, or employment in connection with the offer or sale of securities, commodities, franchises, insurance, real estate, or loans, (iii) convicting any such person of, or pleading nolo contendere by any such person to, any felony or misdemeanor involving a security, commodity, franchise, insurance, real estate, or loan, or any aspect of the

securities, commodities, franchise, insurance, real estate, or lending business, or involving dishonesty, fraud, deceit, embezzlement, fraudulent conversion, or misappropriation of property, or (iv) holding any such person liable in a civil action involving breach of a fiduciary duty, fraud, deceit, embezzlement, fraudulent conversion, or misappropriation of property.

(H)  **ANY PARTICIPANT WHO PURCHASES A BENEFICIAL INTEREST IN THE CONESTOGA SETTLEMENT TRUST AS IS PROVIDED FOR IN THESE DOCUMENTS MAY RESCIND OR CANCEL SUCH PURCHASE FOR ANY REASON. THE PARTICIPANT MAY RESCIND OR CANCEL THE PURCHASE AT ANY TIME BEFORE SEVEN (7) CALENDAR DAYS AFTER THE DATE THE PARTICIPANT REMITS THE REQUIRED PAYMENT FOR PARTICIPATION TO THE CONESTOGA SETTLEMENT TRUST OR THE DESIGNATED ESCROW AGENT BY GIVING WRITTEN NOTICE OF RESCISSION OR CANCELLATION TO CONESTOGA SETTLEMENT SERVICES, LLC, THE TRUSTEE OF THE CONESTOGA SETTLEMENT TRUST OR TO THE ESCROW AGENT. NO SPECIFIC FORM IS REQUIRED TO GIVE THIS NOTICE OF RESCISSION OR CANCELLATION. THIS NOTICE SHALL BE EFFECTIVE WHEN PERSONALLY DELIVERED, DEPOSITED IN THE UNITED STATES MAIL, OR DEPOSITED WITH A COMMERCIAL COURIER OR DELIVERY SERVICE. THE CONESTOGA SETTLEMENT TRUST OR THE DESIGNATED ESCROW AGENT SHALL REFUND ALL OF THE PARTICIPANT'S MONEY WITHIN SEVEN (7) CALENDAR DAYS AFTER RECEIVING THE NOTICE OF RESCISSION OR CANCELLATION.**

(I)  The name, address, and telephone number of the insurance company or companies which issued the life insurance policies in which the Participant shall be participating, and the name, address and telephone company of the applicable regulatory authority of such insurance company, are listed in the Exhibit "A" attached to the Participant's Life Insurance Policy Funding Agreement.

(J)  The total face value of the insurance policy and the percentage of the insurance policy in which the Participant will participate, by owning a beneficial interest in the Conestoga Settlement Trust, are as listed in the Exhibit "A" attached to the Participant's Life Insurance Policy Funding Agreement.

(K)  The policy number, issue date, and type of the insurance policy in which the Participant will participate, by owning a beneficial interest in the Conestoga Settlement Trust, are as listed in the Exhibit "A" attached to the Participant's Life Insurance Policy Funding Agreement.

(L)  If the life insurance policy in which the Participant will participate is a group insurance policy, the name, address, and telephone number of the group, and, if

applicable, the material terms and conditions of converting the policy to an individual policy, including the amount of increased premiums required, are as listed in the Exhibit "A" attached to the Participant's Life Insurance Policy Funding Agreement.

(M)    If the life insurance policy in which the Participant will participate is a term life insurance policy, the term of such policy and the name, address, and telephone number of the person who will be responsible for renewing the policy if necessary are as listed in the Exhibit "A" attached to the Participant's Life Insurance Policy Funding Agreement.

(N)    The reasons for which the life insurance policy in which the Participant will participate is beyond the applicable state statute for contestability are as listed in the Exhibit "A" attached to the Participant's Life Insurance Policy Funding Agreement.

(O)    The policy premiums and terms of premium payments due on the life insurance policy in which the Participant will participate are as listed in the Exhibit "A" attached to the Participant's Life Insurance Policy Funding Agreement.

(P)    The amount of the Participant's funds that will be set aside to pay premiums are as listed in the Exhibit "A" attached to the Participant's Life Insurance Policy Funding Agreement.

(Q)    The name, address, and telephone number of the person who will be the insurance policy owner and the person who will be responsible for paying premiums are as follows:

Insurance Policy owner:

> Conestoga Settlement Trust
> c/o De Leon & Washburn, P.C., Trustee
> 221 West 6th Street, Suite 1050
> Austin, Texas 78701
> (512) 478-5573

Escrow Agent (responsible for paying the premiums when due):

> Provident Trust Group, LLC
> 8880 W. Sunset, Suite 250
> Las Vegas, Nevada 89149
> (702) 434-0023

(R)    As provided in the Life Insurance Policy Funding Agreement, the Participant may be required at some point to pay additional premiums in order to keep any life

insurance policy in which the Participant will participate in force. Such premium payments may become necessary if the insured person under such life insurance policy outlives the period for which premiums have already been paid and any additional period for which premiums have been maintained in escrow. The date on which any such additional premiums, and the amount of any such additional premiums are unknown as of the date of this Disclosure. If and when any such information becomes available, the Participant and the Participant's financial representative (agent) shall be notified.

(S)  **ANY PROJECTED RATE OF RETURN TO THE PARTICIPANT FROM THE PARTICIPANT'S PARTICIPATION IN A LIFE INSURANCE POLICY IS BASED ON THE LIFE EXPECTANCY OF THE PERSON INSURED UNDER SUCH LIFE INSURANCE POLICY. SUCH RATE OF RETURN MAY VARY SUBSTANTIALLY FROM ANY EXPECTED RATE OF RETURN, BASED ON THE ACTUAL LIFE TERM, THE DATE OF DEATH, AND THE DATE THE CONESTOGA SETTLEMENT TRUST RECEIVES FUNDS FROM THE DEATH CLAIM FROM THE ISSUING INSURANCE COMPANY. THE AMOUNT OF ACTUAL GAIN AND RESULTING RATE OF RETURN WILL BE HIGHER IF THE TERM OF LIFE OF THE INSURED PERSON IS LESS THAN THE LIFE EXPECTANCY ESTIMATED AS OF THE TIME THE TRANSACTION CONTEMPLATED BY THIS DOCUMENT IS CLOSED, AND ANY SUCH GAIN AND RESULTING RATE OF RETURN WILL BE LOWER IF THE TERM OF LIFE OF THE INSURED PERSON EXCEEDS THE ESTIMATED LIFE EXPECTANCY.**

(T)  The Participant should consult with his or her tax adviser regarding the tax consequences of the participation in the life insurance policy hereunder. If the Participant is using retirement funds or accounts for such transaction, the Participant should consult with his or her tax adviser as to whether or not any adverse tax consequences might result from the use of those funds for such transaction.

(U)  Additional information as prescribed by rule of the California Corporations Commissioner:

_____

_____

_____

_____

_____

## THE REMAINDER OF THIS PAGE IS BLANK

## Acknowledgement of receipt of these disclosures

I (or we), the undersigned, hereby confirm that I (we) have read the above disclosures. I (we) understand the risks involved in participating in a life settlement contract. In making a decision to participate in a life settlement contract, I (we) have not relied on any rate of return or on any estimate of life expectancy. I (we) fully understand that I (we) will not receive any payment until after the death of the life settlor, if at all. I (we) further understand that I (we) may be required to pay additional funds as premiums required to keep the life insurance policy in force.

X  SIGNED, this ___31st___ day of _____May_____, 20 __12__, in the City of __San Bernardino__,

State of _____CA_____.

Participant:                                    Joint Participant (if any)


X _____              X _____
Signature                                       Signature

X  Ellen O. Tackett                             X  John E. Tackett
Typed or printed name of Participant            Typed or printed name of Joint Participant


Financial representative


_____
Signature


_____
Typed or printed name of financial representative


**Important Disclosures (California)**          **- 7 -**                          **07/08/2010**

EXHIBIT "1"

## CONESTOGA SETTLEMENT SERVICES, LLC

### LIFE INSURANCE POLICY FUNDING AGREEMENT
### FOR USE IN CALIFORNIA

This Life Insurance Policy Funding Agreement (the "Agreement") is hereby made this ___31st___ day of _____May_____, 20_12_ (the "Effective Date") by and between Conestoga Settlement Services, LLC, a Delaware limited liability company (hereinafter referred to as "Conestoga"), whose principal address is 1201 Orange Street, #600, Wilmington, Delaware 19899, and ___Ellen O. Tackett___ and John Tackett _____, (insert name), a(n) __individuals_____ (insert "individual" or "trust" depending on whether the participant is an individual or a trust) who is a resident of, or which is established under the laws of the state of California (hereinafter referred to as "Participant").

## RECITALS

WHEREAS, Conestoga is engaged in making available to independent contractors the right to refer clients who desire to acquire beneficial interests in percentages of the death benefits payable under life insurance policies to Conestoga; and

WHEREAS, Participant desires to participate in a trust, the purpose of which is to hold certain ownership interests in one or more life insurance policies resulting from life settlement transactions; and

WHEREAS, Participant has reviewed and acknowledges the receipt of all disclosure materials concerning the proposed participation in the trust for the acquisition of certain beneficial interests in one or more of such life insurance policies; and

WHEREAS, Participant and Conestoga understand and agree that their relationship is that of principal and agent, and that the proposed acquisition of certain beneficial interests in the life insurance policy death benefits does not constitute the sale of a security;

NOW, THEREFORE, in consideration of the mutual covenants herein contained, the parties hereto agree as follows:

## SECTION I

## PARTICIPATION IN TRUST

1.01    The Participant hereby agrees to participate in the Conestoga Settlement Trust (hereinafter referred to as the "Conestoga Trust"), the purpose of which is to acquire and hold ownership interests in certain life insurance policies acquired through life settlement transactions

EXHIBIT "1"

(hereinafter referred to as the "life settlement policies"), for the benefit of participants who desire to acquire beneficial interests in such life settlement policies. The Participant's percentage beneficial interest(s) in the particular life settlement policy(ies) is (are) as described in Exhibit "A" to this Agreement.

1.02    In order to fund the acquisition in the beneficial interest in the life settlement policy(ies) identified herein, the Participant agrees to deposit the sums identified in Exhibit "A" herein to the escrow agent designated by Conestoga. Such deposit may be made by a bank check made payable to, or wire transfer to, the designated escrow agent.

1.03    The participation in the Conestoga Trust, whereby the Trust shall acquire certain ownership interest(s) in the life settlement policy(ies) listed on Exhibit "A" herein for my benefit, shall occur at the Closing as specified herein.

1.04    The Participant's acquisition of a beneficial interest in the proceeds of life settlement policy(ies) as described herein is subject to the actual transfer of the ownership of such life settlement policy(ies) to the Conestoga Trust by the insurance company(ies) which had issued such life settlement policy(ies). In some cases, the life settlement policy(ies) may be withdrawn and/or otherwise become unavailable prior to the actual transfer of ownership from the insurance company(ies) to the Conestoga Trust. In such cases, Participant authorizes Conestoga to replace any such life settlement policy with another life settlement policy on the life of an insured person who has a similar life expectancy to that of the withdrawn policy.

1.05    If any life settlement policy in which the Participant has acquired a beneficial interest matures earlier than expected (i.e., the insured person has died earlier than expected), and as a result, there are funds designated for the payment of premiums remaining on deposit with the escrow agent, such funds shall remain on deposit in escrow for the benefit of the Participant. Any such funds remaining in escrow shall be maintained for the payment of premiums due on other life settlement policies in which the Participant has acquired a beneficial interest. At the time when all of the life settlement policies in which the Participant has had a beneficial interest mature, if the Participant still has funds in escrow and the Participant does not desire to acquire any beneficial interests in any other life settlement policies, the escrow agent shall refund any such funds held on deposit to the Participant (or to the Participant's estate).

## SECTION II

## CONESTOGA'S DUTIES AND OBLIGATIONS

2.01    In conjunction with the transactions contemplated under this Agreement, Conestoga shall perform the following services:

(a)     Conestoga shall review and approve applicants who desire to become participants in the Conestoga Trust;

(b)     Conestoga shall identify and designate an escrow agent to receive payments for participation in the Conestoga Trust

EXHIBIT "1"

(c)    Conestoga shall provide appropriate instructions to the designated escrow agent to deposit the Participant's funds into an escrow account for the Participant's participation in the Conestoga Trust

(d)    Conestoga shall prepare and maintain the documents and information concerning the Participant's participation in the Conestoga Trust

(e)    For participants who will participate in the Conestoga Trust utilizing funds from a self-directed individual retirement account, Conestoga shall solicit and screen qualified custodians who will hold all evidence such participants' participation.

## SECTION III

## COSTS FOR PARTICIPATION

3.01    The fees chargeable by Conestoga, the designated escrow agent, and any representatives in conjunction with the transactions contemplated hereunder shall be payable from the deposit sum to be made by the Participant as detailed in Paragraph 1.02 herein. Such fees shall be earned at the closing of the transaction contemplated hereunder. After payment of the deposit sum, the Participant shall not be responsible for any additional fees. In some cases, the Participant may be responsible for payment of additional premiums, as detailed in Paragraph 3.02 below.

3.02    **The Participant hereby acknowledges and agrees that this transaction involves the acquisition of a beneficial interest in a trust (the Conestoga Trust), which acquires ownership interests in a life insurance policy on the life of an unrelated individual (the life settlement policy). Upon the closing of the transaction described herein, the Participant becomes a beneficiary of the Conestoga Trust. A claim may be filed on such life insurance policy only when the insured person dies. The life expectancy of the insured has been calculated by medical professionals. It is possible that the insured may live longer than the calculated life expectancy period; in such cases, additional premiums may be required to be paid to the life insurance company which had issued the life insurance policy, in order to keep the policy in force. In those cases in which additional premiums are required, the Participant will be required to pay additional amounts of funds in order to keep such life insurance policies in force. Should the Participant fail or refuse to make any such additional payments that are required to keep any such life insurance policy in force, Conestoga may make such payments and will replace the Participant as a beneficiary of the Conestoga Trust for such policy. In such case, Participant shall have a period of thirty (30) days to redeem Participant's position as a beneficiary in the Conestoga Trust. If Participant fails to redeem such position, then Conestoga may assign such position to another participant, and Participant will lose all rights to participate as a beneficiary in the Conestoga Trust, for that specific life insurance policy.**

EXHIBIT "1"

## SECTION IV

## GENERAL PROVISIONS

4.01    The rights, privileges, duties and obligations of the parties under this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without reference to conflicts of law principles.

4.02    This Agreement is performable in New Castle County, Delaware.

4.03    This Agreement and the terms and conditions hereof may only be amended in writing, signed by both parties and attached hereto.

4.04    Except as expressly provided herein, the rights and remedies herein provided shall be cumulative and not exclusive of any other rights or remedies provided by law or otherwise. Failure of a party to detect, protest, or remedy any breach of this Agreement shall not constitute a waiver or impairment of any such term or condition, or the right of such party at any time to avail itself of such remedies as it may have for any breach or breaches of such term or condition. A waiver may only occur pursuant to the express written permission of the party, an authorized officer of the party, or an authorized representative of the party against whom the waiver is asserted.

4.05    In the event any term, condition, or provision of this Agreement is declared or found by a court of competent jurisdiction to be illegal, unenforceable, or void, the parties shall endeavor in good faith to agree to amendments that will preserve, as far as possible, the intentions expressed in this Agreement. If the Parties fail to agree on such amendments, such invalid term, condition, or provision shall be severed from the remaining terms, conditions, and provisions, which shall continue to be valid and enforceable to the fullest extent permitted by law.

4.06    Except as otherwise provided herein, neither this Agreement nor any rights granted hereunder may be assigned or otherwise transferred by any party, in whole or in part, whether voluntarily or by operation of law. Subject to the foregoing, this Agreement will be binding upon and inure to the benefit of the parties and their respective successors and assigns.

4.07    Any notice required or permitted under this Agreement or required by law must be in writing and must be (a) delivered in person, (ii) sent by registered or certified mail, postage prepaid, return receipt requested, or (iii) sent by facsimile or other electronic means, and addressed as follows:

Notice to Conestoga:

Conestoga Settlement Services, LLC
c/o Michael C. McDermott, Manager
1201 Orange Street, #600
Wilmington, Delaware 19899

EXHIBIT "1"

Notice to Participant:

X  Ellen O. Tackett
_____

X  3464 N. Arrowhead Ave.
_____

X  San Bernadino       CA       92405
_____

e-mail address: X cashmane@katewwdb.com
_____

Notice to Joint Participant:

X  John E. Tackett
_____

X  3464 N. Arrowhead Ave.
_____

X San Bernardino       CA       92405
_____

e-mail address: X cashmane@katewwdb.com
_____

Either party may amend its address for purpose of notice under this Agreement by providing written notice to the other party in accordance with this paragraph. Notices will be deemed to have been given at the time of actual receipt by the other party.

4.08    This Agreement and all attachments, exhibits, and addendums hereto sets forth the entire agreement and understanding between the parties, and cancels, revokes and rescinds all previous negotiations, agreements, commitments and representations, whether oral or in writing, with respect to the subject matter described herein, and neither party shall be bound by any term, clause, provision, or condition except as expressly provided for in this Agreement or as duly set forth in writing as a subsequent amendment to this Agreement, signed by the parties or duly-authorized officers or representatives of each party.

4.09    **The Participant agrees and acknowledges that the nature of Participant's participation in the Conestoga Trust is for an indefinite period. This transaction does not constitute the acquisition of a liquid asset. The Participant cannot close the transaction contemplated by this Agreement and then cash in or sell his/her beneficiary interest in the Conestoga Trust. Upon closing of the transaction contemplated by this Agreement, the Participant will not be paid until the insured under the life settlement policy dies and a claim is made against and paid on such life settlement policy. Should the Participant die before the death of the insured on any life settlement policy(ies), the death benefit payable under any such life settlement policy(ies) shall be paid to the Participant's estate. The Participant is advised to discuss with his/her financial advisor any consequences to his/her estate, and any desired estate planning documents.**

4.10    **The Participant agrees and acknowledges that neither any representative or agent who has solicited the Participant's participation in the Conestoga Trust nor Conestoga nor the escrow agent has guaranteed any specific rate of return on investment, or any specific amount to be paid to Participant upon the settlement of any claim on the life settlement policy, nor any payment of proceeds of the life settlement policy by the issuing insurance company, nor any specific date by which any such proceeds will be paid.**

4.11    **The Participant agrees not to reveal any identifying information about any insured under a life settlement policy which the Participant may learn under this Agreement, except as necessary to enforce the terms and conditions of this Agreement. The Participant**

**Life Insurance Policy Funding Agreement**       - 5 -                                07/08/2010

further agrees and acknowledges that the Participant may not contact any insured to determine such insured's health status, and that any unauthorized contact with an insured is a violation of law.

X Executed on this ___31st___ day of _____May_____, 20_12_, in the City of _San Bernardino_

State of _____CA_____.

Participant:                                    Joint Participant (if any):

X _Ellen Tackett_____                        X _J.D. E. Tackett_____
Signature                                       Signature

___Ellen O. Tackett_____                 X ___John E. Tackett_____
Printed Name                                    Printed Name

Conestoga Settlement Services, LLC

By: _____
    Michael C. McDermott, Manager

EXHIBIT "1"

EXHIBIT "A" TO

LIFE INSURANCE POLICY FUNDING AGREEMENT
CALIFORNIA

IDENTIFICATION OF INSURANCE POLICY(ies)

**PARTICIPANT AGREES AND ACKNOWLEDGES THAT BY ENTERING INTO THIS AGREEMENT, PARTICIPANT IS ACQUIRING A BENEFICIAL INTEREST IN CERTAIN LIFE INSURANCE POLICY OR POLICIES INSURING THE LIFE OR LIVES OF OTHERS, AS DETAILED BELOW. SUCH LIFE INSURANCE POLICIES HAVE BEEN ACQUIRED AS A RESULT OF PREVIOUSLY-CLOSED LIFE SETTLEMENT TRANSACTIONS WITH THE ORIGINAL INSURED PERSONS UNDER SUCH POLICIES.**

**PARTICIPANT FURTHER AGREES AND ACKNOWLEDGES THAT PARTICIPANT'S ACQUISITION OF THE BENEFICIAL INTEREST IN THE LIFE INSURANCE POLICIES WILL NOT OCCUR UNTIL THE OWNERSHIP OF SUCH POLICIES IS TRANSFERRED BY THE INSURANCE COMPANY OR COMPANIES WHICH ISSUED SUCH POLICIES TO THE CONESTOGA SETTLEMENT TRUST, AND HAS ACKNOWLEDGED SUCH TRANSFER IN WRITING TO THE CONESTOGA SETTLEMENT TRUST. IN SOME CASES, SUCH LIFE INSURANCE POLICIES MAY BE WITHDRAWN AND/OR OTHERWISE BECOME UNAVAILABLE PRIOR TO THE ACTUAL TRANSFER OF OWNERSHIP TO THE CONESTOGA SETTLEMENT TRUST. IN SUCH CASES, PARTICIPANT AUTHORIZES CONESTOGA SETTLEMENT SERVICES, LLC TO REPLACE ANY SUCH POLICY WITH ANOTHER LIFE INSURANCE POLICY ON THE LIFE OF AN INSURED WITH A SIMILAR LIFE EXPECTANCY TO THAT OF SUCH WITHDRAWN POLICY. PARTICIPANT SHALL BE NOTIFIED OF ANY SUCH REPLACEMENT POLICY.**

Policy Details (attach additional pages as necessary):

Name of Insured:    **Name withheld pursuant to the privacy rules under the Health Insurance Portability and Accountability Act of 1996 (HIPAA)**

Name, address and telephone number of Insurance Company :

_____

_____

_____

Name, address and telephone number of insurance regulatory authority having jurisdiction over the issuing Insurance Company:

_____

_____

**Exhibit "A"**                          - 1 -                          **07/08/2010**

Total Face Value of Death Benefit under Insurance Policy: _____

Percentage of Participant's Participation in Insurance Policy: _____

Policy Number of Insurance Policy: _____

Date of Issuance of Insurance Policy:_____

Type of Insurance Policy: _____

If a Group Policy:

     Name, address and telephone number of the Group:

          Terms and conditions to convert Group Policy to Individual Policy:

If a Term Life Insurance Policy:

     Current Term of Policy: _____

     Name, address and telephone number of the person responsible for renewing the Policy:

          Provident Trust Group, LLC
          8880 West Sunset, Suite 250
          Las Vegas, Nevada 89148
          (702) 434-0023

Reason(s) for which the Insurance Policy is beyond the applicable contestability period:

Policy Premiums for Insurance Policy: _____

Terms of Premium Payments Due for Insurance Policy: _____

Amount of Participant's Funds Escrowed to pay Premiums: _____

Participant's cost to participate: _____

**USE ADDITIONAL PAGES AS NECESSARY. THE ABOVE-LISTED INFORMATION MUST BE DISCLOSED FOR EACH POLICY IN WHICH THE PARTICIPANT DESIRES TO PARTICIPATE.**

**Exhibit "A"**         - 2 -         **07/08/2010**

X Executed on this ___31st___ day of _____May_____, 20 _12_, in the City of ___San Bernardino___

State of _____CA_____.

Participant:                                    Joint Participant (if any):

X ~~_Ellen O. Tackett_~~                        X ~~_John E. Tackett_~~
Signature                                       Signature

X   Ellen O. Tackett                            X   John E. Tackett
Printed Name                                    Printed Name

Conestoga Settlement Services, LLC

By: _____
        Michael C. McDermott, Manager

**Exhibit "A"**                    - 3 -                    **07/08/2010**

EXHIBIT "1"

# CONESTOGA SETTLEMENT TRUST

## PARTICIPATION AGREEMENT

The undersigned Participant (the "Participant") hereby agrees to become a Participant in the Conestoga Settlement Trust (hereinafter referred to as the "Trust") created by an Agreement and Declaration of Trust. By signing this Participation Agreement, the undersigned Participant agrees that the Trust will own certain life insurance policies resulting from previously-closed life settlement transactions, and that the Participant will become a beneficiary of the Trust, and will thereby hold a beneficial percentage in the proceeds of certain life insurance policy(ies) specified in the Participant's Life Insurance Policy Funding Agreement. The undersigned shall become a Participant in the Trust effective upon the closing of the participation transaction by Conestoga Settlement Services, LLC and the Participant. The Participant hereby agrees to be bound by the provisions of the Trust as it is now in effect or as amended in the future.

The undersigned Participant further agrees to furnish any information required in the administration of the Trust to the Trustee, upon request.

If this Participation Agreement is not accepted by the Trustee, any monies paid by or on account of the undersigned Participant shall be refunded and no evidence of participation in the Trust will be issued or available.

The undersigned understands that the Trust document provides, among other things, that the purposes of the Trust are (1) to hold ownership interests in certain life insurance policies for the benefit of Participant; (2) to hold funds paid by Participant for acquisition of beneficial interests in the life insurance policies; (3) to pay premiums which may be due to the insurance companies issuing the life insurance policies; (4) to submit claims for death benefits upon the deaths of the insureds under the life insurance policies; (5) to receive payment of the death benefits payable by the life insurance companies; and (6) to distribute the death benefits received among the beneficiaries of the Trust who hold a beneficial interest in the particular life insurance policies.

It is understood and agreed that the undersigned Participant's beneficial interest in any life insurance policy shall terminate when the undersigned fails to make a payment due on the premium of such life insurance policy, and fails to redeem the Participant's beneficial interest within the redemption period as provided in the Life Insurance Policy Funding Agreement. It is further understood and agreed that the Participant's participation in the Trust may be affected by the undersigned's failure to qualify as an eligible beneficiary by reason of any State or Federal law, or by the Participant's failure to comply with the terms and conditions of this Participating Agreement, the Life Insurance Policy Funding Agreement, or any other terms and conditions of the transactions contemplated hereby.

EXHIBIT "1"

Participant Name: X    Ellen O. Tackett

Joint Participant Name (if applicable): X    John E. Tackett

Participant Address: X    3464 N. Arrowhead Ave.    San Bernadino    CA    92405

Participant Telephone Number: X    (909) 238-6732

Participant's e-mail address: X    cashmane@katewwdb.com

     The undersigned Participant understands and agrees that: (1) the participation in the Conestoga Settlement Trust is subject to written approval of this Participation Agreement; (2) No liability is created or assumed by the Conestoga Settlement Trust until this Participation Agreement, the Life Insurance Policy Funding Agreement, and all other applications have been approved in writing; and (3) if for any reason the Participant's participation in the Conestoga Settlement Trust is not approved in writing the sole obligation of the Conestoga Settlement Trust will be, and the sole remedy to which the Participant shall be entitled, is a refund of any monies paid.

This Participation Agreement is hereby executed on this 31st day of     May    , 20 12 in the

City of San Bernardin , State of CA    , by:

PARTICIPANT:    JOINT PARTICIPANT (if any):

X _____    X _____
Signature    Signature

Printed name: X    Ellen O. Tackett    Printed name: X    John E. Tackett

Accepted:
Conestoga Settlement Trust
De Leon & Washburn, P.C., Trustee


By: _____
    Hector De Leon, President

**Conestoga Settlement Trust**
**Participation Agreement**    - 2 -    07/08/2010

**EXHIBIT A**

## CONESTOGA SETTLEMENT SERVICES, LLC          POLICY SELECTION SHEET

**PARTICIPANT NAME:** Ellen Q. Tackett                                    **DATE:** May 31, 2012

**JOINT PARTICIP. NAME:** John E. Tackett                                **DATE:** May 31, 2012

Participant(s) desires to purchase and become fractional owner(s) of certain life insurance policies' proceeds and elect to participate using $30,000.00 US Dollars for the policies and amounts selected below.

| Policy Code | Face Amount | Insurance Companies | Current Insured Age* & Gender | Original LE in months | Original Premium Reserve (in months) | Client Funds Placed | Expected Payout At Maturity | Estimated Annual Premium | Funds Designated For Premiums | Estimated Age When Premium Cells Begin | Age When Policy Purchase By Conestoga |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. TC04221OJH | $10,000,000 | John Hancock | 81 M | 39 | 75 | $7,500 | $10,813 | $925 | $3,284 | 86 | 80 |
| 2. SR05311OAE | $10,000,000 | AXA Equitable | 80 M | 40.5 | 76.5 | $7,500 | $11,044 | $323 | $2,059 | 84 | 78 |
| 3. BH05151OJH | $7,000,000 | John Hancock | 79 M | 50.5 | 80.5 | $5,000 | $7,446 | $268 | $1,798 | 84 | 78 |
| 4. CP04221OAE | $5,000,000 | AXA 6036 | 82 F | 50.5 | 86.5 | $5,000 | $7,946 | $212 | $1,520 | 88 | 81 |
| 5. CP05191OAE | $5,000,000 | AXA 7278 | 82 F | 50.5 | 86.5 | $5,000 | $7,946 | $212 | $1,520 | 88 | 81 |
| 6. WM05161OING | $5,000,000 | ING | 81 F | 54 | 84 | $5,000 | $7,946 | $215 | $1,552 | 88 | 81 |
| 7. PE04221OPF | $5,000,000 | Principal | 79 M | 55.5 | 85.5 | | $0 | $0 | $0 | 85 | 79 |
| 8. ZJ04221OLN | $5,000,000 | Lincoln National | 77 M | 55.5 | 85.5 | | $0 | $0 | $0 | 85 | 78 |
| 9. MP0812CL | $2,400,000 | Columbia Life | 82 F | 44 | 80 | | $0 | $0 | $0 | 89 | 74 |
| | $54,400,000 | | | | | $30,000 | $45,794 | $0 | $10,221 | | 82 |

\* As of 03/2012

CONESTOGA SETTLEMENT SERVICES, LLC has executed Policy Purchase Agreements for policies in this portfolio. However, the seller can withdraw policies until the insurance carriers complete the ownership change in their official company records. The policies above may no longer be available by the time your funds can be placed into the policies above. If any of the policies selected are withdrawn or are filled, they will be replaced with policies of comparable value and life expectancy.

Initial _____ I elect to place my total participation in EQUAL PORTIONS among all policies available. ($5,000 MINIMUM PER POLICY SELECTED)

Initial _____ I elect to place my total purchase in SELECTED AMOUNTS per the Exhibit A selections above, or in policies of comparable value ($5,000 MINIMUM PER POLICY SELECTED)

Participant Signature: (SIGN HERE) _____

EXHIBIT "1"

**Joint Participant
Signature: (SIGN HERE)**

Page 2 of 2

Form **W-9**
(Rev. October 2007)
Department of the Treasury
Internal Revenue Service

## Request for Taxpayer
## Identification Number and Certification

Give form to the
requester. Do not
send to the IRS.

**Name (as shown on your income tax return)**
Ellen O. Tackett

**Business name, if different from above**

**Check appropriate box:** ☒ Individual/Sole proprietor    ☐ Corporation    ☐ Partnership
☐ Limited liability company. Enter the tax classification (D=disregarded entity, C=corporation, P=partnership) ▶ .......
☐ Other (see instructions) ▶

☐ Exempt payee

**Address (number, street, and apt. or suite no.)**
3464 N. Arrowhead Ave.

**Requester's name and address (optional)**

**City, state, and ZIP code**
San Bernardino          CA          92405

**List account number(s) here (optional)**

*Print or type*
*See Specific Instructions on page 2.*

## Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid
backup withholding. For individuals, this is your social security number (SSN). However, for a resident
alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is
your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose
number to enter.

**Social security number**
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

**or**

**Employer identification number**

## Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal
Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has
notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup
withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply.
For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement
arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must
provide your correct TIN. See the instructions on page 4.

**Sign Here**    Signature of U.S. person ▶ *Ellen O. Tackett*          Date ▶ 05/31/12

## General Instructions

Section references are to the Internal Revenue Code unless
otherwise noted.

## Purpose of Form

A person who is required to file an information return with the
IRS must obtain your correct taxpayer identification number (TIN)
to report, for example, income paid to you, real estate
transactions, mortgage interest you paid, acquisition or
abandonment of secured property, cancellation of debt, or
contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a
resident alien), to provide your correct TIN to the person
requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are
waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S.
exempt payee. If applicable, you are also certifying that as a
U.S. person, your allocable share of any partnership income from
a U.S. trade or business is not subject to the withholding tax on
foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to
request your TIN, you must use the requester's form if it is
substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are
considered a U.S. person if you are:

● An individual who is a U.S. citizen or U.S. resident alien,

● A partnership, corporation, company, or association created or
organized in the United States or under the laws of the United
States,

● An estate (other than a foreign estate), or

● A domestic trust (as defined in Regulations section
301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a
trade or business in the United States are generally required to
pay a withholding tax on any foreign partners' share of income
from such business. Further, in certain cases where a Form W-9
has not been received, a partnership is required to presume that
a partner is a foreign person, and pay the withholding tax.
Therefore, if you are a U.S. person that is a partner in a
partnership conducting a trade or business in the United States,
provide Form W-9 to the partnership to establish your U.S.
status and avoid withholding on your share of partnership
income.

The person who gives Form W-9 to the partnership for
purposes of establishing its U.S. status and avoiding withholding
on its allocable share of net income from the partnership
conducting a trade or business in the United States is in the
following cases:

● The U.S. owner of a disregarded entity and not the entity,

Cat. No. 10231X          Form **W-9** (Rev. 10-2007)

EXHIBIT "1"

| Form **W-9**<br>(Rev. October 2007)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer<br>Identification Number and Certification** | **Give form to the<br>requester. Do not<br>send to the IRS.** |
|---|---|---|

Name (as shown on your income tax return)

**John E. Tackett**

Business name, if different from above

Check appropriate box: ☑ Individual/Sole proprietor  ☐ Corporation  ☐ Partnership
☐ Limited liability company. Enter the tax classification (D=disregarded entity, C=corporation, P=partnership) ▶ ........
☐ Other (see instructions) ▶

☐ Exempt payee

Address (number, street, and apt. or suite no.)

**3464 N. Arrowhead Ave.**

Requester's name and address (optional)

City, state, and ZIP code

**San Bernadino          CA          92405**

List account number(s) here (optional)

## Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on Line 1 to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

Social security number

**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**

**or**

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Employer identification number

## Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. See the instructions on page 4.

**Sign Here**    Signature of U.S. person ▶    *[signature]*    Date ▶ 5-31-12

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

## Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

**Note.** If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

● An individual who is a U.S. citizen or U.S. resident alien,

● A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

● An estate (other than a foreign estate), or

● A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

The person who gives Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States is in the following cases:

● The U.S. owner of a disregarded entity and not the entity,

Cat. No. 10231X                                    Form **W-9** (Rev. 10-2007)





# EXHIBIT 2

# EXHIBIT 2

# EXHIBIT A

## CONESTOGA SETTLEMENT SERVICES, LLC

## POLICY SELECTION SHEET

**PARTICIPANT NAME:** Ellen O. Tackett  **DATE:** August 15, 2012

**JOINT PARTICIP. NAME:** John E. Tackett  **DATE:** August 15, 2012

Participant(s) desires to purchase and become fractional owner(s) of certain life insurance policies' proceeds using $220,000.00 US Dollars for the policies and amounts selected below. and elect to participate using

| Policy Code | Face Amount | Insurance Companies | Current Insured Age* & Gender | Original LE In months | Original Premium Reserve (in months) | Client Funds Placed | Expected Payout At Maturity | Estimated Annual Premium | Funds Designated For Premiums | Estimated Age When Premium Calls Begin | Age When Policy Purchase By Conestoga |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. TCO42210JH | $10,000,000 | John Hancock | 81 M | 39 | 75 | $35,000 | $60,925 | $2,462 | $15,326 | 86 | 80 |
| 2. SR053110AE | $10,000,000 | AXA Equitable | 80 M | 40.5 | 76.5 | $35,000 | $61,638 | $1,902 | $9,605 | 84 | 78 |
| 3. BH051510JH | $7,000,000 | John Hancock | 79 M | 50.5 | 80.5 | $26,000 | $39,728 | $1,341 | $8,897 | 84 | 78 |
| 4. CP042210AE | $5,000,000 | AXA 6036 | 82 F | 50.5 | 86.5 | $26,000 | $39,729 | $1,060 | $7,640 | 88 | 81 |
| 5. CP051910AE | $5,000,000 | AXA 7278 | 81 F | 54 | 86.5 | $25,000 | $39,729 | $1,029 | $7,768 | 88 | 81 |
| 6. WM051510ING | $5,000,000 | ING | 79 M | 55.5 | 84 | $26,000 | $40,750 | $1,173 | $8,212 | 86 | 79 |
| 7. PE042210PF | $5,000,000 | Principal | 77 M | 55.5 | 85.5 | $25,000 | $41,186 | $706 | $4,989 | 85 | 78 |
| 8. ZJ042210LN | $5,000,000 | Lincoln National | 82 F | 55.5 | 85.5 | $26,000 | $41,186 | $710 | $5,069 | 82 | 74 |
| 9. MP0812CL | $2,400,000 | Columbus Life | 82 F | 44 | 80 | $0 | $0 | $0 | $0 | 89 | 82 |
| | $54,400,000 | | | | | $220,000 | $324,772 | | $6?,686 | | |

* As of 03/2012

CONESTOGA SETTLEMENT SERVICES, LLC has executed Policy Purchase Agreements for policies in this portfolio. However, the seller can withdraw policies until the insurance carriers complete the ownership change in their official company records. The policies above may no longer be available by the time your funds can be placed into the policies above. If any of the policies selected are withdrawn or are filled, they will be replaced with policies of comparable value and life expectancy.

_____ I elect to place my total participation in EQUAL PORTIONS among all policies available.
Initial   ($5,000 MINIMUM PER POLICY SELECTED)

_____ I elect to place my total purchase in SELECTED AMOUNTS per the Exhibit A selections
Initial   above, or in policies of comparable value ($5,000 MINIMUM PER POLICY SELECTED)

Participant Signature: (SIGN HERE) _____

Joint Participant
Signature: (SIGN HERE) _____

EXHIBIT "2"

# EXHIBIT 3

# EXHIBIT 3

<table>
<tr><td colspan="2"><b>Fill in this information to identify your case:</b></td></tr>
</table>

United States Bankruptcy Court for the:

<u>CENTRAL</u>        District of <u>CALIFORNIA</u>
                                    (State)

Case number *(If known):* _____

Chapter you are filing under:
- [X] Chapter 7
- [ ] Chapter 11
- [ ] Chapter 12
- [ ] Chapter 13

[ ] Check if this is an amended filing

## Official Form 101
# Voluntary Petition for Individuals Filing for Bankruptcy    12/15

The bankruptcy forms use *you* and *Debtor 1* to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use *you* to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be *yes* if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

| Part 1: | Identify Yourself |
| --- | --- |

| | | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
| --- | --- | --- | --- |
| **1.** | **Your full name** | | |
| | Write the name that is on your government-issued picture identification (for example, your driver's license or passport). | JOHN<br>First name<br>E.<br>Middle name<br>TACKETT<br>Last name | ELLEN<br>First name<br>O.<br>Middle name<br>TACKETT<br>Last name |
| | Bring your picture identification to your meeting with the trustee. | _____<br>Suffix (Sr., Jr., II, III) | _____<br>Suffix (Sr., Jr., II, III) |
| **2.** | **All other names you have used in the last 8 years**<br><br>Include your married or maiden names. | JOHN<br>First name<br>EDWARD<br>Middle name<br>TACKETT<br>Last name | ELLEN<br>First name<br>O.<br>Middle name<br>CASHMAN<br>Last name |
| | | JOHN<br>First name<br>EDWARD<br>Middle name<br>TACKETT, Jr.<br>Last name | ELLEN<br>First name<br>JANE<br>Middle name<br>OAKLEAF<br>Last name |
| **3.** | **Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | XXX – XX – 8 2 8 0<br>OR<br>9 XX – XX – ___ ___ ___ | XXX – XX – 1 7 4 8<br>OR<br>9 XX – XX – ___ ___ ___ |

EXHIBIT "3"

B101

Debtor 1    JOHN E. TACKETT
            First Name    Middle Name    Last Name

Case number (if known) _____

| | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|

**4. Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years**

Include trade names and *doing business as* names

| About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|
| [X] I have not used any business names or EINs | [X] I have not used any business names or EINs |
| _____<br>Business name | _____<br>Business name |
| _____<br>Business name | _____<br>Business name |
| EIN __ __ – __ __ __ __ __ __ __ | EIN __ __ – __ __ __ __ __ __ __ |
| EIN __ __ – __ __ __ __ __ __ __ | EIN __ __ – __ __ __ __ __ __ __ |

**5. Where you live**

| | If Debtor 2 lives at a different address: |
|---|---|
| 3464 N. ARROWHEAD AVENUE<br>Number    Street | 3464 N. ARROWHEAD AVENUE<br>Number    Street |
| _____ | _____ |
| SAN BERNARDINO    CA    92405<br>City    State    Zip Code | SAN BERNARDINO    CA    92405<br>City    State    Zip Code |
| SAN BERNARDINO<br>County | SAN BERNARDINO<br>County |
| **If your mailing address is different from the one above, fill it in here.** Note that the court will send any notices to you at this mailing address. | **If Debtor 2's mailing address is different from yours, fill it in here.** Note that the court will send any notices to this mailing address. |
| _____<br>Number    Street | _____<br>Number    Street |
| _____<br>P.O. Box | _____<br>P.O. Box |
| _____<br>City    State    Zip Code | _____<br>City    State    Zip Code |

**6. Why you are choosing *this district* to file for bankruptcy**

| Check one: | Check one: |
|---|---|
| [X] Over the last 180 days before filing this petition, I have lived in this district longer than in any other district. | [X] Over the last 180 days before filing this petition, I have lived in this district longer than in any other district. |
| [ ] I have another reason. Explain.<br>(See 28 U.S.C. § 1408.) | [ ] I have another reason. Explain.<br>(See 28 U.S.C. § 1408.) |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

EXHIBIT "3"

Debtor 1    <u>JOHN  E.  TACKETT</u>                  Case number (if known) _____
      First Name       Middle Name              Last Name

---

**Part 2:**    **Tell the Court About Your Bankruptcy Case**

**7.**   **The chapter of the Bankruptcy Code you are choosing to file under**

*Check one.* (For a brief description of each, see *Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy* (Form 2010)). Also, go to the top of page 1 and check the appropriate box.

- [X] Chapter 7
- [ ] Chapter 11
- [ ] Chapter 12
- [ ] Chapter 13

**8.**   **How you will pay the fee**

- [X] **I will pay the entire fee when I file my petition.** Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

- [ ] **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

- [ ] **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments. If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

**9.**   **Have you filed for bankruptcy within the last 8 years?**

- [X] No
- [ ] Yes.  District _____ When _____ Case number _____
                                         MM / DD / YYYY

                  District _____ When _____ Case number _____
                                         MM / DD / YYYY

                  District _____ When _____ Case number _____
                                         MM / DD / YYYY

**10.**   **Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

- [X] No
- [ ] Yes.  Debtor _____ Relationship to you _____
                  District _____ When _____ Case number, if known _____
                                         MM / DD / YYYY

                  Debtor _____ Relationship to you _____
                  District _____ When _____ Case number, if known _____
                                         MM / DD / YYYY

**11.**   **Do you rent your residence?**

- [X] No   Go to line 12.
- [ ] Yes.  Has your landlord obtained an eviction judgment against you and do you want to stay in your residence?
  - [ ] No. Go to line 12.
  - [ ] Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it with this bankruptcy petition.

---

Official Form 101             **Voluntary Petition for Individuals Filing for Bankruptcy**            page 3

EXHIBIT "3"

Debtor 1 ___JOHN E. TACKETT_____    Case number (if known) _____

First Name    Middle Name    Last Name

---

| **Part 3:** | **Report About Any Businesses You Own as a Sole Proprietor** |

**12. Are you a sole proprietor of any full- or part-time business?**

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

[X] No. Go to Part 4.

[ ] Yes. Name and location of business

_____
Name of business, if any

_____
Number      Street

_____

_____
City                                State        ZIP Code

Check the appropriate box to describe your business:

[ ] Health Care Business (as defined in 11 U.S.C. § 101(27A))

[ ] Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

[ ] Stockbroker (as defined in 11 U.S.C. § 101(53A))

[ ] Commodity Broker (as defined in 11 U.S.C. § 101(6))

[ ] None of the above

---

**13. Are you filing under Chapter 11 of the Bankruptcy Code and are you a *small business debtor*?**

For a definition of *small business debtor*, see 11 U.S.C. § 101(51D).

If you are filing under Chapter 11, the court must know whether you are a small business debtor so that it can set appropriate deadlines. If you indicate that you are a small business debtor, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

[X] No. I am not filing under Chapter 11.

[ ] No. I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

[ ] Yes. I am filing under Chapter 11 and I am a small business debtor according to the definition in the Bankruptcy Code.

---

| **Part 4:** | **Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention** |

**14. Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

[X] No

[ ] Yes. What is the hazard? _____

_____

If immediate attention is needed, why is it needed? _____

_____

Where is the property? _____
                        Number        Street

_____

_____
City                                State        ZIP Code

---

EXHIBIT "3"

Debtor 1 JOHN E. TACKETT
First Name        Middle Name        Last Name

Case number (if known) _____

| Part 5: | Explain Your Efforts to Receive a Briefing About Credit Counseling |
|---|---|

| 15. **Tell the court whether you have received a briefing about credit counseling.**<br><br>The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.<br><br>If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again. | **About Debtor 1:**<br><br>*You must check one:*<br><br>[X] **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**<br>Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.<br><br>[ ] **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**<br>Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.<br><br>[ ] **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**<br><br>To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.<br><br>Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.<br><br>If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.<br><br>Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.<br><br>[ ] **I am not required to receive a briefing about credit counseling because of:**<br><br>[ ] **Incapacity.** I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.<br><br>[ ] **Disability.** My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.<br><br>[ ] **Active duty.** I am currently on active military duty in a military combat zone.<br><br>If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court. | **About Debtor 2 (Spouse Only in a Joint Case):**<br><br>*You must check one:*<br><br>[X] **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**<br>Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.<br><br>[ ] **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**<br>Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.<br><br>[ ] **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**<br><br>To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.<br><br>Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.<br><br>If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.<br><br>Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.<br><br>[ ] **I am not required to receive a briefing about credit counseling because of:**<br><br>[ ] **Incapacity.** I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.<br><br>[ ] **Disability.** My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.<br><br>[ ] **Active duty.** I am currently on active military duty in a military combat zone.<br><br>If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court. |

EXHIBIT "3"

| Debtor 1 | JOHN E. TACKETT | | | Case number *(if known)* |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

---

<table>
<tr><td colspan="2"><strong>Part 6:</strong> Answer These Questions for Reporting Purposes</td></tr>
</table>

**16. What kind of debts do you have?**

**16a. Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☐ No. Go to line 16b.
☒ Yes. Go to line 17.

**16b. Are your debts primarily business debts?** *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☐ No. Go to line 16c.
☐ Yes. Go to line 17.

16c. State the type of debts you owe that are not consumer debts or business debts.

_____

**17. Are you filing under Chapter 7?**

**Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?**

☐ No. I am not filing under Chapter 7. Go to line 18.
☒ Yes. I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

☒ No
☐ Yes

**18. How many creditors do you estimate that you owe?**

☒ 1-49
☐ 50-99
☐ 100-199
☐ 200-999

☐ 1,000-5,000
☐ 5,001-10,000
☐ 10,001-25,000

☐ 25,001-50,000
☐ 50,001-100,000
☐ More than 100,000

**19. How much do you estimate your assets to be worth?**

☐ $0-$50,000
☐ $50,001-$100,000
☒ $100,001-$500,000
☐ $500,001-$1 million

☐ $1,000,001-$10 million
☐ $10,000,001-$50 million
☐ $50,000,001-$100 million
☐ $100,000,001-$500 million

☐ $500,000,001-$1 billion
☐ $1,000,000,001-$10 billion
☐ $10,000,000,001-$50 billion
☐ More than $50 billion

**20. How much do you estimate your liabilities to be?**

☐ $0-$50,000
☐ $50,001-$100,000
☒ $100,001-$500,000
☐ $500,001-$1 million

☐ $1,000,001-$10 million
☐ $10,000,001-$50 million
☐ $50,000,001-$100 million
☐ $100,000,001-$500 million

☐ $500,000,001-$1 billion
☐ $1,000,000,001-$10 billion
☐ $10,000,000,001-$50 billion
☐ More than $50 billion

<table>
<tr><td colspan="2"><strong>Part 7:</strong> Sign Below</td></tr>
</table>

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11, 12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

| ✗ *John E. Tackett* | ✗ *Ellen O. Tackett* |
|---|---|
| Signature of Debtor 1 | Signature of Debtor 2 |
| JOHN E. TACKETT | ELLEN O. TACKETT |
| Executed on 06/27/2016 | Executed on 06/27/2016 |
| MM / DD /YYYY | MM / DD /YYYY |

---

Official Form 101    **Voluntary Petition for Individuals Filing for Bankruptcy**    page 6

EXHIBIT "3"

Debtor 1    JOHN E. TACKETT
_____
First Name   Middle Name   Last Name

Case number *(if known)* _____

**For your attorney, if you are represented by one**

**If you are not represented by an attorney, you do not need to file this page.**

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible. I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

X _____    Date 06/27/2016
Signature of Attorney for Debtor                   MM / DD / YYYY

STEFAN R. PANCER
_____
Printed name

LAW OFFICES, STEFAN R. PANCER, PC
_____
Firm name

700 E. REDLANDS BLVD., STE. U-299
_____
Number    Street

_____

_____
City                          State        ZIP Code

Contact phone 909-793-0370        Email address _____

77687                             CALIFORNIA
_____          _____
Bar number                        State

Official Form 101        Voluntary Petition for Individuals Filing for Bankruptcy        page 7

EXHIBIT "3"

Debtor 1    JOHN  E.  TACKETT                                    Case number (if known) _____
            First Name    Middle Name    Last Name

| **For you if you are filing this bankruptcy without an attorney** | The law allows you, as an individual, to represent yourself in bankruptcy court, but **you should understand that many people find it extremely difficult to represent themselves successfully. Because bankruptcy has long-term financial and legal consequences, you are strongly urged to hire a qualified attorney.** |

**If you are represented by an attorney, you do not need to file this page.**

To be successful, you must correctly file and handle your bankruptcy case. The rules are very technical, and a mistake or inaction may affect your rights. For example, your case may be dismissed because you did not file a required document, pay a fee on time, attend a meeting or hearing, or cooperate with the court, case trustee, U.S. trustee, bankruptcy administrator, or audit firm if your case is selected for audit. If that happens, you could lose your right to file another case, or you may lose protections, including the benefit of the automatic stay.

You must list all your property and debts in the schedules that you are required to file with the court. Even if you plan to pay a particular debt outside of your bankruptcy, you must list that debt in your schedules. If you do not list a debt, the debt may not be discharged. If you do not list property or properly claim it as exempt, you may not be able to keep the property. The judge can also deny you a discharge of all your debts if you do something dishonest in your bankruptcy case, such as destroying or hiding property, falsifying records, or lying. Individual bankruptcy cases are randomly audited to determine if debtors have been accurate, truthful, and complete. **Bankruptcy fraud is a serious crime; you could be fined and imprisoned.**

If you decide to file without an attorney, the court expects you to follow the rules as if you had hired an attorney. The court will not treat you differently because you are filing for yourself. To be successful, you must be familiar with the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the local rules of the court in which your case is filed. You must also be familiar with any state exemption laws that apply.

Are you aware that filing for bankruptcy is a serious action with long-term financial and legal consequences?

☐ No
☒ Yes

Are you aware that bankruptcy fraud is a serious crime and that if your bankruptcy forms are inaccurate or incomplete, you could be fined or imprisoned?

☐ No
☒ Yes

Did you pay or agree to pay someone who is not an attorney to help you fill out your bankruptcy forms?

☒ No
☐ Yes. Name of Person _____ .
         Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

By signing here, I acknowledge that I understand the risks involved in filing without an attorney. I have read and understood this notice, and I am aware that filing a bankruptcy case without an attorney may cause me to lose my rights or property if I do not properly handle the case.

X _____          X _____
Signature of Debtor 1                       Signature of Debtor 2
JOHN E. TACKETT                             ELLEN O. TACKETT
Date  06/27/2016                            Date  06/27/2016
      MM / DD / YYYY                              MM / DD / YYYY

Contact phone _____         Contact phone _____

Cell phone _____            Cell phone _____

Email address _____         Email address _____

# STATEMENT OF RELATED CASES
## INFORMATION REQUIRED BY LBR 1015-2
## UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA

1.  A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor, his/her spouse, his or her current or former domestic partner, an affiliate of the debtor, any copartnership or joint venture of which debtor is or formerly was a general or limited partner, or member, or any corporation of which the debtor is a director, officer, or person in control, as follows: (Set forth the complete number and title of each such of prior proceeding, date filed, nature thereof, the Bankruptcy Judge and court to whom assigned, whether still pending and, if not, the disposition thereof.  If none, so indicate.  Also, list any real property included in Schedule A that was filed with any such prior proceeding(s).)

    SB 94-26363DN FILED 4/11/1995 SAN BERNARDINO COUNTY

2.  (If petitioner is a partnership or joint venture) A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor or an affiliate of the debtor, or a general partner in the debtor, a relative of the general partner, general partner of, or person in control of the debtor, partnership in which the debtor is a general partner, general partner of the debtor, or person in control of the debtor as follows:  (Set forth the complete number and title of each such prior proceeding, date filed, nature of the proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending and, if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A that was filed with any such prior proceeding(s).)

    NONE

3.  (If petitioner is a corporation)  A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor, or any of its affiliates or subsidiaries, a director of the debtor, an officer of the debtor, a person in control of the debtor, a partnership in which the debtor is general partner, a general partner of the debtor, a relative of the general partner, director, officer, or person in control of the debtor, or any persons, firms or corporations owning 20% or more of its voting stock as follows: (Set forth the complete number and title of each such prior proceeding, date filed, nature of proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending, and if not, the disposition thereof. If none, so indicate.  Also, list any real property included in Schedule A that was filed with any such prior proceeding(s).)

    NONE

4.  (If petitioner is an individual) A petition under the Bankruptcy Reform Act of 1978, including amendments thereof, has been filed by or against the debtor within the last 180 days:  (Set forth the complete number and title of each such prior proceeding, date filed, nature of proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending, and if not, the disposition thereof. If none, so indicate.  Also, list any real property included in Schedule A that was filed with any such prior proceeding(s).)

    NONE

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed at __REDLANDS_____ , California

Date: 06/__27__/2016 _____

Signature of Debtor
JOHN E. TACKETT

Signature of Joint Debtor
ELLEN O. TACKETT

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

B 201 - Notice of Available Chapters (Rev. 06/14)                                    USBC, Central District of California

Name: <u>LAW OFFICES, STEFAN R. PANCER, PC</u>

Address: <u>700 E. REDLANDS BLVD., STE. U-299</u>

<u>REDLANDS, CA 92373</u>

Telephone: <u>909-793-0370</u>          Fax: <u>866-532-3988</u>

[X] Attorney for Debtor
[ ] Debtor in Pro Per

<table>
<tr>
<td colspan="2" align="center"><b>UNITED STATES BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA</b></td>
</tr>
<tr>
<td>List all names including trade names, used by Debtor(s) within last 8 years:<br>JOHN E. TACKETT<br>aka: John Edward Tackett; John Edward Tackett, Jr. and<br>ELLEN O. TACKETT<br>aka: Ellen O. Cashman; Ellen Jane Oakleaf</td>
<td>Case No.:</td>
</tr>
<tr>
<td rowspan="1"></td>
<td align="center"><b>NOTICE OF AVAILABLE CHAPTERS</b><br>(Notice to Individual Consumer Debtor Under § 342(b) of the Bankruptcy Code)</td>
</tr>
</table>

In accordance with § 342(b) of the Bankruptcy Code, this notice to individuals with primarily consumer debts: (1) Describes briefly the services available from credit counseling services; (2) Describes briefly the purposes, benefits and costs of the four types of bankruptcy proceedings you may commence; and (3) Informs you about bankruptcy crimes and notifies you that the Attorney General may examine all information you supply in connection with a bankruptcy case.

You are cautioned that bankruptcy law is complicated and not easily described. Thus, you may wish to seek the advice of an attorney to learn of your rights and responsibilities should you decide to file a petition. Court employees cannot give you legal advice.

Notices from the bankruptcy court are sent to the mailing address you list on your bankruptcy petition. In order to ensure that you receive information about events concerning your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address. If you are filing a **joint case** (a single bankruptcy case for two individuals married to each other), and each spouse lists the same mailing address on the bankruptcy petition, you and your spouse will generally receive a single copy of each notice mailed from the bankruptcy court in a jointly-addressed envelope, unless you file a statement with the court requesting that each spouse receive a separate copy of all notices.

1. <u>**Services Available from Credit Counseling Agencies**</u>

   **With limited exceptions, § 109(h) of the Bankruptcy Code requires that all individual debtors who file for bankruptcy relief on or after October 17, 2005, receive a briefing that outlines the available opportunities for credit counseling and provides assistance in performing a budget analysis.** The briefing must be given within 180 days **before** the bankruptcy filing. The briefing may be provided individually or in a group (including briefings conducted by telephone or on the Internet) and must be provided by a nonprofit budget and credit counseling agency approved by the United States trustee or bankruptcy administrator. The clerk of the bankruptcy court has a list that you may consult of the approved budget and credit counseling agencies. Each debtor in a joint case must complete the briefing.

   **In addition, after filing a bankruptcy case, an individual debtor generally must complete a financial management instructional course before he or she can receive a discharge.** The clerk also has a list of approved financial management instructional courses. Each debtor in a joint case must complete the course.

CCD-B201

EXHIBIT "3"

B 201 - Notice of Available Chapters (Rev. 06/14)                                                    USBC, Central District of California

2.    **The Four Chapters of the Bankruptcy Code Available to Individual Consumer Debtors**

**Chapter 7:  Liquidation ($245 filing fee, $75 administrative fee, $15 trustee surcharge: Total fee $335**

1.   Chapter 7 is designed for debtors in financial difficulty who do not have the ability to pay their existing debts.  Debtors whose debts are primarily consumer debts are subject to a "means test" designed to determine whether the case should be permitted to proceed under chapter 7.  If your income is greater than the median income for your state of residence and family size, in some cases, creditors have the right to file a motion requesting that the court dismiss your case under § 707(b) of the Code.  It is up to the court to decide whether the case should be dismissed.
2.   Under chapter 7, you may claim certain of your property as exempt under governing law.  A trustee may have the right to take possession of and sell the remaining property that is not exempt and use the sale proceeds to pay your creditors.
3.   The purpose of filing a chapter 7 case is to obtain a discharge of your existing debts. If, however, you are found to have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge and, if it does, the purpose for which you filed the bankruptcy petition will be defeated.
4.   Even if you receive a general discharge, some particular debts are not discharged under the law. Therefore, you may still be responsible for most taxes and student loans; debts incurred to pay nondischargeable taxes; domestic support and property settlement obligations; most fines, penalties, forfeitures, and criminal restitution obligations; certain debts which are not properly listed in your bankruptcy papers; and debts for death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs. Also, if a creditor can prove that a debt arose from fraud, breach of fiduciary duty, or theft, or from a willful and malicious injury, the bankruptcy court may determine that the debt is not discharged.

**Chapter 13:  Repayment of All or Part of the Debts of an Individual with Regular Income ($235 filing fee, $75 administrative fee: Total fee $310)**

1.   Chapter 13 is designed for individuals with regular income who would like to pay all or part of their debts in installments over a period of time.  You are only eligible for chapter 13 if your debts do not exceed certain dollar amounts set forth in the Bankruptcy Code.
2.   Under chapter 13, you must file with the court  a plan to repay your creditors all or part of the money that you owe them, using your future earnings. The period allowed by the court to repay your debts may be three years or five years, depending upon your income and other factors.  The court must approve your plan before it can take effect.
3.   After completing the payments under your plan, your debts are generally discharged except for domestic support obligations; most student loans; certain taxes; most criminal fines and restitution obligations; certain debts which are not properly listed in your bankruptcy papers; certain debts for acts that caused death or personal injury; and certain long term secured obligations.

**Chapter 11:  Reorganization ($1167 filing fee, $550 administrative fee: Total fee $1717)**
Chapter 11 is designed for the reorganization of a business but is also available to consumer debtors. Its provisions are quite complicated, and any decision by an individual to file a chapter 11 petition should be reviewed with an attorney.

**Chapter 12:  Family Farmer or Fisherman ($200 filing fee, $75 administrative fee: Total fee $275)**
Chapter 12 is designed to permit family farmers and fishermen to repay their debts over a period of time from future earnings and is similar to chapter 13. The eligibility requirements are restrictive, limiting its use to those whose income arises primarily from a family-owned farm or commercial fishing operation.

3.    **Bankruptcy Crimes and Availability of Bankruptcy Papers to Law Enforcement Officials**

A person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury, either orally or in writing, in connection with a bankruptcy case is subject to a fine, imprisonment, or both.  All information supplied by a debtor in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the United States Trustee, the Office of the United States Attorney, and other components and employees of the Department of Justice.

**WARNING:** Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information regarding your creditors, assets, liabilities, income, expenses and general financial condition.  Your bankruptcy case may be dismissed if this information is not filed with the court within the time deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

B 201 - Notice of Available Chapters (Rev. 06/14)                                    USBC, Central District of California

## Certificate of [Non-Attorney] Bankruptcy Petition Preparer

I, the [non-attorney] bankruptcy petition preparer signing the debtor's petition, hereby certify that I delivered to the debtor this notice required by § 342(b) of the Bankruptcy Code.

_____
Printed name and title, if any, of Bankruptcy Petition Preparer

_____

X_____
Signature of Bankruptcy Petition Preparer or officer,
principal, responsible person, or partner whose Social
Security number is provided above.

_____
Social Security number (If the bankruptcy petition
Address: preparer is not an individual, state the
Social Security number of the officer, principal,
responsible person, or partner of the bankruptcy
petition preparer.) (Required by 11 U.S.C. § 110.)

## Certificate of the Debtor

I (We), the debtor(s), affirm that I (we) have received and read this notice.

JOHN E. TACKETT
_____
Printed Name(s) of Debtor(s)

Case No. (if known) _____

_____  06/2?/2016
Signature of Debtor                Date

X_____  06/2?/2016
Signature of Joint Debtor (if any)  Date
ELLEN O. TACKETT

EXHIBIT "3"

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - **SELECT DIVISION****

| | |
|---|---|
| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br>Stefan R. Pancer<br>Law Offices, Stefan R. Pancer, PC<br>700 E. Redlands Blvd., Ste. U-299<br>Redlands, CA 92373 | CASE NO.:<br><br>CHAPTER:<br><br>ADVERSARY NO.:<br>(if applicable) |
| _Attorney for:_ John and Ellen Tacket | |
| In re:<br>JOHN E. TACKETT<br>aka: John Edward Tackett; John Edward Tackett, Jr.<br>and<br>ELLEN O. TACKETT<br>aka: Ellen O. Cashman; Ellen Jane Oakleaf<br><br>Debtor(s). | **ELECTRONIC FILING DECLARATION<br>(INDIVIDUAL)<br>[LBR 1002-1(f)]** |

☒ Petition, statement of affairs, schedules or lists      Date filed: _____
☐ Amendments to the petition statements of affairs, schedules or lists  Date filed: _____
☒ Other (specify): <u>Certificate of Completion of Credit Counseling Course</u> Date filed: <u>3/24/16</u>

**PART I – DECLARATION OF DEBTOR(S) OR OTHER PARTY**

  I (We), the undersigned Debtor(s) or other party on whose behalf the above-referenced document is being filed (Signing Party), declare under penalty of perjury that: (1) I have read and understand the above-referenced document being filed electronically (Filed Document); (2) the information provided in the Filed Document is true, correct and complete; (3) the "/s/," followed by my name, on the signature line(s) for the Signing Party in the Filed Document serves as my signature and denotes the making of such declarations, requests, statements, verifications and certifications to the same extent and effect as my actual signature on such signature line(s); (4) I have actually signed a true and correct printed copy of the Filed Document in such places and provided the executed printed copy of the Filed Document to my attorney; and (5) I have authorized my attorney to file the electronic version of the Filed Document and this _Declaration_ with the United States Bankruptcy Court for the Central District of California. If the Filed Document is a petition, I further declare under penalty of perjury that I have completed and signed a _Statement About Your Social Security Numbers_ (Official Form 121) and provided the executed original to my attorney.

Date: <u>6/27/16</u>     _/s/ John E. Tackett_
              Signature (handwritten) of Debtor or signing party
              JOHN E. TACKETT
              Printed name of signing party

Date: <u>6/27/16</u>     _/s/ Ellen Tackett_
              Signature (handwritten) of Debtor 2 (Joint Debtor)(if applicable)
              ELLEN O. TACKETT
              Printed name of Debtor 2, if applicable

**PART II – DECLARATION OF ATTORNEY FOR SIGNING PARTY**

  I, the undersigned attorney for the Signing Party, declare under penalty of perjury that: (1) the "/s/," followed by my name, on the signature lines for the attorney for the Signing Party in the Filed Document serves as my signature and denotes the making of such declarations, requests, statements, verifications and certifications to the same extent and effect as my actual signature on such signature lines; (2) the Signing Party signed _Part 1 - Declaration of Debtor(s) or Other Party_ of this _Declaration_ before I electronically submitted the Filed Document for filing with the United States Bankruptcy Court for the Central District of California; (3) I have actually signed a true and correct printed copy of the Filed Document in the locations that are indicated by "/s/," followed by my name, and have obtained the signature(s) of the Signing Party in the locations that are indicated by "/s/," followed by the Signing Party's name, on the true and correct printed copy of the Filed Document; (4) I shall maintain the executed originals of this _Declaration_ and the Filed Document for a period of five years after the closing of the case in which they are filed; and (5) I shall make the executed originals of this _Declaration_ and the Filed Document available for review upon request of the court or other parties. If the Filed Document is a petition, I further declare under penalty of perjury that: (1) the Signing Party completed and signed the _Statement About Your Social Security Numbers_ (Official Form 121) before I electronically submitted the Filed Document for filing with the United States Bankruptcy Court for the Central District of California; (2) I shall maintain the executed original of the _Statement About Your Social Security Numbers_ (Official Form 121) for a period of five years after the closing of the case in which they are filed; and (3) I shall make the executed original of the _Statement About Your Social Security Numbers_ (Official Form 121) available for review upon request of the court.

Date: <u>6-27-16</u>     _/s/ Stefan R. Pancer_
              Signature (handwritten) of attorney for Signing Party
              STEFAN R. PANCER
              Printed Name of attorney for Signing Party

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_December 2015_        EXHIBIT "3"     **F 1002-1.DEC.ELEC.FILING.INDIVIDUAL**

B 1D (Official Form 1, Exhibit D) (12/09)

# UNITED STATES BANKRUPTCY COURT

<u>CENTRAL</u>       **District of** <u>CALIFORNIA</u>

In re <u>JOHN E. TACKETT</u>              Case No. _____
      aka: John Edward Tacket                                (if known)
      Debtor

## EXHIBIT D - INDIVIDUAL DEBTOR'S STATEMENT OF COMPLIANCE WITH CREDIT COUNSELING REQUIREMENT

      **Warning: You must be able to check truthfully one of the five statements regarding credit counseling listed below. If you cannot do so, you are not eligible to file a bankruptcy case, and the court can dismiss any case you do file. If that happens, you will lose whatever filing fee you paid, and your creditors will be able to resume collection activities against you. If your case is dismissed and you file another bankruptcy case later, you may be required to pay a second filing fee and you may have to take extra steps to stop creditors' collection activities.**

      *Every individual debtor must file this Exhibit D. If a joint petition is filed, each spouse must complete and file a separate Exhibit D. Check one of the five statements below and attach any documents as directed.*

      [ ] 1. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, and I have a certificate from the agency describing the services provided to me. *Attach a copy of the certificate and a copy of any debt repayment plan developed through the agency.*

      [X] 2. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, but I do not have a certificate from the agency describing the services provided to me. *You must file a copy of a certificate from the agency describing the services provided to you and a copy of any debt repayment plan developed through the agency no later than 14 days after your bankruptcy case is filed.*

B1D

EXHIBIT "3"

B 1D (Official Form 1, Exh. D) (12/09) – Cont.

☐ 3.  I certify that I requested credit counseling services from an approved agency but was unable to obtain the services during the seven days from the time I made my request, and the following exigent circumstances merit a temporary waiver of the credit counseling requirement so I can file my bankruptcy case now. *[Summarize exigent circumstances here.]*

_____
_____
_____
_____

**If your certification is satisfactory to the court, you must still obtain the credit counseling briefing within the first 30 days after you file your bankruptcy petition and promptly file a certificate from the agency that provided the counseling, together with a copy of any debt management plan developed through the agency.  Failure to fulfill these requirements may result in dismissal of your case.  Any extension of the 30-day deadline can be granted only for cause and is limited to a maximum of 15 days.  Your case may also be dismissed if the court is not satisfied with your reasons for filing your bankruptcy case without first receiving a credit counseling briefing.**

☐ 4.  I am not required to receive a credit counseling briefing because of: *[Check the applicable statement.]* *[Must be accompanied by a motion for determination by the court.]*

☐ Incapacity.  (Defined in 11 U.S.C. § 109(h)(4) as impaired by reason of mental illness or mental deficiency so as to be incapable of realizing and making rational decisions with respect to financial responsibilities.);

☐ Disability.  (Defined in 11 U.S.C. § 109(h)(4) as physically impaired to the extent of being unable, after reasonable effort, to participate in a credit counseling briefing in person, by telephone, or through the Internet.);

☐ Active military duty in a military combat zone.

☐ 5.  The United States trustee or bankruptcy administrator has determined that the credit counseling requirement of 11 U.S.C. § 109(h) does not apply in this district.

**I certify under penalty of perjury that the information provided above is true and correct.**

Signature of Debtor: *John E. Tackett*
JOHN E. TACKETT

Date: 6-27-16

B 1D (Official Form 1, Exhibit D) (12/09)

# UNITED STATES BANKRUPTCY COURT

CENTRAL _____ **District of** CALIFORNIA ___

In re JOHN E. TACKETT _____     Case No. _____
    aka: John Edward Tacket                      (if known)
    Debtor

## EXHIBIT D - INDIVIDUAL DEBTOR'S STATEMENT OF COMPLIANCE WITH CREDIT COUNSELING REQUIREMENT

**Warning: You must be able to check truthfully one of the five statements regarding credit counseling listed below. If you cannot do so, you are not eligible to file a bankruptcy case, and the court can dismiss any case you do file. If that happens, you will lose whatever filing fee you paid, and your creditors will be able to resume collection activities against you. If your case is dismissed and you file another bankruptcy case later, you may be required to pay a second filing fee and you may have to take extra steps to stop creditors' collection activities.**

*Every individual debtor must file this Exhibit D. If a joint petition is filed, each spouse must complete and file a separate Exhibit D. Check one of the five statements below and attach any documents as directed.*

☐ 1. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, and I have a certificate from the agency describing the services provided to me. *Attach a copy of the certificate and a copy of any debt repayment plan developed through the agency.*

☒ 2. Within the 180 days **before the filing of my bankruptcy case**, I received a briefing from a credit counseling agency approved by the United States trustee or bankruptcy administrator that outlined the opportunities for available credit counseling and assisted me in performing a related budget analysis, but I do not have a certificate from the agency describing the services provided to me. *You must file a copy of a certificate from the agency describing the services provided to you and a copy of any debt repayment plan developed through the agency no later than 14 days after your bankruptcy case is filed.*

B1D

B 1D (Official Form 1, Exh. D) (12/09) – Cont.

    ☐ 3.  I certify that I requested credit counseling services from an approved agency but was unable to obtain the services during the seven days from the time I made my request, and the following exigent circumstances merit a temporary waiver of the credit counseling requirement so I can file my bankruptcy case now. *[Summarize exigent circumstances here.]*

_____
_____
_____
_____

    **If your certification is satisfactory to the court, you must still obtain the credit counseling briefing within the first 30 days after you file your bankruptcy petition and promptly file a certificate from the agency that provided the counseling, together with a copy of any debt management plan developed through the agency.  Failure to fulfill these requirements may result in dismissal of your case.  Any extension of the 30-day deadline can be granted only for cause and is limited to a maximum of 15 days.  Your case may also be dismissed if the court is not satisfied with your reasons for filing your bankruptcy case without first receiving a credit counseling briefing.**

    ☐ 4.  I am not required to receive a credit counseling briefing because of: *[Check the applicable statement.]  [Must be accompanied by a motion for determination by the court.]*

        ☐ Incapacity.  (Defined in 11 U.S.C. § 109(h)(4) as impaired by reason of mental illness or mental deficiency so as to be incapable of realizing and making rational decisions with respect to financial responsibilities.);
        ☐ Disability.  (Defined in 11 U.S.C. § 109(h)(4) as physically impaired to the extent of being unable, after reasonable effort, to participate in a credit counseling briefing in person, by telephone, or through the Internet.);
        ☐ Active military duty in a military combat zone.

    ☐ 5.  The United States trustee or bankruptcy administrator has determined that the credit counseling requirement of 11 U.S.C. § 109(h) does not apply in this district.

    **I certify under penalty of perjury that the information provided above is true and correct.**

Signature of Debtor: _*Ellen O. Tackett*_

                  ELLEN O. TACKETT

Date: 06/21/2016 _____

EXHIBIT "3"

Fill in this information to identify your case:

| Debtor 1 | JOHN | E. | TACKETT |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | ELLEN | O. | TACKETT |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: CENTRAL          District of CA
                                                              (State)

Case number _____
            (If known)

☐ Check if this is an
  amended filing

# Official Form 106Sum

## Summary of Your Assets and Liabilities and Certain Statistical Information          12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new *Summary* and check the box at the top of this page.

### Part 1:    Summarize Your Assets

|  | **Your assets**<br>Value of what you own |
|---|---|
| 1. *Schedule A/B: Property* (Official Form 106A/B) | |
| 1a. Copy line 55, Total real estate, from *Schedule A/B*............................................... | $ 170,000 |
| 1b. Copy line 62, Total personal property, from *Schedule A/B*.................................... | $ 399,066 |
| 1c. Copy line 63, Total of all property on *Schedule A/B*............................................. | $ 569,066 |

### Part 2:    Summarize Your Liabilities

|  | **Your liabilities**<br>Amount you owe |
|---|---|
| 2. *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D) | |
| 2a. Copy the total you listed in Column A, *Amount of claim*, at the bottom of the last page of Part 1 of *Schedule D*............ | $ 288,084 |
| 3. *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F) | |
| 3a. Copy the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F*......................................... | $ |
| 3b. Copy the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F*.................................... | + $ 92,464 |
| **Your total liabilities** | $ 380,548 |

### Part 3:    Summarize Your Income and Expenses

| | |
|---|---|
| 4. *Schedule I: Your Income* (Official Form 106I) | |
| Copy your combined monthly income from line 12 of *Schedule I*........................................................................ | $ 2,345 |
| *Schedule J: Your Expenses* (Official Form 106J) | |
| Copy your monthly expenses from line 22c of *Schedule J*................................................................................. | $ 4,031 |

EXHIBIT "3"

| Debtor 1 | JOHN | E. | TACKETT | | Case number *(if known)* _____ |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

**Part 4:** **Answer These Questions for Administrative and Statistical Records**

6. **Are you filling for bankruptcy under Chapter 7, 11, or 13?**

   ☐ No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

   ☒ Yes

7. **What kind of debt do you have?**

   ☒ **Your debts are primarily consumer debts.** *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9g for statistical purpose. 28 U.S.C. § 159.

   ☐ **Your debts are not primarily consumer debts.** You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

8. From the *Statement of Your currently Monthly Income*: Copy your total current monthly income from Official From 122A-1 Line 11; **OR**, From 122B Line 11; **OR**, From 122C-1 Line 14.

   $ 1,994

9. Copy the following special categories of claims from Part 4, line 6 of *Schedule E/F*:

| | Total claim |
|---|---|
| **From Part 4 on Schedule E/F, copy the following:** | |
| 9a. Domestic support obligations (Copy line 6a.) | $_____ |
| 9b. Taxas and certain other debts you owe the government. (Copy line 6b.) | $_____ |
| 9c. Claims for death or personal injury while you were intoxicated. (Copy line 6c.) | $_____ |
| 9d. Students loans. (Copy line 6f.) | $_____ |
| 9e. Obligations arising out of separation agreement or divorce that you did not report as priority claims. (Copy line 6g.) | $_____ |
| 9f. Debts to pension or profit-sharing plans, and other similar debts. (Copy line 6h.) | + $_____ |
| 9g. **Total.** Add lines 9a through 9f. | $_____ |

EXHIBIT "3"

**Fill in this information to identify your case and this filing:**

| | |
|---|---|
| Debtor 1 | JOHN    E.    TACKETT |
| | First Name    Middle Name    Last Name |
| Debtor 2 | ELLEN    O.    TACKETT |
| (Spouse, if filing) | First Name    Middle Name    Last Name |

United States Bankruptcy Court for the: CENTRAL _____ District of CA _____
(State)

Case number _____

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:**   Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1.   **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.
☒ Yes. Where is the property?

1.1.  **3464 N. Arrowhead Ave.**
Street address, if available, or other description

**San Bernardino CA 92405**
City     State     Zip Code

**Riverside**
County

**What is the property?** Check all that apply.
☒ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☒ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:_____

> Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**    **Current value of the portion you own?**

$169,000      $169,000

**Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known.

_____

☐ Check if this is community property (see instructions)

If you own or have more than one, list here:

1.2.  _____
Street address, if available, or other description

_____

City     State     Zip Code

_____
County

**What is the property?** Check all that apply.
☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:_____

> Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**    **Current value of the portion you own?**

$_____      $_____

**Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known.

_____

☐ Check if this is community property (see instructions)

EXHIBIT "3"

B106AB

Debtor 1    JOHN          E.        TACKETT          Case number (if known) _____

| | | |
|---|---|---|

1.3. __2555 PALM CANYON DR.__
Street address, if available, or other description

__(Desert Isle-Great Destinations)__

__PALM SPRINGS    CA 92264__
City                          State    ZIP Code

__Riverside__
County

**What is the property?** Check all that apply.

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☒ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☒ At least one of the debtors and another

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $ 4,000 | $ 1,000 |

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

☐ Check if this is community property (see instructions)

Other information you wish to add about this item, such as local property identification number: LOT 1 OF TRACT #15638

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here. ........................................  ➡ $ 170,000

---

## Part 2:    Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
☒ Yes

3.1.  Make:          LINCOLN
      Model:         MKX
      Year:          2008
      Approximate mileage: 130000

      Other information:

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☒ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $ 7,747 | $ 1,212 |

If you own or have more than one, describe here:

3.2.  Make:          CHEVROLET
      Model:         SILVERADO
      Year:          1982
      Approximate mileage: 210000

      Other information:

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☒ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| $ 250 | $ 250 |

Debtor 1    JOHN             E.        TACKETT                        Case number *(if known)* _____
   First Name    Middle Name    Last Name

| | Who has an interest in the property? Check one. | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|

3.3.  Make: _____

Model: _____

Year: _____

Approximate mileage: _____

Other information:

Who has an interest in the property? Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Current value of the entire property?     Current value of the portion you own?

$ _____    $ _____

3.4.  Make: _____

Model: _____

Year: _____

Approximate mileage: _____

Other information:

Who has an interest in the property? Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Current value of the entire property?     Current value of the portion you own?

$ _____    $ _____

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**

*Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☐ No
☐ Yes

4.1.  Make: _____

Model: _____

Year: _____

Other information:

Who has an interest in the property? Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Current value of the entire property?     Current value of the portion you own?

$ _____    $ _____

If you own or have more than one, list here:

4.2.  Make: _____

Model: _____

Year: _____

Other information:

Who has an interest in the property? Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Current value of the entire property?     Current value of the portion you own?

$ _____    $ _____

5.  Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here. .................................... ▶ **$ 1,462**

EXHIBIT "3"

| Debtor 1 | JOHN | E. | TACKETT | Case number (if known) _____ |
| | First Name | Middle Name | Last Name | |

---

**Part 3:**   **Describe Your Personal and Household Items**

| Do you own or have any legal or equitable interest in any of the following items? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

6. **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ☐ No
   ☒ Yes. Describe. .... MISC. HOUSEHOLD APPLIANCES AND FURNISHINGS          $ 500

7. **Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
   ☐ No
   ☒ Yes. Describe.   TELEVISIONS AND HOME ENTERTAINMENT          $ 500

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   ☒ No
   ☐ Yes. Describe. ....          $ _____

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   ☒ No
   ☐ Yes. Describe. ....          $ _____

10. **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
    ☒ No
    ☐ Yes. Describe. ....          $ _____

11. **Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    ☐ No
    ☒ Yes. Describe. ....   EVERYDAY CLOTHES          $ 500

12. **Jewelry**
    *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
    ☐ No
    ☒ Yes. Describe. ....   WEDDING RING SETS          $ 500

13. **Non-farm animals**
    *Examples:* Dogs, cats, birds, horses
    ☒ No
    ☐ Yes. Describe. ....          $ _____

14. **Any other personal and household items you did not already list, including any health aids you did not list**
    ☒ No
    ☐ Yes. Give specific information..........          $ _____

15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here ................................................➡    $ 2,000

| Debtor 1 | JOHN | E. | TACKETT | | Case number (*if known*) _____ |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

---

**Part 4:    Describe Your Financial Assets**

| Do you own or have any legal or equitable interest in any of the following? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**16. Cash**

Examples: Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

[X] No

[ ] Yes...........................................................................................................................    Cash: ...................    $ _____

**17. Deposits of money**

Examples: Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

[ ] No

[X] Yes.................

Institution name:

| | | |
|---|---|---|
| 17.1. Checking account: | US BANK | $ 33 |
| 17.2. Checking account: | CHASE BANK | $ 54 |
| 17.3. Savings account: | | $ |
| 17.4. Savings account: | | $ |
| 17.5. Certificates of deposit: | | $ |
| 17.6. Other financial account: | CHASE BANK CHECKING W/DAUGHTER-N-LAW | $ |
| 17.7. Other financial account: | | $ |
| 17.8. Other financial account: | | $ |
| 17.9. Other financial account: | | $ |

**18. Bonds, mutual funds, or publicly traded stocks**

Examples: Bond funds, investment accounts with brokerage firms, money market accounts

[X] No

[ ] Yes................

Institution or issuer name:

$ _____
$ _____
$ _____

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

[X] No

[ ] Yes. Give specific information about them. ....................

Name of entity:                                     % of ownership:

_____ %    $ _____
_____ %    $ _____
_____ %    $ _____

---

| Debtor 1 | JOHN | E. | TACKETT | Case number (if known) _____ |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**

*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

[X] No

[ ] Yes. Give specific   Issuer name:
information about
them. ..................

$ _____

$ _____

$ _____

**21. Retirement or pension accounts**

*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

[ ] No

[X] Yes. List each   Type of account:   Institution name:
account separately..

| 401(k) or similar plan: | _____ | $ _____ |
| Pension plan: | SBCERA | $145,000 |
| IRA: | PROVIDENT TRUST GROUP | $250,000 |
| Retirement account: | _____ | $ _____ |
| Keogh: | _____ | $ _____ |
| Additional account: | _____ | $ _____ |
| Additional account: | _____ | $ _____ |

**22. Security deposits and prepayments**

Your share of all unused deposits you have made so that you may continue service or use from a company

*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others

[X] No

[ ] Yes......................   Institution name or individual:

| Electric: | _____ | $ _____ |
| Gas: | _____ | $ _____ |
| Heating oil: | _____ | $ _____ |
| Security deposit on rental unit: | _____ | $ _____ |
| Prepaid rent: | _____ | $ _____ |
| Telephone: | _____ | $ _____ |
| Water: | _____ | $ _____ |
| Rented furniture: | _____ | $ _____ |
| Other: | _____ | $ _____ |

**23. Annuities** (A contract for a periodic payment of money to you, either for life orfor a number of years)

[X] No

[ ] Yes......................   Issuer name or description:

$ _____

$ _____

$ _____

Debtor 1    JOHN          E.        TACKETT                     Case number (if known) _____
            First Name    Middle Name    Last Name

---

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

- [X] No
- [ ] Yes .......................... Institution name and description. Separately file the records of any interests. 11 U.S.C. § 521 (c):

| | |
|---|---|
| _____ | $ _____ |
| _____ | $ _____ |
| _____ | $ _____ |

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

- [X] No
- [ ] Yes. Give specific information about them. .. [_____]  $ _____

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
*Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

- [X] No
- [ ] Yes. Give specific information about them. .. [_____]  $ _____

**27. Licenses, franchises, and other general intangibles**
*Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

- [X] No
- [ ] Yes. Give specific information about them. .. [_____]  $ _____

| Money or property owed to you? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**28. Tax refunds owed to you**

- [ ] No
- [X] Yes. Give specific information about them, including whether you already filed the returns and the tax years. ......................

EARNED INCOME TAX REFUND

| Federal: | $ 367 |
|---|---|
| State: | $ _____ |
| Local: | $ _____ |

**29. Family support**
*Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

- [X] No
- [ ] Yes. Give specific information. ..........

| Alimony: | $ _____ |
|---|---|
| Maintenance: | $ _____ |
| Support: | $ _____ |
| Divorce settlement: | $ _____ |
| Property settlement: | $ _____ |

**30. Other amounts someone owes you**
*Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay, workers' compensation, Social Security benefits; unpaid loans you made to someone else

- [X] No
- [ ] Yes. Give specific information. ..........  $ _____

---

Official Form 106A/B                    Schedule A/B: Property                    page 7

EXHIBIT "3"

| Debtor 1 | JOHN | E. | TACKETT | Case number (if known) |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

**31. Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

☐ No

☒ Yes. Name the insurance company of each policy and list its value. ...

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| SBCERA | Ellen Tackett | $ N/A |
| CLEA | Ellen Tackett | $ |
| | | $ |

**32. Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

☒ No

☐ Yes. Give specific information. .......... $ _____

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue

☒ No

☐ Yes. Describe each claim. ................ $ _____

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

☒ No

☐ Yes. Describe each claim. ............... $ _____

**35. Any financial assets you did not already list**

☒ No

☐ Yes. Give specific information. ........ $ _____

**36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here**............................................................................. ➡ $ 395,454

---

**Part 5:** Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

**37. Do you own or have any legal or equitable interest in any business-related property?**

☐ No. Go to Part 6.
☒ Yes. Go to line 38.

Current value of the portion you own?
Do not deduct secured claims or exemptions.

**38. Accounts receivable or commissions you already earned**

☒ No

☐ Yes. Describe..... $ _____

**39. Office equipment, furnishings, and supplies**
*Examples:* Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices

☐ No

☒ Yes. Describe..... DELL DESKTOP; HP LAPTOP AND BROTHER COPIER $ 150

---

EXHIBIT "3"

Debtor 1    JOHN      E.      TACKETT      Case number *(if known)* _____
First Name    Middle Name    Last Name

---

**40. Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**

[X] No
[ ] Yes. Describe..... _____ $ _____

**41. Inventory**

[X] No
[ ] Yes. Describe..... _____ $ _____

**42. Interests in partnerships or joint ventures**

[X] No
[ ] Yes. Describe......

Name of entity:           % of ownership:
_____ _____ %   $ _____
_____ _____ %   $ _____
_____ _____ %   $ _____

**43. Customer lists, mailing lists, or other compilations**

[X] No
[ ] Yes. Do your lists include **personally identifiable information** (as defined in 11 U.S.C. § 101(41A))?

     [ ] No
     [ ] Yes. Describe..... _____ $ _____

**44. Any business-related property you did not already list**

[X] No
[ ] Yes. Give specific
     information ......... _____ $ _____
                    _____ $ _____
                    _____ $ _____
                    _____ $ _____
                    _____ $ _____

**45.** Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached
for Part 5. Write that number here............................................................................ ➔   $ 150

---

| **Part 6:** | **Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.** If you own or have an interest in farmland, list it in Part 1. |

**46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

[X] No. Go to Part 7.
[ ] Yes. Go to line 47.

                                             **Current value of the portion you own?**
                                             Do not deduct secured claims or exemptions.

**47. Farm animals**
*Examples*: Livestock, poultry, farm-raised fish

[X] No
[ ] Yes.................... _____ $ _____

---

EXHIBIT "3"

Debtor 1   JOHN            E.          TACKETT          Case number (if known) _____

48. **Crops—either growing or harvested**

   [X] No

   [ ] Yes. Give specific
      information...........  $ _____

49. **Farm and fishing equipment, implements, machinery, fixtures, and tools of trade**

   [X] No

   [ ] Yes.....................  $ _____

50. **Farm and fishing supplies, chemicals, and feed**

   [X] No

   [ ] Yes.....................  $ _____

51. **Any farm- and commercial fishing-related property you did not already list**

   [X] No

   [ ] Yes. Give specific
      information...........  $ _____

52. **Add the dollar value of all of your entries from Part 6, including any entries for pages you have attached
for Part 6. Write that number here**................................................................................... ➤  $ _____

| Part 7: | Describe All Property You Own or Have an Interest in That You Did Not List Above |
|---|---|

53. **Do you have other property of any kind you did not already list?**
   *Examples:* Season tickets, country club membership

   [ ] No

   [X] Yes. Give specific
      information...........
      716 Bayonne Street
      El Segundo, CA 90245          $ N/A _____
      (Inheritance tranferred to Joint-debtor's   $ _____
      sister)          $ _____

54. **Add the dollar value of all of your entries from Part 7. Write that number here**................................ ➤  $ _____

| Part 8: | List the Totals of Each Part of this Form |
|---|---|

55. **Part 1: Total real estate, line 2**................................................................................ ➤  $ 170,000 _____

56. **Part 2: Total vehicles, line 5**          $ 1,462 _____

57. **Part 3: Total personal and household items, line 15**          $ 2,000 _____

58. **Part 4: Total financial assets, line 36**          $ 395,454 _____

59. **Part 5: Total business-related property, line 45**          $ 150 _____

60. **Part 6: Total farm- and fishing-related property, line 52**          $ _____

61. **Part 7: Total other property not listed, line 54**          + $ _____

62. **Total personal property. Add lines 56 through 61**...................          $ 399,066 ___  Copy personal property total ➤  + $ 399,066 _____

63. **Total of all property on Schedule A/B. Add line 55 + line 62**..........................................          $ 569,066 _____

Case 6:18-bk-05338-MH   Doc 1   Filed 06/20/18   Entered 06/20/18 12:33:59   Desc
Main Document    Page 108 of 210

| Fill in this information to identify your case: | |
|---|---|

Debtor 1 __JOHN__ ___E.___ ___TACKETT___
First Name    Middle Name    Last Name

Debtor 2 __ELLEN__ __O.__ __TACKETT__
(Spouse, if filing) First Name    Middle Name    Last Name

United States Bankruptcy Court for the: __CENTRAL__    District of __CA__
(State)

Case number _____
(If known)

☐ Check if this is an amended filing

# Official Form 106C

# Schedule C: The Property You Claim as Exempt                     12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.

| Part 1: | Identify the Property You Claim as Exempt |
|---|---|

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ☒ You are claiming state and federal nonbankruptcy exemptions. 11 U.S.C. § 522(b)(3)
   ☐ You are claiming federal exemptions. 11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own  Copy the value from *Schedule A/B* | Amount of the exemption you claim  *Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| Brief description: __3464 N. ARROWHEAD__  Line from *Schedule A/B*: __1.1__ | $__170,000__ | ☐ $_____  ☒ 100% of fair market value, up to any applicable statutory limit | __704.730__ |
| Brief description: __LINCOLN MKX__  Line from *Schedule A/B*: __3.1__ | $__4,000__ | ☐ $_____  ☒ 100% of fair market value, up to any applicable statutory limit | __704.010__ |
| Brief description: __CHEVROLET SILVERADO__  Line from *Schedule A/B*: __3.2__ | $__250__ | ☐ $_____  ☒ 100% of fair market value, up to any applicable statutory limit | __704.010__ |

3. **Are you claiming a homestead exemption of more than $155,675?**
   (Subject to adjustment on 4/01/16 and every 3 years after that for cases filed on or after the date of adjustment.)

   ☐ No
   ☒ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?
       ☒ No
       ☐ Yes.

Debtor 1  JOHN                    E.
     First Name    Middle Name    Last Name    Case number *(if known)*_____

| Part 2: | Additional Page |
| --- | --- |

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
| --- | --- | --- | --- |
| Brief description: HOUSEHOLD APPLIANCES<br>Line from *Schedule A/B*: 6 | $500 | ☐ $_____<br>☒ 100% of fair market value, up to any applicable statutory limit | 704.020 |
| Brief description: TELEVISIONS<br>Line from *Schedule A/B*: 7 | $500 | ☐ $_____<br>☒ 100% of fair market value, up to any applicable statutory limit | 704.020 |
| Brief description: EVERDAY CLOTHES<br>Line from *Schedule A/B*: 11 | $500 | ☐ $_____<br>☒ 100% of fair market value, up to any applicable statutory limit | 704.020 |
| Brief description: WEDDING RING SETS<br>Line from *Schedule A/B*: 12 | $500 | ☐ $_____<br>☒ 100% of fair market value, up to any applicable statutory limit | 704.040 |
| Brief description: US BANK<br>Line from *Schedule A/B*: 17.1 | $33 | ☐ $_____<br>☒ 100% of fair market value, up to any applicable statutory limit | 704.080 |
| Brief description: CHASE BANK<br>Line from *Schedule A/B*: 17.2 | $54 | ☐ $_____<br>☒ 100% of fair market value, up to any applicable statutory limit | 704.080 |
| Brief description: CHASE BANK<br>Line from *Schedule A/B*: 17 | $1 | ☐ $_____<br>☒ 100% of fair market value, up to any applicable statutory limit | 704.080 |
| Brief description: SBCERA<br>Line from *Schedule A/B*: 21 | $145,000 | ☐ $_____<br>☒ 100% of fair market value, up to any applicable statutory limit | 704.110(b) |
| Brief description: PROVIDENT TRUST GRP<br>Line from *Schedule A/B*: 21 | $250,000 | ☐ $_____<br>☒ 100% of fair market value, up to any applicable statutory limit | 704.115(b) |
| Brief description: DESKTOP, ETC.<br>Line from *Schedule A/B*: 39 | $150 | ☐ $_____<br>☒ 100% of fair market value, up to any applicable statutory limit | 704.020 |
| Brief description: 716 Bayonne St.<br>Line from *Schedule A/B*: 1.2 | $unknown | ☐ $_____<br>☒ 100% of fair market value, up to any applicable statutory limit | 704.730 |
| Brief description: Desert Isle Great Destinations<br>Line from *Schedule A/B*: 1.3 | $1,000 | ☐ $_____<br>☒ 100% of fair market value, up to any applicable statutory limit | |

EXHIBIT "3"

Debtor 1    JOHN   E.   TACKETT
      First Name     Middle Name     Last Name     Case number (if known)

| **Part 2:** | **Additional Page** |
|---|---|

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| Brief description: CLEA<br>Line from *Schedule A/B*: 31 | $unknown | [X] $ _____<br>[ ] 100% of fair market value, up to any applicable statutory limit | 704.110(b) |
| Brief description: _____<br>Line from *Schedule A/B*: ____ | $ _____ | [ ] $ _____<br>[ ] 100% of fair market value, up to any applicable statutory limit | |
| Brief description: _____<br>Line from *Schedule A/B*: ____ | $ _____ | [ ] $ _____<br>[ ] 100% of fair market value, up to any applicable statutory limit | |
| Brief description: _____<br>Line from *Schedule A/B*: ____ | $ _____ | [ ] $ _____<br>[ ] 100% of fair market value, up to any applicable statutory limit | |
| Brief description: _____<br>Line from *Schedule A/B*: ____ | $ _____ | [ ] $ _____<br>[ ] 100% of fair market value, up to any applicable statutory limit | |
| Brief description: _____<br>Line from *Schedule A/B*: ____ | $ _____ | [ ] $ _____<br>[ ] 100% of fair market value, up to any applicable statutory limit | |
| Brief description: _____<br>Line from *Schedule A/B*: ____ | $ _____ | [ ] $ _____<br>[ ] 100% of fair market value, up to any applicable statutory limit | |
| Brief description: _____<br>Line from *Schedule A/B*: ____ | $ _____ | [ ] $ _____<br>[ ] 100% of fair market value, up to any applicable statutory limit | |
| Brief description: _____<br>Line from *Schedule A/B*: ____ | $ _____ | [ ] $ _____<br>[ ] 100% of fair market value, up to any applicable statutory limit | |
| Brief description: _____<br>Line from *Schedule A/B*: ____ | $ _____ | [ ] $ _____<br>[ ] 100% of fair market value, up to any applicable statutory limit | |
| Brief description: _____<br>Line from *Schedule A/B*: ____ | $ _____ | [ ] $ _____<br>[ ] 100% of fair market value, up to any applicable statutory limit | |
| Brief description: _____<br>Line from *Schedule A/B*: ____ | $ _____ | [ ] $ _____<br>[ ] 100% of fair market value, up to any applicable statutory limit | |
| Brief description: _____<br>Line from *Schedule A/B*: ____ | $ _____ | [ ] $ _____<br>[ ] 100% of fair market value, up to any applicable statutory limit | |

EXHIBIT "3"

Fill in this information to identify your case:

| Debtor 1 | JOHN | E. | TACKETT |
| | First Name | Middle Name | Last Name |
| Debtor 2 | ELLEN | O. | TACKETT |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: CENTRAL    District of CA
                                                            (State)

Case number
(If known) _____

☐ Check if this is an
amended filing

## Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

1. Do any creditors have claims secured by your property?
   - ☒ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.
   - ☐ Yes. Fill in all of the information below.

### Part 1:    List All Secured Claims

2. **List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim | Column C<br>Unsecured portion<br>If any |
|---|---|---|---|---|

**2.1**
US Bank Home Mortgage
Creditor's Name

Po Box 790415
Number    Street

St. Louis    MO 63179-0415
City    State    ZIP Code

**Who owes the debt?** Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☒ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim relates to a community debt

Date debt was incurred _____

Describe the property that secures the claim: $ 283,084    $ 283,084    $ _____

3464 N. Arrowhead Avenue

**As of the date you file, the claim is:** Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Nature of lien.** Check all that apply.
- ☒ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ☐ Other (including a right to offset) _____

Last 4 digits of account number    7    0    0    0

**2.2**
Lincoln Automotive Finacial Svc
Creditor's Name

PO Box 552679
Number    Street

Detroit    MI 48255-0415
City    State    ZIP Code

**Who owes the debt?** Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☒ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim relates to a community debt

Date debt was incurred _____

Describe the property that secures the claim: $ 5,000    $ 5,000    $ _____

Lincoln MKX

**As of the date you file, the claim is:** Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Nature of lien.** Check all that apply.
- ☒ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ☐ Other (including a right to offset) _____

Last 4 digits of account number    4    9    5    2

Add the dollar value of your entries in Column A on this page. Write that number here:    $ 288,084

Official Form 106D    Schedule D: Creditors Who Have Claims Secured by Property    page 1 of 3

Debtor 1    JOHN                        E.        Moustis
            First Name    Middle Name        Last Name                                    Case number (if known) _____

| Part 1: | **Additional Page**<br>After listing any entries on this page, number them beginning with 2.3, followed by 2.4, and so forth. | **Column A**<br>Amount of claim<br>Do not deduct the value of collateral. | **Column B**<br>Value of collateral that supports this claim | **Column C**<br>Unsecured portion<br>If any |
|---|---|---|---|---|

☐

Creditor's Name

_____

Number        Street

_____
_____

City            State    ZIP Code

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this claim relates to a community debt**

Date debt was incurred _____

**Describe the property that secures the claim:**    $ _____    $ _____    $ _____

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Last 4 digits of account number ___ ___ ___ ___

---

☐

Creditor's Name

_____

Number        Street

_____
_____

City            State    ZIP Code

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this claim relates to a community debt**

Date debt was incurred _____

**Describe the property that secures the claim:**    $ _____    $ _____    $ _____

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Last 4 digits of account number ___ ___ ___ ___

---

☐

Creditor's Name

_____

Number        Street

_____
_____

City            State    ZIP Code

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this claim relates to a community debt**

Date debt was incurred _____

**Describe the property that secures the claim:**    $ _____    $ _____    $ _____

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Last 4 digits of account number ___ ___ ___ ___

---

| Add the dollar value of your entries in Column A on this page. Write that number here: | $ _____ |
|---|---|
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | $ 288,084 |

Debtor 1    JOHN          E.          Magaña
            First Name    Middle Name    Last Name                Case number (if known) _____

| Part 2: | List Others to Be Notified for a Debt That You Already Listed |

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

---

Name
Number    Street
City            State    ZIP Code

On which line in Part 1 did you enter the creditor? _____
Last 4 digits of account number ___ ___ ___ ___

---

Name
Number    Street
City            State    ZIP Code

On which line in Part 1 did you enter the creditor? _____
Last 4 digits of account number ___ ___ ___ ___

---

Name
Number    Street
City            State    ZIP Code

On which line in Part 1 did you enter the creditor? _____
Last 4 digits of account number ___ ___ ___ ___

---

Name
Number    Street
City            State    ZIP Code

On which line in Part 1 did you enter the creditor? _____
Last 4 digits of account number ___ ___ ___ ___

---

Name
Number    Street
City            State    ZIP Code

On which line in Part 1 did you enter the creditor? _____
Last 4 digits of account number ___ ___ ___ ___

---

Name
Number    Street
City            State    ZIP Code

On which line in Part 1 did you enter the creditor? _____
Last 4 digits of account number ___ ___ ___ ___

---

Official Form 106D    Part 2 of Schedule D: Creditors Who Have Claims Secured by Property    page 3 of 3

EXHIBIT "3"

Fill in this information to identify your case:

| Debtor 1 | JOHN | E. | TACKETT |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | ELLEN | O. | TACKETT |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: CENTRAL          District of CA
                                                                      (State)

Case number
(If known)

☐ Check if this is an
    amended filing

## Official Form 106E/F

# Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Property* (Official Form 106A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 106G). Do not include any creditors with partially secured claims that are listed in *Schedule D: Creditors Who Have Claims Secured by Property*. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. On the top of any additional pages, write your name and case number (if known).

### Part 1:     List All of Your PRIORITY Unsecured Claims

1. **Do any creditors have priority unsecured claims against you?**
   ☒ No. Go to Part 2.
   ☐ Yes.

2. **List all of your priority unsecured claims.** If a creditor has more than one priority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. If a claim has both priority and nonpriority amounts, list that claim here and show both priority and nonpriority amounts. As much as possible, list the claims in alphabetical order according to the creditor's name. If you have more than two priority unsecured claims, fill out the Continuation Page of Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.
   (For an explanation of each type of claim, see the instructions for this form in the instruction booklet.)

| | | Total claim | Priority amount | Nonpriority amount |
|---|---|---|---|---|

**2.1**

Priority Creditor's Name

Number          Street

_____

City                    State      ZIP Code

**Who incurred the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☐ No
☐ Yes

Last 4 digits of account number ___ ___ ___ ___          $_____   $_____   $_____

**When was the debt incurred?**          _____

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of PRIORITY unsecured claim:**
☐ Domestic support obligations
☐ Taxes and certain other debts you owe the government
☐ Claims for death or personal injury while you were intoxicated
☐ Other. Specify _____

**2.2**

Priority Creditor's Name

Number          Street

_____

City                    State      ZIP Code

**Who incurred the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☐ No
☐ Yes

Last 4 digits of account number ___ ___ ___ ___          $_____   $_____   $_____

**When was the debt incurred?**          _____

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of PRIORITY unsecured claim:**
☐ Domestic support obligations
☐ Taxes and certain other debts you owe the government
☐ Claims for death or personal injury while you were intoxicated
☐ Other. Specify _____

Debtor 1    JOHN    _____    E. _____    _____ JACKEL    _____    Case number *(if known)* _____
First Name        Middle Name        Last Name

| Part 1: | Your PRIORITY Unsecured Claims — Continuation Page |
|---|---|

| After listing any entries on this page, number them beginning with 2.3, followed by 2.4, and so forth. | Total claim | Priority amount | Nonpriority amount |
|---|---|---|---|

____

Priority Creditor's Name _____

Number        Street _____

_____

City        State        Zip Code _____

**Who incurred the debt?** Check one.
- [ ] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another

- [ ] Check if this claim is for a community debt

**Is the claim subject to offset?**
- [ ] No
- [ ] Yes

Last 4 digits of account number ___ ___ ___ ___     $ _____     $ _____     $ _____

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

**Type of PRIORITY unsecured claim:**
- [ ] Domestic support obligations
- [ ] Taxes and certain other debts you owe the government
- [ ] Claims for death or personal injury while you were intoxicated
- [ ] Other. Specify _____

____

Priority Creditor's Name _____

Number        Street _____

_____

City        State        Zip Code _____

**Who incurred the debt?** Check one.
- [ ] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another

- [ ] Check if this claim is for a community debt

**Is the claim subject to offset?**
- [ ] No
- [ ] Yes

Last 4 digits of account number ___ ___ ___ ___     $ _____     $ _____     $ _____

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

**Type of PRIORITY unsecured claim:**
- [ ] Domestic support obligations
- [ ] Taxes and certain other debts you owe the government
- [ ] Claims for death or personal injury while you were intoxicated
- [ ] Other. Specify _____

____

Priority Creditor's Name _____

Number        Street _____

_____

City        State        Zip Code _____

**Who incurred the debt?** Check one.
- [ ] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another

- [ ] Check if this claim is for a community debt

**Is the claim subject to offset?**
- [ ] No
- [ ] Yes

Last 4 digits of account number ___ ___ ___ ___     $ _____     $ _____     $ _____

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

**Type of PRIORITY unsecured claim:**
- [ ] Domestic support obligations
- [ ] Taxes and certain other debts you owe the government
- [ ] Claims for death or personal injury while you were intoxicated
- [ ] Other. Specify _____

EXHIBIT "3"

Debtor 1    JOHN         E.           _____         Case number _(if known)_____
             First Name   Middle Name   Last Name

| **Part 2:** | **List All of Your NONPRIORITY Unsecured Claims** |
|---|---|

**3. Do any creditors have priority unsecured claims against you?**

☐ No. You have nothing to report in this part. Submit this form to the court with your other schedules.

☒ Yes

**4. List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim.** If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3. If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

|  |  |  | Total claim |
|---|---|---|---|

**4.1**

Bank of America
Nonpriority Creditor's Name

PO Box 15019
Number      Street

Wilmington          DE    19886-5019
City                State  ZIP Code

Last 4 digits of account number  3  7  5  8

When was the debt incurred?  Unknown

$ 24,758

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who incurred the debt?** Check one.

☐ Debtor 1 only
☒ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**

☐ No
☐ Yes

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☒ Other. Specify  Credit card debt

---

**4.2**

Chase Bank
Nonpriority Creditor's Name

PO Box 15123
Number      Street

Wilmington          DE    19850-5123
City                State  ZIP Code

Last 4 digits of account number  1  7  9  6

When was the debt incurred?  unknown

$ 19,606

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who incurred the debt?** Check one.

☐ Debtor 1 only
☒ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**

☐ No
☐ Yes

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☒ Other. Specify  Credit card debt

---

**4.3**

Chase Bank
Nonpriority Creditor's Name

PO Box 15123
Number      Street

Wilmington          DE    19850-5123
City                State  ZIP Code

Last 4 digits of account number  8  9  4  4

When was the debt incurred?  unknown

$ 5,080

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who incurred the debt?** Check one.

☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**

☐ No
☐ Yes

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☒ Other. Specify  Credit card debt

---

EXHIBIT "3"

Debtor 1   JOHN      E.      ANDERSON
   First Name    Middle Name    Last Name

Case number *(if known)* _____

| **Part 2:** | **Your NONPRIORITY Unsecured Claims — Continuation Page** |
|---|---|

| After listing any entries on this page, number them beginning with 4.5, followed by 4.6, and so forth. | **Total claim** |
|---|---|

**Chase Bank**
Nonpriority Creditor's Name

Po Box 15123
Number    Street

Wilmington      DE    19850-5123
City           State    Zip Code

**Who incurred the debt?** Check one.
- [X] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another
- [ ] Check if this claim is for a community debt

**Is the claim subject to offset?**
- [ ] No
- [ ] Yes

**Last 4 digits of account number** 6 1 3 4

**When was the debt incurred?** unknown

**As of the date you file, the claim is:** Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

**Type of NONPRIORITY unsecured claim:**
- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [X] Other. Specify Credit card debt

$5,072

---

**Citi Cards**
Nonpriority Creditor's Name

PO Box 78045
Number    Street

Phoenix      AZ    85062-8045
City           State    ZIP Code

**Who incurred the debt?** Check one.
- [ ] Debtor 1 only
- [X] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another
- [ ] Check if this claim is for a community debt

**Is the claim subject to offset?**
- [ ] No
- [ ] Yes

**Last 4 digits of account number** 6 8 4 1

**When was the debt incurred?** unknown

**As of the date you file, the claim is:** Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

**Type of NONPRIORITY unsecured claim:**
- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [X] Other. Specify Credit card debt

$8,980

---

**Citi Cards**
Nonpriority Creditor's Name

PO Box 78045
Number    Street

Phoenix      AZ    85062-8045
City           State    Zip Code

**Who incurred the debt?** Check one.
- [X] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another
- [ ] Check if this claim is for a community debt

**Is the claim subject to offset?**
- [ ] No
- [ ] Yes

**Last 4 digits of account number** 4 7 5 7

**When was the debt incurred?** unknown

**As of the date you file, the claim is:** Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

**Type of NONPRIORITY unsecured claim:**
- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [X] Other. Specify Credit card debts

$3,179

---

Debtor 1   JOHN   E.   TACKETT
      First Name    Middle Name    Last Name           Case number *(if known)*_____

| Part 2: | Your NONPRIORITY Unsecured Claims — Continuation Page |
|---|---|

| After listing any entries on this page, number them beginning with 4.5, followed by 4.6, and so forth. | Total claim |
|---|---|

**Discover**
Nonpriority Creditor's Name

PO Box 29033
Number   Street

Phoenix       AZ   85038-9033
City          State   Zip Code

**Who incurred the debt?** Check one.
- [X] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another
- [ ] Check if this claim is for a community debt

**Is the claim subject to offset?**
- [ ] No
- [ ] Yes

**Last 4 digits of account number** 6  6  2  8

**When was the debt incurred?**  unknown

**As of the date you file, the claim is:** Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

**Type of NONPRIORITY unsecured claim:**
- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [X] Other. Specify  Credit card debt

$14,973

---

**TJX Rewards-SYNCB**
Nonpriority Creditor's Name

PO Box 530949
Number   Street

Atlanta      GA   30353-0949
City          State   ZIP Code

**Who incurred the debt?** Check one.
- [ ] Debtor 1 only
- [X] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another
- [ ] Check if this claim is for a community debt

**Is the claim subject to offset?**
- [ ] No
- [ ] Yes

**Last 4 digits of account number** 9  5  4  8

**When was the debt incurred?**  unknown

**As of the date you file, the claim is:** Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

**Type of NONPRIORITY unsecured claim:**
- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [X] Other. Specify  Credit card debt

$1,752

---

**Citi Cards**
Nonpriority Creditor's Name

PO Box 78045
Number   Street

Phoenix      AZ   85062-8045
City          State   Zip Code

**Who incurred the debt?** Check one.
- [X] Debtor 1 only
- [ ] Debtor 2 only
- [ ] Debtor 1 and Debtor 2 only
- [ ] At least one of the debtors and another
- [ ] Check if this claim is for a community debt

**Is the claim subject to offset?**
- [ ] No
- [ ] Yes

**Last 4 digits of account number** 1  6  4  6

**When was the debt incurred?**  unknown

**As of the date you file, the claim is:** Check all that apply.
- [ ] Contingent
- [ ] Unliquidated
- [ ] Disputed

**Type of NONPRIORITY unsecured claim:**
- [ ] Student loans
- [ ] Obligations arising out of a separation agreement or divorce that you did not report as priority claims
- [ ] Debts to pension or profit-sharing plans, and other similar debts
- [X] Other. Specify  Credit card debt

$9,064

---

EXHIBIT "3"

Debtor 1    JOHN        E.    Moss
    First Name      Middle Name      Last Name          _____ (if known)

---

### Part 3:   List Others to Be Notified About a Debt That You Already Listed

5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.

**Synchrony Bank**
Name

**PO Box 965004**
Number    Street

**Orlando**        **FL 32896-5004**
City           State      ZIP Code

On which entry in Part 1 or Part 2 did you list the original creditor?

Line **4.9** of (Check one): ☐ Part 1: Creditors with Priority Unsecured Claims
                                  ☒ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number **9**   **5**   **4**   **8**

---

Name

Number    Street

City           State      ZIP Code

On which entry in Part 1 or Part 2 did you list the original creditor?

Line ____ of (Check one): ☐ Part 1: Creditors with Priority Unsecured Claims
                                  ☐ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number ___ ___ ___ ___

---

Name

Number    Street

City           State      ZIP Code

On which entry in Part 1 or Part 2 did you list the original creditor?

Line ____ of (Check one): ☐ Part 1: Creditors with Priority Unsecured Claims
                                  ☐ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number ___ ___ ___ ___

---

Name

Number    Street

City           State      ZIP Code

On which entry in Part 1 or Part 2 did you list the original creditor?

Line ____ of (Check one): ☐ Part 1: Creditors with Priority Unsecured Claims
                                  ☐ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number ___ ___ ___ ___

---

Name

Number    Street

City           State      ZIP Code

On which entry in Part 1 or Part 2 did you list the original creditor?

Line ____ of (Check one): ☐ Part 1: Creditors with Priority Unsecured Claims
                                  ☐ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number ___ ___ ___ ___

---

Name

Number    Street

City           State      ZIP Code

On which entry in Part 1 or Part 2 did you list the original creditor?

Line ____ of (Check one): ☐ Part 1: Creditors with Priority Unsecured Claims
                                  ☐ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number ___ ___ ___ ___

---

Name

Number    Street

City           State      ZIP Code

On which entry in Part 1 or Part 2 did you list the original creditor?

Line ____ of (Check one): ☐ Part 1: Creditors with Priority Unsecured Claims
                                  ☐ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number ___ ___ ___ ___

---

Debtor 1    JOHN                E.        TACKETT
          First Name    Middle Name        Last Name

Case number (if known) _____

| Part 4: | Add the Amounts for Each Type of Unsecured Claim |
|---|---|

6. **Total the amounts of certain types of unsecured claims. This information is for statistical reporting purposes only. 28 U.S.C. § 159.
Add the amounts for each type of unsecured claim.**

**Total claims
from Part 1**

| | Total claim |
|---|---|
| 6a. Domestic support obligations | 6a. $ _____ |
| 6b. **Taxes and certain other debts you owe the government** | 6b. $ _____ |
| 6c. **Claims for death or personal injury while you were intoxicated** | 6c. $ _____ |
| 6d. **Other.** Add all other priority unsecured claims. Write that amount here. | 6d. + $ _____ |
| 6e. **Total.** Add lines 6a through 6d. | 6e. $ _____ |

**Total claims
from Part 2**

| | Total claim |
|---|---|
| 6f. **Student loans** | 6f. $ _____ |
| 6g. **Obligations arising out of a separation agreement or divorce that you did not report as priority claims** | 6g. $ _____ |
| 6h. **Debts to pension or profit-sharing plans, and other similar debts** | 6h. $ _____ |
| 6i. **Other.** Add all other nonpriority unsecured claims. Write that amount here. | 6i. + $ 92,464 |
| 6j. **Total.** Add lines 6f through 6i. | 6j. $ 92,464 |

EXHIBIT "3"

<table>
<tr><td colspan="3">

**Fill in this information to identify your case:**

</td></tr>
</table>

| Debtor 1 | JOHN | E. | TACKETT |
|----------|------|-----|---------|
| | First Name | Middle Name | Last Name |
| Debtor 2 | ELLEN | O. | TACKETT |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: CENTRAL          District of CA
                                                                    (State)

Case number _____
(If known)

☐ Check if this is an
amended filing

## Official Form 106G

# Schedule G: Executory Contracts and Unexpired Leases                    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).

1. **Do you have any executory contracts or unexpired leases?**

   ☒ No. Check this box and file this form with the court with your other schedules. You have nothing else to report on this form.

   ☐ Yes. Fill in all of the information below even if the contracts or leases are listed on *Schedule A/B: Property* (Official Form 106A/B).

2. List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone). See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

| Person or company with whom you have the contract or lease | State what the contract or lease is for |
|---|---|
| **2.1** | |
| Name | |
| Number        Street | |
| City                    State         ZIP code | |
| **2.2** | |
| Name | |
| Number        Street | |
| City                    State         ZIP code | |
| **2.3** | |
| Name | |
| Number        Street | |
| City                    State         ZIP code | |
| **2.4** | |
| Name | |
| Number        Street | |
| City                    State         ZIP code | |
| **2.5** | |
| Name | |
| Number        Street | |
| City                    State         ZIP code | |

Official Form 106G              Schedule G: Executory Contracts and Unexpired Leases              page 1 of 2

B106G

EXHIBIT "3"

Debtor 1   JOHN        E.        TACKETT                    Case number *(if known)* _____
         First Name    Middle Name      Last Name

| | Additional Page if You Have More Contracts or Leases |
|---|---|

| Person or company with whom you have the contract or lease | What the contract or lease is for |
|---|---|
| 2.___ <br> Name <br><br> Number   Street <br><br> City          State   ZIP code | |
| 2.___ <br> Name <br><br> Number   Street <br><br> City          State   ZIP code | |
| 2.___ <br> Name <br><br> Number   Street <br><br> City          State   ZIP code | |
| 2.___ <br> Name <br><br> Number   Street <br><br> City          State   ZIP code | |
| 2.___ <br> Name <br><br> Number   Street <br><br> City          State   ZIP code | |
| 2.___ <br> Name <br><br> Number   Street <br><br> City          State   ZIP code | |
| 2.___ <br> Name <br><br> Number   Street <br><br> City          State   ZIP code | |
| 2.___ <br> Name <br><br> Number   Street <br><br> City          State   ZIP code | |

Official Form 106G          Schedule G: Executory Contracts and Unexpired Leases          page 2 of 2

EXHIBIT "3"

**Fill in this information to identify your case:**

| | | | | |
|---|---|---|---|---|
| Debtor 1 | JOHN | E. | TACKETT | |
| | First Name | Middle Name | Last Name | |
| Debtor 2 | ELLEN | O. | TACKETT | |
| (Spouse, if filing) | First Name | Middle Name | Last Name | |

United States Bankruptcy Court for the: CENTRAL _____ District of CALIFO _____
(State)

Case number _____
(If known)

☐ Check if this is an
amended filing

## Official Form 106H

## Schedule H: Your Codebtors                                                                 12/15

Codebtors are people or entities who are also liable for any debts you may have. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, and number the entries in the boxes on the left. Attach the Additional Page to this page. On the top of any Additional Pages, write your name and case number (if known). Answer every question.

1. **Do you have any codebtors?** (If you are filing a joint case, do not list either spouse as a codebtor.)

   ☒ No
   ☐ Yes

2. **Within the last 8 years, have you lived in a community property state or territory?** (*Community property states and territories include* Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

   ☐ No. Go to line 3.
   ☐ Yes. Did your spouse, former spouse, or legal equivalent live with you at the time?

   ☐ No
   ☐ Yes. In which community state or territory did you live? _____ . Fill in the name and current address of that person.

   _____
   Name of your spouse, former spouse, or legal equivalent

   _____
   Number          Street

   _____
   City                          State                    ZIP Code

3. In Column 1, list all of your codebtors. Do not include your spouse as a codebtor if your spouse is filing with you. List the person shown in line 2 again as a codebtor only if that person is a guarantor or cosigner. Make sure you have listed the creditor on *Schedule D* (Official Form 106D), *Schedule E/F* (Official Form 106E/F), or *Schedule G* (Official Form 106G). Use *Schedule D, Schedule E/F, or Schedule G* to fill out Column 2.

| Column 1: Your codebtor | Column 2: The creditor to whom you owe the debt |
|---|---|
| | Check all schedules that apply: |
| **3.1** _____<br>Name<br><br>_____<br>Number          Street<br><br>_____<br>City          State          ZIP Code | ☐ Schedule D, line _____<br>☐ Schedule E/F, line _____<br>☐ Schedule G, line _____ |
| **3.2** _____<br>Name<br><br>_____<br>Number          Street<br><br>_____<br>City          State          ZIP Code | ☐ Schedule D, line _____<br>☐ Schedule E/F, line _____<br>☐ Schedule G, line _____ |
| **3.3** _____<br>Name<br><br>_____<br>Number          Street<br><br>_____<br>City          State          ZIP Code | ☐ Schedule D, line _____<br>☐ Schedule E/F, line _____<br>☐ Schedule G, line _____ |

EXHIBIT "3"
B106H

| Debtor 1 | JOHN | E. | TACKE | Case number (if known) |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

**Additional Page to List More Codebtors**

| Column 1: Your codebtor | Column 2: The creditor to whom you owe the debt |
|---|---|
| | Check all schedules that apply: |

**3.___**

Name _____

Number _____ Street _____

City _____ State _____ ZIP Code _____

☐ Schedule D, line _____
☐ Schedule E/F, line _____
☐ Schedule G, line _____

**3.___**

Name _____

Number _____ Street _____

City _____ State _____ ZIP Code _____

☐ Schedule D, line _____
☐ Schedule E/F, line _____
☐ Schedule G, line _____

**3.___**

Name _____

Number _____ Street _____

City _____ State _____ ZIP Code _____

☐ Schedule D, line _____
☐ Schedule E/F, line _____
☐ Schedule G, line _____

**3.___**

Name _____

Number _____ Street _____

City _____ State _____ ZIP Code _____

☐ Schedule D, line _____
☐ Schedule E/F, line _____
☐ Schedule G, line _____

**3.___**

Name _____

Number _____ Street _____

City _____ State _____ ZIP Code _____

☐ Schedule D, line _____
☐ Schedule E/F, line _____
☐ Schedule G, line _____

**3.___**

Name _____

Number _____ Street _____

City _____ State _____ ZIP Code _____

☐ Schedule D, line _____
☐ Schedule E/F, line _____
☐ Schedule G, line _____

**3.___**

Name _____

Number _____ Street _____

City _____ State _____ ZIP Code _____

☐ Schedule D, line _____
☐ Schedule E/F, line _____
☐ Schedule G, line _____

**3.___**

Name _____

Number _____ Street _____

City _____ State _____ ZIP Code _____

☐ Schedule D, line _____
☐ Schedule E/F, line _____
☐ Schedule G, line _____

EXHIBIT "3"

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | JOHN      E.      TACKETT |
| | First Name    Middle Name    Last Name |
| Debtor 2 | ELLEN     O.     TACKETT |
| (Spouse, if filing) | First Name    Middle Name    Last Name |

United States Bankruptcy Court for the: CENTRAL District of CA
(State)

Case number _____
(If known)

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 income as of the following date:

_____
MM / DD / YYYY

## Official Form 106I

12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:  Describe Employment

1. **Fill in your employment information.**

   If you have more than one job, attach a separate page with information about additional employers.

   Include part-time, seasonal, or self-employed work.

   Occupation may include student or homemaker, if it applies.

| | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|
| Employment status | ☐ Employed<br>☒ Not employed | ☐ Employed<br>☒ Not employed |
| Occupation | Disabled Probation Ofcr | _____ |
| Employer's name | County of San Bernardino | _____ |
| Employer's address | N/A<br>Number  Street | _____<br>Number  Street |
| | _____ | _____ |
| | _____ | _____ |
| | City  State  ZIP Code | City  State  ZIP Code |
| How long employed there? | _____ | _____ |

### Part 2:  Give Details About Monthly Income

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. $ _____ | $ _____ |
| 3. | Estimate and list monthly overtime pay. | 3. +$ _____ | +$ _____ |
| 4. | Calculate gross income. Add line 2 + line 3. | 4. $ _____ | $ _____ |

    Schedule I: Your Income    
EXHIBIT "3"    B106I

Debtor 1    JOHN      E.      TACKETT      Case number *(if known)* _____

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| Copy line 4 here ........................................ ➡ | 4. | $ _____ | $ _____ |

5. List all payroll deductions:

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 5a. Tax, Medicare, and Social Security deductions | 5a. | $ _____ | $ _____ |
| 5b. Mandatory contributions for retirement plans | 5b. | $ _____ | $ _____ |
| 5c. Voluntary contributions for retirement plans | 5c. | $ _____ | $ _____ |
| 5d. Required repayments of retirement fund loans | 5d. | $ _____ | $ _____ |
| 5e. Insurance | 5e. | $ _____ | $ _____ |
| 5f. Domestic support obligations | 5f. | $ _____ | $ _____ |
| 5g. Union dues | 5g. | $ _____ | $ _____ |
| 5h. Other deductions. Specify: _____ | 5h. | + $ _____ | + $ _____ |

6. Add the payroll deductions. Add lines 5a + 5b + 5c + 5d + 5e + 5f + 5g + 5h.   6.   $ _____   $ _____

7. Calculate total monthly take-home pay. Subtract line 6 from line 4.   7.   $ _____   $ _____

8. List all other income regularly received:

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 8a. Net income from rental property and from operating a business, profession, or farm. Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ _____ | $ _____ |
| 8b. Interest and dividends | 8b. | $ _____ | $ _____ |
| 8c. Family support payments that you, a non-filing spouse, or a dependent regularly receive. Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ _____ | $ _____ |
| 8d. Unemployment compensation | 8d. | $ _____ | $ _____ |
| 8e. Social Security | 8e. | $ 896 | $ 452 |
| 8f. Other government assistance that you regularly receive. Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: _____ | 8f. | $ _____ | $ _____ |
| 8g. Pension or retirement income | 8g. | $ _____ | $ _____ |
| 8h. Other monthly income. Specify: Disability Income | 8h. | + $ 997 | + $ _____ |

9. Add all other income. Add lines 8a + 8b + 8c + 8d + 8e + 8f + 8g + 8h.   9.   $ 1,893   $ 452

10. Calculate monthly income. Add line 7 + line 9.
Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.   10.   $ 1,893   +   $ 452   =   $ 2,345

11. State all other regular contributions to the expenses that you list in *Schedule J*.
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J*.
Specify: _____   11.   + $ _____

12. Add the amount in the last column of line 10 to the amount in line 11. The result is the combined monthly income.
Write that amount on the *Summary of Your Assets and Liabilities and Certain Statistical Information*, if it applies   12.   $ 2,345
     **Combined monthly income**

13. Do you expect an increase or decrease within the year after you file this form?

[X] No.

[ ] Yes. Explain: _____

EXHIBIT 3

**Fill in this information to identify your case:**

| Debtor 1 | JOHN | E. | TACKETT |
|---|---|---|---|
| | First Name | Middle Name | Last Name |

| Debtor 2 | ELLEN | O. | TACKETT |
|---|---|---|---|
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: CENTRAL     District of CA
                                                      (State)

Case number
(if known) _____

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13
   expenses as of the following date:

   _____
   MM / DD / YYYY

## Official Form 106J

# Schedule J: Your Expenses                                    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:   Describe Your Household

**1. Is this a joint case?**

☐ No. Go to line 2.
☒ Yes. Does Debtor 2 live in a separate household?

   ☒ No
   ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household of Debtor 2.*

**2. Do you have dependents?**

Do not list Debtor 1 and Debtor 2.

Do not state the dependents' names.

☒ No
☐ Yes. Fill out this information for each dependent..................

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| _____ | _____ | ☐ No / ☐ Yes |
| _____ | _____ | ☐ No / ☐ Yes |
| _____ | _____ | ☐ No / ☐ Yes |
| _____ | _____ | ☐ No / ☐ Yes |
| _____ | _____ | ☐ No / ☐ Yes |

**3. Do your expenses include expenses of people other than yourself and your dependents?**

☒ No
☐ Yes

## Part 2:   Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

|  |  | Your expenses |
|---|---|---|
| 4. The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot. | 4. | $1,791 |
| If not included in line 4: | | |
| 4a. Real estate taxes | 4a. | $_____ |
| 4b. Property, homeowner's, or renter's insurance | 4b. | $_____ |
| 4c. Home maintenance, repair, and upkeep expenses | 4c. | $250 |
| 4d. Homeowner's association or condominium dues | 4d. | $_____ |

EXHIBIT "3"
B106J

| Debtor 1 | JOHN | E. | TACKETT | Case number *(if known)* |
| | First Name | Middle Name | Last Name | |

| | | | **Your expenses** |
|---|---|---|---|

| 5. | Additional mortgage payments for your residence, such as home equity loans | 5. | $ _____ |
| 6. | **Utilities:** | | |
| | 6a. Electricity, heat, natural gas | 6a. | $ 175 |
| | 6b. Water, sewer, garbage collection | 6b. | $ 90 |
| | 6c. Telephone, cell phone, Internet, satellite, and cable services | 6c. | $ 362 |
| | 6d. Other. Specify: _____ | 6d. | $ _____ |
| 7. | **Food and housekeeping supplies** | 7. | $ 225 |
| 8. | **Childcare and children's education costs** | 8. | $ _____ |
| 9. | **Clothing, laundry, and dry cleaning** | 9. | $ 10 |
| 10. | **Personal care products and services** | 10. | $ 10 |
| 11. | **Medical and dental expenses** | 11. | $ _____ |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | 12. | $ 150 |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. | $ _____ |
| 14. | **Charitable contributions and religious donations** | 14. | $ 235 |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | |
| | 15a. Life insurance | 15a. | $ _____ |
| | 15b. Health insurance | 15b. | $ 121 |
| | 15c. Vehicle insurance | 15c. | $ 103 |
| | 15d. Other insurance. Specify: _____ | 15d. | $ _____ |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: _____ | 16. | $ _____ |
| 17. | **Installment or lease payments:** | | |
| | 17a. Car payments for Vehicle 1 | 17a. | $ 509 |
| | 17b. Car payments for Vehicle 1 | 17b. | $ _____ |
| | 17c. Other. Specify: _____ | 17c. | $ _____ |
| | 17d. Other. Specify: _____ | 17d. | $ _____ |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, Schedule I, Your Income (Official Form 106I).** | 18. | $ _____ |
| 19. | **Other payments you make to support others who do not live with you.** Specify: _____ | 19. | $ _____ |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on Schedule I: Your Income.** | | |
| | 20a. Mortgages on other property | 20a. | $ _____ |
| | 20b. Real estate taxes | 20b. | $ _____ |
| | 20c. Property, homeowner's, or renter's insurance | 20c. | $ _____ |
| | 20d. Maintenance, repair, and upkeep expenses | 20d. | $ _____ |
| | 20e. Homeowner's association or condominium dues | 20e. | $ _____ |

Official Form 106J                     Schedule J: Your Expenses                     page 2

EXHIBIT "3"

Debtor 1    JOHN          E.          TACKETT          Case number _(if known)_ _____
            First Name    Middle Name        Last Name

---

21. **Other.** Specify:_____    21.    +$ _____

22. **Calculate your monthly expenses.**

    22a. Add lines 4 through 21.                                      22a.    $ 4,031

    22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2    22b.    $ _____

    22c. Add line 22a and 22b. The result is your monthly expenses.   22c.    $ 4,031

23. **Calculate your monthly net income.**

    23a. Copy line 12 (_your combined monthly income_) from _Schedule I_.    23a.    $ 2,345

    23b. Copy your monthly expenses from line 22c above.              23b.   −$ 4,031

    23c. Subtract your monthly expenses from your monthly income.
         The result is your _monthly net income._                     23c.    $ −1,686

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**

    For example, do you expect to finish paying for your car loan within the year or do you expect your
    mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

    [X] No.

    [ ] Yes.    Explain here:

Official Form 106J                     **Schedule J: Your Expenses**                     page **3**
                                       EXHIBIT "3"

Fill in this information to identify your case:

| Debtor 1 | JOHN | E. | TACKETT |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | ELLEN | O. | TACKETT |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: CENTRAL                District of CA
                                                                          (State)

Case number _____
(If known)

☐ Check if this is an
   amended filing

## Official Form 106Dec

# Declaration About an Individual Debtor's Schedules

12/15

If two married people are filing together, both are equally responsible for supplying correct information

You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Sign Below

**Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?**

[X] No

☐ Yes. Name of person _____. Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.

✗ _____           ✗ _____
Signature of Debtor 1                                        Signature of Debtor 2

JOHN E. TACKETT                                          ELLEN O. TACKETT

Date 06/    /2016                                             Date 06/    /2016
      MM / DD / YYYY                                               MM / DD / YYYY

EXHIBIT "3"

**Fill in this information to identify your case:**

Debtor 1    JOHN E. TACKETT
            First Name          Middle Name          Last Name

Debtor 2    ELLEN           O.          TACKETT
(Spouse, if filing) First Name          Middle Name          Last Name

United States Bankruptcy Court for the: CENTRAL          District of CA
                                                                (State)

Case number
(If known)

☐ Check if this is an
   amended filing

# Official Form 107

## Statement of Financial Affairs for Individuals Filing for Bankruptcy          12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Give Details About Your Marital Status and Where You Lived Before

1. **What is your current marital status?**

   ☒ Married
   ☐ Not married

2. **During the last 3 years, have you lived anywhere other than where you live now?**

   ☒ No
   ☐ Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1: | Dates Debtor 1 lived there | Debtor 2: | Dates Debtor 2 lived there |
|---|---|---|---|
| | | ☐ Same as Debtor 1 | ☐ Same as Debtor 1 |
| Number     Street | From _____  To _____ | Number     Street | From _____  To _____ |
| City          State   Zip Code | | City          State   Zip Code | |
| | | ☐ Same as Debtor 1 | ☐ Same as Debtor 1 |
| Number     Street | From _____  To _____ | Number     Street | From _____  To _____ |
| City          State   Zip Code | | City          State   Zip Code | |

3. **Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

   ☒ No
   ☐ Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

### Part 2:    Explain the Sources of your Income

EXHIBIT "3"

Debtor 1    JOHN E. TACKETT
   First Name       Middle Name         Last Name                                             Case number (if known)

4. **Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

[X] No
[ ] Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | Sources of income<br>Check all that apply. | Gross income<br>(before deductions and exclusions) | Sources of income<br>Check all that apply. | Gross income<br>(before deductions and exclusions) |
| **From January 1 of current year until the date you filed for bankruptcy:** | [ ] Wages, commissions, bonuses, tips<br>[ ] Operating a business | $ _____ | [ ] Wages, commissions, bonuses, tips<br>[ ] Operating a business | $ _____ |
| **For last calendar year:**<br>(January 1 to December 31, _____)<br>                    YYYY | [ ] Wages, commissions, bonuses, tips<br>[ ] Operating a business | $ _____ | [ ] Wages, commissions, bonuses, tips<br>[ ] Operating a business | $ _____ |
| **For the calendar year before that:**<br>(January 1 to December 31, _____)<br>                    YYYY | [ ] Wages, commissions, bonuses, tips<br>[ ] Operating a business | $ _____ | [ ] Wages, commissions, bonuses, tips<br>[ ] Operating a business | $ _____ |

5. **Did you receive any other income during this year or the two previous calendar years?**
Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

List each source and the gross income from each source separately. Do not include income that you listed in line 4.

[X] No
[ ] Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | Sources of income<br>Describe below. | Gross income from each source<br>(before deductions and exclusions) | Sources of income<br>Describe below. | Gross income from each source<br>(before deductions and exclusions) |
| **From January 1 of current year until the date you filed for bankruptcy:** | _____ | $ _____ | _____ | $ _____ |
| | _____ | $ _____ | _____ | $ _____ |
| **For last calendar year:**<br>(January 1 to December 31, _____)<br>                    YYYY | _____ | $ _____ | _____ | $ _____ |
| | _____ | $ _____ | _____ | $ _____ |
| | _____ | $ _____ | _____ | $ _____ |
| **For the calendar year before that:**<br>(January 1 to December 31, _____)<br>                    YYYY | _____ | $ _____ | _____ | $ _____ |
| | _____ | $ _____ | _____ | $ _____ |
| | _____ | $ _____ | _____ | $ _____ |

EXHIBIT "3"

Debtor 1    JOHN   E.   TACKETT                                    Case number (if known)_____
            First Name    Middle Name         Last Name

---

| Part 3: | List Certain Payments You Made Before You Filed for Bankruptcy |

6. **Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**

☐ No. **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as
"incurred by an individual primarily for a personal, family, or household purpose."

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $6,225* or more?

☐ No. Go to line 7.

☐ Yes. List below each creditor to whom you paid a total of $6,225* or more in one or more payments and the
total amount you paid that creditor. Do not include payments for domestic support obligations, such as
child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

* Subject to adjustment on 4/01/16 and every 3 years after that for cases filed on or after the date of adjustment.

☒ Yes. **Debtor 1 or Debtor 2 or both have primarily consumer debts.**

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

☒ No. Go to line 7.

☐ Yes. List below each creditor to whom you paid a total of $600 or more and the total amount you paid that
creditor. Do not include payments for domestic support obligations, such as child support and
alimony. Also, do not include payments to an attorney for this bankruptcy case.

| | Dates of payment | Total amount paid | Amount you still owe | Was this payment for... |
|---|---|---|---|---|
| Creditor's Name<br><br>Number    Street<br><br>City    State    ZIP Code | _____ | $ _____ | $ _____ | ☐ Mortgage<br>☐ Car<br>☐ Credit card<br>☐ Loan repayment<br>☐ Suppliers or vendors<br>☐ Other _____ |
| Creditor's Name<br><br>Number    Street<br><br>City    State    ZIP Code | _____ | $ _____ | $ _____ | ☐ Mortgage<br>☐ Car<br>☐ Credit card<br>☐ Loan repayment<br>☐ Suppliers or vendors<br>☐ Other _____ |
| Creditor's Name<br><br>Number    Street<br><br>City    State    ZIP Code | _____ | $ _____ | $ _____ | ☐ Mortgage<br>☐ Car<br>☐ Credit card<br>☐ Loan repayment<br>☐ Suppliers or vendors<br>☐ Other _____ |

---

EXHIBIT "3"

Debtor 1    JOHN  E.  TACKETT                                            Case number *(if known)*_____
            First Name    Middle Name    Last Name

---

7. **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
   *Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner;
   corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing
   agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations,
   such as child support and alimony.

   [X] No
   [ ] Yes. List all payments to an insider.

| | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
|---|---|---|---|---|
| _____<br>Insider's Name<br><br>_____<br>Number    Street<br><br>_____<br><br>_____<br>City                    State    ZIP Code | _____ | $ _____ | $ _____ | |
| _____<br>Insider's Name<br><br>_____<br>Number    Street<br><br>_____<br><br>_____<br>City                    State    ZIP Code | _____ | $ _____ | $ _____ | |

8. **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
   Include payments on debts guaranteed or cosigned by an insider.

   [X] No
   [ ] Yes. List all payments that benefited an insider.

| | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment<br>Include creditor's name |
|---|---|---|---|---|
| _____<br>Insider's Name<br><br>_____<br>Number    Street<br><br>_____<br><br>_____<br>City                    State    ZIP Code | _____ | $ _____ | $ _____ | |
| _____<br>Insider's Name<br><br>_____<br>Number    Street<br><br>_____<br><br>_____<br>City                    State    ZIP Code | _____ | $ _____ | $ _____ | |

---

Official Form 107          Statement of Financial Affairs for Individuals Filing for Bankruptcy          page 4

EXHIBIT "3"

Debtor 1    JOHN E. TACKETT                                    Case number (if known) _____
            First Name    Middle Name        Last Name

| Part 4: | Identify Legal Actions, Repossessions, and Foreclosures |

9.  **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
    List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

    ☐ No
    ☒ Yes. Fill in the details.

| | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| Case title<br>LILLA vs. TACKETT<br><br>Case number CIVDS1515982 | CIVIL COMPLAINT | SAN BERNARDINO SUPERIOR<br>Court Name<br>247 WEST THIRD STREET<br>Number    Street<br>SAN BERNARDINO CA  92415-0210<br>City          State    ZIP Code | ☒ Pending<br>☐ On appeal<br>☐ Concluded |
| Case title<br><br>Case number | | Court Name<br><br>Number    Street<br><br>City          State    ZIP Code | ☐ Pending<br>☐ On appeal<br>☐ Concluded |

10. **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
    Check all that apply and fill in the details below.

    ☒ No.  Go to line 11.
    ☐ Yes. Fill in the information below.

| | Describe the property | Date | Value of the property |
|---|---|---|---|
| Creditor's Name<br><br>Number    Street<br><br>City       State   ZIP Code | | _____ | $ _____ |
| | **Explain what happened**<br>☐ Property was repossessed.<br>☐ Property was foreclosed.<br>☐ Property was garnished.<br>☐ Property was attached, seized, or levied. | | |
| Creditor's Name<br><br>Number    Street<br><br>City       State   ZIP Code | | _____ | $ _____ |
| | **Explain what happened**<br>☐ Property was repossessed.<br>☐ Property was foreclosed.<br>☐ Property was garnished.<br>☐ Property was attached, seized, or levied. | | |

Official Form 107         Statement of Financial Affairs for Individuals Filing for Bankruptcy         page 5

EXHIBIT "3"

| Debtor 1 | JOHN E. TACKETT | | Case number (if known)_____ |
|---|---|---|---|
| | First Name    Middle Name    Last Name | | |

**11. Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?**

[X] No

[ ] Yes. Fill in the details.

| | Describe the action the creditor took | Date action was taken | Amount |
|---|---|---|---|
| _____<br>Creditor's Name | | | |
| _____<br>Number    Street | | _____ | $ _____ |
| _____ | | | |
| _____<br>City              State    ZIP Code | Last 4 digits of account number: XXXX–____ ____ ____ ____ | | |

**12. Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**

[ ] No

[ ] Yes

---

**Part 5:    List Certain Gifts and Contributions**

**13. Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**

[X] No

[ ] Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per person | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|
| _____<br>Person to Whom You Gave the Gift | | _____ | $ _____ |
| _____ | | _____ | $ _____ |
| _____<br>Number    Street | | | |
| _____<br>City              State    ZIP Code | | | |
| Person's relationship to you _____ | | | |

| Gifts with a total value of more than $600 per person | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|
| _____<br>Person to Whom You Gave the Gift | | _____ | $ _____ |
| _____ | | _____ | $ _____ |
| _____<br>Number    Street | | | |
| _____<br>City              State    ZIP Code | | | |
| Person's relationship to you _____ | | | |

Official Form 107          Statement of Financial Affairs for Individuals Filing for Bankruptcy          page 6

EXHIBIT "3"

Debtor 1  JOHN E. TACKETT
First Name  Middle Name  Last Name

Case number (if known) _____

**14. Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?**

[X] No

[ ] Yes. Fill in the details for each gift or contribution.

| Gifts or contributions to charities that total more than $600 | Describe what you contributed | Dates you contributed | Value |
|---|---|---|---|
| Theophany Ministries Int. <br> Creditor's Name <br><br> _____ <br><br> 4225 Prado Rd., Ste. 105 <br> Number    Street <br><br> Corona,  CA 92880 <br> City    State    ZIP Code | Tithes and charity | mo. _____ <br><br> _____ | $2,330 <br><br> $_____ |

---

## Part 6:  List Certain Losses

**15. Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?**

[X] No

[ ] Yes. Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss <br> Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property.* | Date of your loss | Value of property lost |
|---|---|---|---|
| | | _____ | $_____ |

---

## Part 7:  List Certain Payments or Transfers

**16. Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?**
Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

[ ] No

[X] Yes. Fill in the details.

| | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| Stefan R. Pancer <br> Person Who Was Paid <br><br> 700 E. Redlands Blvd., <br> Number    Street <br><br> Ste. U-299 <br><br> Redlands  Ca  92373 <br> City    State    ZIP Code <br><br> paralegal@pancerlaw.com <br> Email or website address <br><br> _____ <br> Person Who Made the Payment, if Not You | Retainer Fees | 5/21/16 | $2,135 <br><br> $_____ |

Official Form 107    Statement of Financial Affairs for Individuals Filing for Bankruptcy    page 7

EXHIBIT "3"

Debtor 1    JOHN E. TACKETT

First Name    Middle Name    Last Name    Case number (if known) _____

| | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| Person Who Was Paid _____ | | | $ _____ |
| Number    Street _____ | | | $ _____ |
| _____ | | _____ | |
| City        State    ZIP Code | | | |
| Email or website address _____ | | | |
| Person Who Made the Payment, if Not You | | | |

17. **Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?**

Do not include any payment or transfer that you listed on line 16.

[X] No

[ ] Yes. Fill in the details.

| | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| Person Who Was Paid _____ | | | $ _____ |
| Number    Street _____ | | _____ | $ _____ |
| _____ | | | |
| City        State    ZIP Code | | | |

18. **Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?**

Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property).

Do not include gifts and transfers that you have already listed on this statement.

[ ] No

[ ] Yes. Fill in the details.

| | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|
| Person Who Received Transfer _____ | | | |
| Number    Street _____ | | | _____ |
| _____ | | | |
| City        State    ZIP Code | | | |
| Person's relationship to you _____ | | | |
| Person Who Received Transfer _____ | | | |
| Number    Street _____ | | | _____ |
| _____ | | | |
| City        State    ZIP Code | | | |
| Person's relationship to you _____ | | | |

Official Form 107    Statement of Financial Affairs for Individuals Filing for Bankruptcy    page 8

EXHIBIT "3"

| Debtor 1 | JOHN E. TACKETT | | Case number (if known) | |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

**19.** Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary? (These are often called *asset-protection devices.*)

[X] No
[ ] Yes. Fill in the details.

| | Description and value of the property transferred | Date transfer was made |
|---|---|---|
| Name of trust | | |
| | | |

---

**Part 8:** List Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units

**20.** Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.

[X] No
[ ] Yes. Fill in the details.

| | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| Name of Financial Institution | XXXX–___ ___ ___ ___ | [ ] Checking [ ] Savings [ ] Money market [ ] Brokerage [ ] Other _____ | _____ | $ _____ |
| Number   Street | | | | |
| City       State   ZIP Code | | | | |
| Name of Financial Institution | XXXX–___ ___ ___ ___ | [ ] Checking [ ] Savings [ ] Money market [ ] Brokerage [ ] Other _____ | | $ _____ |
| Number   Street | | | | |
| City       State   ZIP Code | | | | |

**21.** Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?

[X] No
[ ] Yes. Fill in the details.

| | Who else had access to it? | Describe the contents | Do you still have it? |
|---|---|---|---|
| Name of Financial Institution | Name | | [ ] No [ ] Yes |
| Number   Street | Number   Street | | |
| City   State   ZIP Code | City   State   ZIP Code | | |

EXHIBIT "3"

Debtor 1   JOHN E. TACKETT

First Name    Middle Name          Last Name

Case number *(if known)* _____

22. Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?

[X] No

[ ] Yes. Fill in the details.

| | Who else had access to it? | Describe the contents | Do you still have it? |
|---|---|---|---|
| Name of Storage Facility | Name | | [ ] No [ ] Yes |
| Number    Street | Number    Street | | |
| City          State    ZIP Code | City State  ZIP Code | | |

## Part 9:   Identify Property You Hold or Control for Someone Else

23. Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.

[X] No

[ ] Yes. Fill in the details.

| | Where is the property | Describe the property | Value |
|---|---|---|---|
| Owner's Name | | | $ _____ |
| Number    Street | Number    Street | | |
| City          State    ZIP Code | City          State    ZIP Code | | |

## Part 10:   Give Details About Environmental Information

For the purpose of Part 10, the following definitions apply:

▪ *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.

▪ *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.

▪ *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

Report all notices, releases, and proceedings that you know about, regardless of when they occurred.

24. Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?

[X] No

[ ] Yes. Fill in the details.

| | Governmental unit | Environmental law, if you know it | Date of notice |
|---|---|---|---|
| Name of Site | Governmental unit | | |
| Number    Street | Number    Street | | |
| City          State    ZIP Code | City          State    ZIP Code | | |

Official Form 107              Statement of Financial Affairs for Individuals Filing for Bankruptcy              page 10

Debtor 1    JOHN E. TACKETT                     Case number (if known) _____

First Name      Middle Name      Last Name

---

**25. Have you notified any governmental unit of any release of hazardous material?**

[X] No

[ ] Yes. Fill in the details.

| | Governmental unit | Environmental law, if you know it | Date of notice |
|---|---|---|---|
| Name of Site | Governmental unit | | _____ |
| Number   Street | Number   Street | | |
| City   State   ZIP Code | City   State   ZIP Code | | |

---

**26. Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

[X] No

[ ] Yes. Fill in the details.

| | Court or agency | Nature of the case | Status of the case |
|---|---|---|---|
| Case title | UNITED STATES BA | | [ ] Pending |
| | Court Name | | [ ] On appeal |
| | Number   Street | | [ ] Concluded |
| Case number | City   State   ZIP Code | | |

---

| Part 11: | Give Details About Your Business or Connections to Any Business |
|---|---|

**27. Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?**

[ ] A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time

[ ] A member of a limited liability company (LLC) or limited liability partnership (LLP)

[ ] A partner in a partnership

[ ] An officer, director, or managing executive of a corporation

[ ] An owner of at least 5% of the voting or equity securities of a corporation

[X] No. None of the above applies. Go to Part 12.

[ ] Yes. Check all that apply above and fill in the details below for each business.

| | Describe the nature of the business | Employer Identification number |
|---|---|---|
| Business Name | | Do not include Social Security number or ITIN. |
| Number   Street | | EIN: __ __ – __ __ __ __ __ __ __ |
| | Name of accountant or bookkeeper | Dates business existed |
| City   State   ZIP Code | | From _____ To _____ |
| | Describe the nature of the business | Employer Identification number |
| Business Name | | Do not include Social Security number or ITIN. |
| Number   Street | | EIN: __ __ – __ __ __ __ __ __ __ |
| | Name of accountant or bookkeeper | Dates business existed |
| City   State   ZIP Code | | From _____ To _____ |

---

Official Form 107        Statement of Financial Affairs for Individuals Filing for Bankruptcy        page 11

EXHIBIT "3"

Debtor 1   JOHN E. TACKETT
    First Name    Middle Name      Last Name                    Case number *(if known)* _____

| | Describe the nature of the business | Employer Identification number |
|---|---|---|
| Business Name | | Do not include Social Security number or ITIN. |
| | | EIN: __ __ – __ __ __ __ __ __ __ |
| Number   Street | Name of accountant or bookkeeper | Dates business existed |
| | | |
| City            State      ZIP Code | | From _____ To _____ |

28. Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.

[X] No
[ ] Yes. Fill in the details below.

| | Date issued |
|---|---|
| Name | MM / DD / YYYY |
| Number   Street | |
| City            State      ZIP Code | |

## Part 12:   Sign Below

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

X _~John E. Tackett~_____    X _~Ellen O. Tackett~_____
Signature of Debtor 1                              Signature of Debtor 2
JOHN E. TACKETT                              ELLEN O. TACKETT

Date 06/  /16                          Date 06/  /16

**Did you attach additional pages to *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* (Official Form 107)?**

[X] No
[ ] Yes

**Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?**

[X] No
[ ] Yes. Name of person _____ . Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

EXHIBIT "3"

| Fill in this information to identify your case: |
| --- |

| Debtor 1 | JOHN | E. | TACKETT |
| --- | --- | --- | --- |
| | First Name | Middle Name | Last Name |
| Debtor 2 | ELLEN | O. | TACKETT |
| (Spouse, if filing) First Name | | Middle Name | Last Name |

United States Bankruptcy Court for the: CENTRAL _____ District of CA _____
                                                                    (State)

Case number _____
(If known)

☐ Check if this is an
     amended filing

## Official Form 108

# Statement of Intention for Individuals Filing Under Chapter 7    12/15

If you are an individual under chapter 7, you must fill out this form if:

- creditors have claims secured by your property, or
- you have leased personal property and the lease has not expired.

You must file this form with the court within 30 days after you file your bankruptcy petition or by the date set for the meeting of creditors, whichever is earlier, unless the court extends the time for cause. You must also send copies to the creditors and lessors you list on the form.

If two married people are filing together in a joint case, both are equally responsible for supplying correct information. Both debtors must sign and date the form.

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known).

| Part 1: | List Your Creditors Who Have Secured Claims |
| --- | --- |

1. For any creditors that you listed in Part 1 of *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D), fill in the information below.

| Identify the creditor and the property that is collateral | What do you intend to do with the property that secures a debt? | Did you claim the property as exempt on Schedule C? |
| --- | --- | --- |
| Creditor's name: US Bank<br><br>Description of property securing debt: 3464 N. Arrowhead Avenue San Bernardino, CA 92405 | ☐ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement.*<br>☒ Retain the property and [explain]: _____ Residence | ☐ No<br>☒ Yes |
| Creditor's name:<br><br>Description of property securing debt: | ☐ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement.*<br>☐ Retain the property and [explain]: _____ | ☐ No<br>☐ Yes |
| Creditor's name:<br><br>Description of property securing debt: | ☐ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement.*<br>☐ Retain the property and [explain]: _____ | ☐ No<br>☐ Yes |
| Creditor's name:<br><br>Description of property securing debt: | ☐ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement.*<br>☐ Retain the property and [explain]: _____ | ☐ No<br>☐ Yes |

| Debtor 1 | JOHN E. TACKETT | | Case number *(if known)* |
| | First Name    Middle Name    Last Name | | |

---

| **Part 2:** | **List Your Unexpired Personal Property Leases** |
|---|---|

For any unexpired personal property lease that you listed in *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 106G),
fill in the information below. Do not list real estate leases. *Unexpired leases* are leases that are still in effect; the lease period has not yet
ended. You may assume an unexpired personal property lease if the trustee does not assume it. 11 U.S.C. § 365(p)(2).

| Describe your unexpired personal property leases | Will the lease be assumed? |
|---|---|
| Lessor's name: _____<br><br>Description of leased property: _____ | ☐ No<br>☐ Yes |
| Lessor's name: _____<br><br>Description of leased property: _____ | ☐ No<br>☐ Yes |
| Lessor's name: _____<br>Description of leased property: _____ | ☐ No<br>☐ Yes |
| Lessor's name: _____<br><br>Description of leased property: _____ | ☐ No<br>☐ Yes |
| Lessor's name: _____<br>Description of leased property: _____ | ☐ No<br>☐ Yes |
| Lessor's name: _____<br><br>Description of leased property: _____ | ☐ No<br>☐ Yes |
| Lessor's name: _____<br><br>Description of leased property: _____ | ☐ No<br>☐ Yes |

---

| **Part 3:** | **Sign Below** |
|---|---|

Under penalty of perjury, I declare that I have indicated my intention about any property of my estate that secures a debt and any
personal property that is subject to an unexpired lease.

✗ *John E. Tackett*                          ✗ *Ellen O. Tackett*
Signature of Debtor 1                        Signature of Debtor 2
JOHN E. TACKETT                              ELLEN O. TACKETT

Date 06/27/2016                              Date 06/27/2016
      MM / DD / YYYY                                MM / DD / YYYY

---

                                    EXHIBIT "3"

February 2006                                                    2006 USBC Central District of California

| UNITED STATES BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA | |
|---|---|
| In re JOHN E. TACKETT<br>aka: John Edward Tackett, John Edward Tackett,<br>Jr. and ELLEN O.TACKETT                    Debtor(s). | CHAPTER: 7<br><br>CASE NO.: |

# DEBTOR'S CERTIFICATION OF EMPLOYMENT INCOME
## PURSUANT TO 11 U.S.C. § 521(a)(1)(B)(iv)

Please fill out the following blank(s) and check the box next to <u>one</u> of the following statements:

I, <u>JOHN E. TACKETT</u>, the debtor in this case, declare under penalty
     *(Print Name of Debtor)*

of perjury under the laws of the United States of America that:

☐ I have attached to this certificate copies of my pay stubs, pay advices and/or other proof of employment income for the
60-day period prior to the date of the filing of my bankruptcy petition.
*(NOTE: the filer is responsible for blacking out the Social Security number on pay stubs prior to filing them.)*

☐ I was self-employed for the entire 60-day period prior to the date of the filing of my bankruptcy petition, and received
no payment from any other employer.

☒ I was unemployed for the entire 60-day period prior to the date of the filing of my bankruptcy petition.

I, <u>ELLEN O. TACKETT</u>, the debtor in this case, declare under penalty of
     *(Print Name of Joint Debtor, if any)*

perjury under the laws of the United States of America that:

☐ I have attached to this certificate copies of my pay stubs, pay advices and/or other proof of employment income for
the 60-day period prior to the date of the filing of my bankruptcy petition.
*(NOTE: the filer is responsible for blacking out the Social Security number on pay stubs prior to filing them.)*

☐ I was self-employed for the entire 60-day period prior to the date of the filing of my bankruptcy petition, and received
no payment from any other employer.

☒ I was unemployed for the entire 60-day period prior to the date of the filing of my bankruptcy petition.

Date _6/24/16_           Signature _John E. Tackett_
                                  *Debtor*
                                JOHN E. TACKETT

Date _2/27/14_           Signature _Ellen Tackett_
                                *Joint Debtor (if any)*
                                ELLEN O. TACKETT

CCD-521

EXHIBIT "3"

B 203
(12/94)

# United States Bankruptcy Court

_____ CENTRAL _____    District Of   CALIFORNIA _____

**In re** JOHN E. TACKETT
aka: John Edward Tackett, John Edward
Tackett, Jr. and ELLEN O.TACKETT
aka: Ellen O. Cashman, Ellen Jane Oakleaf
**Debtor**

Case No. _____

Chapter   7 _____

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR

1.    Pursuant to 11 U.S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above-named debtor(s)
      and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me,
      for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy
      case is as follows:

      For legal services, I have agreed to accept . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____ 2,135 __

      Prior to the filing of this statement I have received . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____ 2,135 __

      Balance Due . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____

2.    The source of the compensation paid to me was:

      [X] Debtor            [ ] Other (specify)

3.    The source of compensation to be paid to me is:

      [ ] Debtor            [ ] Other (specify)

4.    [X]    I have not agreed to share the above-disclosed compensation with any other person unless they are members and
             associates of my law firm.

      [ ]    I have agreed to share the above-disclosed compensation with a other person or persons who are not members or
             associates of my law firm.  A copy of the agreement, together with a list of the names of the people sharing in the
             compensation, is attached.

5.    In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

      a.    Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a
            petition in bankruptcy;

      b.    Preparation and filing of any petition, schedules, statements of affairs and plan which may be required;

      c.    Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings
            thereof;

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR (Continued)

    d.   Representation of the debtor in adversary proceedings and other contested bankruptcy matters;

    e.   [Other provisions as needed]

6.    By agreement with the debtor(s), the above-disclosed fee does not include the following services:

---

### CERTIFICATION

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceedings.

06/27/2016
_____
Date

_____
Signature of Attorney
STEFAN R. PANCER

LAW OFFICES, STEFAN R. PANCER, PC
_____
Name of law firm

EXHIBIT "3"

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| STEFAN R. PANCER<br>LAW OFFICES, STEFAN R. PANCER, PC<br>700 E. REDLANDS BLVD., STE. U-299<br>REDLANDS, CA 92373<br><br>909-793-0370<br>866-532-3988<br>77687<br><br>*Attorney for:* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA -**

| In re:  JOHN E. TACKETT<br>aka: John Edward Tackett, John Edward Tackett, Jr. and ELLEN O.TACKETT<br>aka: Ellen O. Cashman, Ellen Jane Oakleaf | CASE NO.:<br>CHAPTER:  7 |
|---|---|
| | **DECLARATION RE: LIMITED SCOPE OF APPEARANCE PURSUANT TO LBR 2090-1** |
| Debtor(s). | [No Hearing Required] |

TO THE COURT, THE DEBTOR, THE TRUSTEE (if any), AND THE UNITED STATES TRUSTEE:

1. I am the attorney for the Debtor in the above-captioned bankruptcy case.

2. On *(specify date)* <u>05/21/16</u> , I agreed with the Debtor that for a fee of $ <u>2,135</u> , I would provide the following services only:

   a. [X] Prepare and file the Petition and Schedules

   b. [X] Represent the Debtor at the 341(a) Meeting

   c. [ ] Represent the Debtor in any relief from stay actions

   d. [ ] Represent the Debtor in any proceeding involving an objection to Debtor's discharge pursuant to 11 U.S.C. § 727

   e. [ ] Represent the Debtor in any proceeding to determine whether a specific debt is nondischargeable under 11 U.S.C. § 523

   f. [ ] Other *(specify)*:

---

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                    Page 1                    **F 2090-1.1.DEC.LTD.SCOPE**
                                                                         F209011

3.   I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this
declaration was executed on the following date at the city set forth in the upper left-hand corner of the prior page.

Date: 06/27/2016

I HEREBY APPROVE THE ABOVE:

_____
Signature of Debtor   JOHN E. TACKETT

_____
Signature of Joint Debtor
ELLEN O. TACKETT

LAW OFFICES, STEFAN R. PANCER, PC
Printed name of law firm

_____
Signature of attorney

STEFAN R. PANCER
Printed name of attorney

---

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                               Page 2                          F 2090-1.1.DEC.LTD.SCOPE

EXHIBIT "3"

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

A true and correct copy of the foregoing document entitled: **DECLARATION RE: LIMITED SCOPE OF APPEARANCE PURSUANT TO LBR 2090-1** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) _____ , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

2.  **SERVED BY UNITED STATES MAIL**:
On (date) _____ , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

3.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) _____ , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| _____ | _____ | _____ |
| Date | Printed Name | Signature |

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012

F 2090-1.1.DEC.LTD.SCOPE

<table>
<tr><td colspan="2">

**Fill in this information to identify your case:**

</td><td colspan="2">

**Check one box only as directed in this form and in Form 122A-1Supp:**

</td></tr>
</table>

| | |
|---|---|
| Debtor 1 | JOHN     E.     TACKETT |
| | First Name    Middle Name    Last Name |
| Debtor 2 | ELLEN     O.     TACKETT |
| (Spouse, if filing) | First Name    Middle Name    Last Name |

United States Bankruptcy Court for the: CENTRAL     District of CA
                                              (State)

Case number
(If known) _____

[X] 1. There is no presumption of abuse.

[ ] 2. The calculation to determine if a presumption of abuse applies will be made under *Chapter 7 Means Test Calculation* (Official Form 122A–2).

[ ] 3. The Means Test does not apply now because of qualified military service but it could apply later.

[ ] Check if this is an amended filing

## Official Form 122A—1

# Chapter 7 Statement of Your Current Monthly Income        12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for being accurate. If more space is needed, attach a separate sheet to this form. Include the line number to which the additional information applies. On the top of any additional pages, write your name and case number (if known). If you believe that you are exempted from a presumption of abuse because you do not have primarily consumer debts or because of qualifying military service, complete and file *Statement of Exemption from Presumption of Abuse Under § 707(b)(2)* (Official Form 122A-1Supp) with this form.

| **Part 1:** | Calculate Your Current Monthly Income |
|---|---|

**1. What is your marital and filing status?** Check one only.

[ ] **Not married.** Fill out Column A, lines 2-11.

[X] **Married and your spouse is filing with you.** Fill out both Columns A and B, lines 2-11.

[ ] **Married and your spouse is NOT filing with you.** You and your spouse are:

    [X] **Living in the same household and are not legally separated.** Fill out both Columns A and B, lines 2-11.

    [ ] **Living separately or are legally separated.** Fill out Column A, lines 2-11; do not fill out Column B. By checking this box, you declare under penalty of perjury that you and your spouse are legally separated under nonbankruptcy law that applies or that you and your spouse are living apart for reasons that do not include evading the Means Test requirements. 11 U.S.C. § 707(b)(7)(B).

**Fill in the average monthly income that you received from all sources, derived during the 6 full months before you file this bankruptcy case.** 11 U.S.C. § 101(10A). For example, if you are filing on September 15, the 6-month period would be March 1 through August 31. If the amount of your monthly income varied during the 6 months, add the income for all 6 months and divide the total by 6. Fill in the result. Do not include any income amount more than once. For example, if both spouses own the same rental property, put the income from that property in one column only. If you have nothing to report for any line, write $0 in the space.

| | Column A Debtor 1 | Column B Debtor 2 or non-filing spouse |
|---|---|---|
| **2. Your gross wages, salary, tips, bonuses, overtime, and commissions** (before all payroll deductions). | $ _____ | $ _____ |
| **3. Alimony and maintenance payments.** Do not include payments from a spouse if Column B is filled in. | $ _____ | $ _____ |
| **4. All amounts from any source which are regularly paid for household expenses of you or your dependents, including child support.** Include regular contributions from an unmarried partner, members of your household, your dependents, parents, and roommates. Include regular contributions from a spouse only if Column B is not filled in. Do not include payments you listed on line 3. | $ _____ | $ _____ |

**5. Net income from operating a business, profession, or farm**

| | Debtor 1 | Debtor 2 | | |
|---|---|---|---|---|
| Gross receipts (before all deductions) | $ _____ | $ _____ | | |
| Ordinary and necessary operating expenses | – $ _____ | – $ _____ | | |
| Net monthly income from a business, profession, or farm | $ _____ | $ _____ | Copy here ➡ | $ _____     $ _____ |

**6. Net income from rental and other real property**

| | Debtor 1 | Debtor 2 | | |
|---|---|---|---|---|
| Gross receipts (before all deductions) | $ _____ | $ _____ | | |
| Ordinary and necessary operating expenses | – $ _____ | – $ _____ | | |
| Net monthly income from rental or other real property | $ _____ | $ _____ | Copy here ➡ | $ _____     $ _____ |

**7. Interest, dividends, and royalties**

EXHIBIT "3"

Debtor 1    JOHN      E.     TACKETT                    Case number (if known)_____
         First Name    Middle Name    Last Name

|  | Column A Debtor 1 | Column B Debtor 2 or non-filing spouse |
|---|---|---|

8. **Unemployment compensation**                                              $_____    $_____
   Do not enter the amount if you contend that the amount received was a benefit
   under the Social Security Act. Instead, list it here:............................↓
      For you ........................................................... $_____ 896
      For your spouse................................................. $_____ 452

9. **Pension or retirement income.** Do not include any amount received that was a     $_____    $_____
   benefit under the Social Security Act.

10. **Income from all other sources not listed above.** Specify the source and amount.
    Do not include any benefits received under the Social Security Act or payments received
    as a victim of a war crime, a crime against humanity, or international or domestic
    terrorism. If necessary, list other sources on a separate page and put the total below.

    Disability Income_____                 $____ 997      $_____
    _____                 $_____    $_____
    Total amounts from separate pages, if any.        +$____ 997     +$_____

11. **Calculate your total current monthly income.** Add lines 2 through 10 for each     $ 1,994  +  $_____  =  $1,994
    column. Then add the total for Column A to the total for Column B.                                                    Total current
                                                                                                                         monthly income

---

**Part 2:    Determine Whether the Means Test Applies to You**

12. **Calculate your current monthly income for the year.** Follow these steps:

    12a.   Copy your total current monthly income from line 11 ................................Copy line 11 here ➡    $ 1,994

           Multiply by 12 (the number of months in a year).                                                          x 12

    12b.   The result is your annual income for this part of the form.                                      12b.     $ 23,928

13. **Calculate the median family income that applies to you.** Follow these steps:

    Fill in the state in which you live.                    California

    Fill in the number of people in your household.         2

    Fill in the median family income for your state and size of household. .........................................13.    $ 66,537
    To find a list of applicable median income amounts, go online using the link specified in the separate
    instructions for this form. This list may also be available at the bankruptcy clerk's office.

14. **How do the lines compare?**

    14a. ☐  Line 12b is less than or equal to line 13. On the top of page 1, check box 1, *There is no presumption of abuse.*
            Go to Part 3.

    14b. ☐  Line 12b is more than line 13. On the top of page 1, check box 2, *The presumption of abuse is determined by Form 122A-2.*
            Go to Part 3 and fill out Form 122A-2.

---

**Part 3:    Sign Below**

By signing here, I declare under penalty of perjury that the information on this statement and in any attachments is true and correct.

X _John E. Tackett_____          X _Ellen O. Tackett_____
  Signature of Debtor 1                        Signature of Debtor 2

  JOHN E. TACKETT                              ELLEN O. TACKETT
  Date 06/27/2016                              Date 06/27/2016
     MM / DD  / YYYY                              MM / DD  / YYYY

If you checked line 14a, do NOT fill out or file Form 122A-2.

If you checked line 14b, fill out Form 122A-2 and file it with this form.

Official Form 122A-1              Chapter 7 Statement of Your Current Monthly Income              page 2
                                            EXHIBIT "3"

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| STEFAN R. PANCER<br>LAW OFFICES, STEFAN R. PANCER, PC<br>700 E. REDLANDS BLVD., STE. U-299<br>REDLANDS, CA 92373<br><br>909-793-0370<br>866-532-3988<br>77687<br><br>☐ Debtor(s) appearing without attorney<br>☐ Attorney for Debtor | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA -**

| In re: **JOHN E. TACKETT**<br>aka: John Edward Tackett, John Edward Tackett, Jr. and **ELLEN O. TACKETT**<br>aka: Ellen O. Cashman, Ellen Jane Oakleaf<br><br><br><br>Debtor(s). | CASE NO.:<br>CHAPTER:<br><br>**VERIFICATION OF MASTER MAILING LIST OF CREDITORS**<br>**[LBR 1007-1(a)]** |
|---|---|

Pursuant to LBR 1007-1(a), the Debtor, or the Debtor's attorney if applicable, certifies under penalty of perjury that the master mailing list of creditors filed in this bankruptcy case, consisting of __2__ sheet(s) is complete, correct, and consistent with the Debtor's schedules and I/we assume all responsibility for errors and omissions.

Date: 06/27/2016 _____

Date: 06/27/2016 _____

Date: 06/27/2016 _____

_John E. Tackett_ (signature)
Signature of Debtor 1
JOHN E. TACKETT

_Ellen O. Tackett_ (signature)
Signature of Debtor 2 (joint debtor) (if applicable)
ELLEN O. TACKETT

_(signature)_
Signature of Attorney for Debtor (if applicable)
STEFAN R. PANCER

---

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California

*December 2015*                                                    **F 1007-1.MAILING.LIST.VERIFICATION**

Matrix

Stefan R. Pancer
700 E. Redlands Blvd., Ste. U-299
Redlands, CA 92373


John Tackett
3464 N. Arrowhead Avenue
San Bernardino, CA 92405


Ellen O. Tackett
3464 N. Arrowhead Avenue
San Bernardino, CA 92405


Amex-US Bank
PO Box 108
St. Louis, MD 63166


Bank of America
PO Box 15019
Wilmington, DE 19886-5019


Best Buys-CBNA
PO Box 6497
Sioux Falls, SD 57117


Chase Bank
PO Box 15123
Wilmington, DE 19850-5123


Chase Bank
PO Box 15123
Wilmington, DE 19850-5123


Chase Bank
PO Box 15123
Wilmington, DE 19850-5123


Citi Cards
PO Box 78045
Phoenix, AZ 85062-8045


Citi Cards
PO Box 78045
Phoenix, AZ 85062-8045


Citi Cards
PO Box 78045
Phoenix, AZ 85062-8045


Citi Cards-CBNA
PO Box 6241
Sioux Falls, SD 57117

Page 1

EXHIBIT "3"

Matrix

Discover
PO Box 29033
Phoenix, AZ 85038-9033

Firestone-CFNA
PO Box 81315
Cleveland, OH 44181-0315

Lincoln Automotive Financial Services
PO Box 552679
Detroit, MIk 48255-2679

Ward & Ward
c/o Daniel and Melissa Lilla
685 E. Carnegie Drive, Ste. 140
San Bernardino, CA 92408

TJX Rewards-SYNCB
PO Box 530949
Atlanta, GA 30353-0949

US Bank Home Mortgage
PO Box 790415
St. Louis, MO 63179-0415

EXHIBIT "3"

# EXHIBIT 4

# EXHIBIT 4

# GOE & FORSYTHE, LLP

Robert P. Goe
California State Bar No. 137019

18101 Von Karman Avenue, Suite 1200
Irvine, CA 92612
(949) 798-2460

Direct Dial (949) 798-2461
Facsimile (949) 955-9437
rgoe@goeforlaw.com

February 13, 2017

**Via U.S. Mail and Email:  slee@cfoconsulting.net**
Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

**In Re:**        **John E. Tackett and Ellen O. Tackett**
          **U.S.B.C. Case Number 6:16-bk-15813-MH**

To Whom It May Concern:

As you are aware, this firm represents Steven Speier ("Trustee"), the chapter 7 trustee for the bankruptcy estate of John E. Tackett and Ellen O. Tackett (the "Debtors").  A copy of the Notice of Bankruptcy is attached hereto as **Exhibit "1"**.  We are advised that the Debtors maintain an account with Provident Trust Group, Account No. ES12060005, which holds interests in several insurance policies managed by the Conestoga Trust.  A copy of the applicable Policy Selection Sheet is attached hereto as **Exhibit "2"**.  A copy of an Account Statement, dated January 1, 2015 through December 31, 2015, is attached hereto as **Exhibit "3"**.  The Debtors' interests in said account and insurance policies are property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a) and the Trustee is charged with administering these assets for the benefit of the Debtors' creditors.  Per a demand by the Trustee, the Provident Trust Group has frozen the aforementioned account.  A copy of an email from the Provident Trust Group confirming that the account has been frozen is attached hereto as **Exhibit "4"**.

We are in receipt of a statement from the Conestoga Trust stating that an annual premium payment in the amount of $3,397.47 for Policy No. TC042210 is due by February 20, 2017.  A copy of the said statement is attached hereto for your reference as **Exhibit "5"**.  The statement provides that if the premium is not paid by that date, then "Conestoga will make such payment and Conestoga will assume your interest in this policy."

Please be advised that any attempts to collect a debt against property of the estate is automatically stayed pursuant to 11 U.S.C. § 362(a)(2).  Willful violations of the automatic stay are punishable pursuant to 11 U.S.C. § 362(k), which awards actual and punitive damages for stay violations.

Conestoga Trust
Page 2
February 13, 2017

Accordingly, please be advised that all collection actions against the aforementioned policies are automatically stayed and that any attempt to assume the policies will violate the automatic stay.  The Trustee intends to vigorously prosecute any violations of the automatic stay.

In the meantime, the Trustee intends to liquidate the Debtors' interests in the aforementioned policies.  If the Conestoga Trust is interested in purchasing said interests, please propose sale terms for each policy.  If not, the Trustee will begin marketing the policies for sale to third-parties, which will take considerably more time and only further delay any additional premium payments owed to the Conestoga Trust. Accordingly, the Trustee believes that a sale of such policies to Conestoga Trust is in the best interests of all parties involved.

Please contact me immediately to confirm receipt of this letter by telephone (949-798-2460) or email (rgoe@goeforlaw.com).  Thank you for your consideration and prompt response.

Should you have any questions or concerns about the foregoing, please do not hesitate to contact our office.

.

Very truly yours,
GOE & FORSYTHE, LLP

By:_____
        Robert P. Goe

RPG/dwr

Enclosures

cc:    Steven M. Speier, Trustee
       Stefan Pancer, Counsel for John and Ellen Tackett

EXHIBIT "4"

# EXHIBIT 1

# EXHIBIT 1

## Information to identify the case:

| | | |
|---|---|---|
| Debtor 1 | **John E. Tackett** | |
| | First Name  Middle Name  Last Name | |
| Debtor 2 | **Ellen O. Tackett** | |
| (Spouse, if filing) | First Name  Middle Name  Last Name | |

Social Security number or ITIN   **xxx–xx–8280**

EIN   _ _ – _ _ _ _ _ _ _

Social Security number or ITIN   **xxx–xx–1748**

EIN   _ _ – _ _ _ _ _ _ _

United States Bankruptcy Court   **Central District of California**

Case number:   **6:16–bk–15813–MH**

Date case filed for chapter **7**   **6/29/16**

## Official Form 309A (For Individuals or Joint Debtors)
# Notice of Chapter 7 Bankruptcy Case –– No Proof of Claim Deadline     12/15

**For the debtors listed above, a case has been filed under chapter 7 of the Bankruptcy Code. An order for relief has been entered.**

**This notice has important information about the case for creditors, debtors, and trustees, including information about the meeting of creditors and deadlines. Read all pages carefully.**

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtors or the debtors' property. For example, while the stay is in effect, creditors cannot sue, garnish wages, assert a deficiency, repossess property, or otherwise try to collect from the debtors. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although debtors can ask the court to extend or impose a stay.

The debtors are seeking a discharge. Creditors who assert that the debtors are not entitled to a discharge of any debts or who want to have a particular debt excepted from discharge may be required to file a complaint in the bankruptcy clerk's office within the deadlines specified in this notice. (See line 9 for more information.)

To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at  www.pacer.gov).

**The staff of the bankruptcy clerk's office cannot give legal advice.**

**To help creditors correctly identify debtors, debtors submit full Social Security or Individual Taxpayer Identification Numbers, which may appear on a version of this notice. However, the full numbers must not appear on any document filed with the court.**

**Do not file this notice with any proof of claim or other filing in the case. Do not include more than the last four digits of a Social Security or Individual Taxpayer Identification Number in any document, including attachments, that you file with the court.**

| | | About Debtor 1: | About Debtor 2: |
|---|---|---|---|
| 1. | **Debtor's full name** | John E. Tackett | Ellen O. Tackett |
| 2. | **All other names used in the last 8 years** | aka John Edward Tackett, aka John Edward Tackett Jr. | aka Ellen O. Cashman, aka Ellen Jane Oakleaf |
| 3. | **Address** | 3464 N. Arrowhead Avenue San Bernardino, CA 92405 | 3464 N. Arrowhead Avenue San Bernardino, CA 92405 |
| 4. | **Debtor's attorney** Name and address | Stefan R Pancer Law Offices Stefan Robert Pancer PC 700 E Redlands Blvd Ste U–299 Redlands, CA 92373 | Contact phone 909–793–0370 Email _____ |
| 5. | **Bankruptcy trustee** Name and address | Steven M Speier (TR) Post Office Box 7637 Newport Beach, CA 92658 | Contact phone (949)–336–1895 Email _____ |

For more information, see pages 2 and 3 >

Official Form 309A (For Individuals or Joint Debtors) **Notice of Chapter 7 Bankruptcy Case –– No Proof of Claim Deadline**     page 1

EXHIBIT "4"

Debtor  **John E. Tackett**  and  **Ellen O. Tackett**                                         Case number **6:16-bk-15813-MH**

| | | |
|---|---|---|
| **6. Bankruptcy clerk's office**<br><br>Documents in this case may be filed at this address. You may inspect all records filed in this case at this office or online at www.pacer.gov. | 3420 Twelfth Street,<br>Riverside, CA 92501-3819 | Hours Open:  9:00 AM – 4:00 PM<br><br>Contact phone 855-460-9641<br><br>Dated: 6/29/16 |
| **7. Meeting of creditors**<br><br>Debtors must attend the meeting to be questioned under oath by the trustee and by creditors. In a joint case, both spouses must attend. Creditors may attend, but are not required to do so. | **August 1, 2016 at 10:00 AM**<br><br>The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket.<br><br>The trustee is designated to preside at the meeting of creditors. The case is covered by the chapter 7 blanket bond on file with the court. | Location:<br><br>**3801 University Ave., ROOM 103, Riverside, CA 92501** |
| **8. Presumption of abuse**<br><br>If the presumption of abuse arises, you may have the right to file a motion to dismiss the case under 11 U.S.C. § 707(b). Debtors may rebut the presumption by showing special circumstances. | The presumption of abuse does not arise. | |
| **9. Deadlines**<br><br>The bankruptcy clerk's office must receive these documents and any required filing fee by the following deadlines. | **File by the deadline to object to discharge or to challenge whether certain debts are dischargeable:**<br><br>**You must file a complaint:**<br>• if you assert that the debtor is not entitled to receive a discharge of any debts under any of the subdivisions of 11 U.S.C. § 727(a)(2) through (7), or<br><br>• if you want to have a debt excepted from discharge under 11 U.S.C § 523(a)(2), (4), or (6).<br><br>**You must file a motion:**<br>• if you assert that the discharge should be denied under § 727(a)(8) or (9). | **Filing deadline: 9/30/16** |
| | **Deadline to object to exemptions:**<br>The law permits debtors to keep certain property as exempt. If you believe that the law does not authorize an exemption claimed, you may file an objection. | **Filing deadline:** 30 days after the *conclusion* of the meeting of creditors |
| **10. Proof of claim**<br><br>Please do not file a proof of claim unless you receive a notice to do so. | No property appears to be available to pay creditors. Therefore, please do not file a proof of claim now. If it later appears that assets are available to pay creditors, the clerk will send you another notice telling you that you may file a proof of claim and stating the deadline. | |
| **11. Creditors with a foreign address** | If you are a creditor receiving a notice mailed to a foreign address, you may file a motion asking the court to extend the deadlines in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case. | |
| **12. Exempt property** | The law allows debtors to keep certain property as exempt. Fully exempt property will not be sold and distributed to creditors. Debtors must file a list of property claimed as exempt. You may inspect that list at the bankruptcy clerk's office or online at www.pacer.gov. If you believe that the law does not authorize an exemption that the debtors claim, you may file an objection. The bankruptcy clerk's office must receive the objection by the deadline to object to exemptions in line 9. | |

**For more information, see pages 1 and 3 >**

Official Form 309A (For Individuals or Joint Debtors) **Notice of Chapter 7 Bankruptcy Case –– No Proof of Claim Deadline**                  page 2

EXHIBIT "4"

Debtor  **John E. Tackett**  and  **Ellen O. Tackett**                                  Case number **6:16-bk-15813-MH**

| | |
|---|---|
| **13. Proof of Debtor Identification (ID) and Proof of Social Security Number(SSN)** | The U.S. Trustee requires that individual debtors must provide to the trustee at the meeting of creditors an original picture ID and proof of SSN. Failure to do so may result in the U.S. Trustee bringing a motion to dismiss the case. Permissible forms of ID include a valid state driver's license, government or state-issued picture ID, student ID, military ID, U.S. Passport or legal resident alien card. Proof of SSN includes Social Security Card, current W-2 form, pay stub, payment advice, IRS Form 1099, Social Security Administration Report, or other official document which indicates name and SSN. |
| **14. Failure to File a Statement and/or Schedule(s)** | **IF THE DEBTOR HAS NOT FILED A STATEMENT AND/OR SCHEDULE(S) AND/OR OTHER REQUIRED DOCUMENTS,** the debtor must do so, or obtain an extension of time to do so, within 14 days of the petition filing date. Failure to comply with this requirement, or failure to appear at the initial section 341(a) meeting of creditors and any continuance, may result in dismissal of the case, unless leave of court is first obtained. If the debtor's case has not already been dismissed, AND DEBTOR FAILS TO DO ONE OF THE FOLLOWING WITHIN 45 DAYS AFTER THE PETITION DATE, subject to the provisions of Bankruptcy Code section 521(i)(4), the court WILL dismiss the case effective on the 46th day after the petition date without further notice: (1) file all documents required by Bankruptcy Code section 521(a)(1); or (2) file and serve a motion for an order extending the time to file the documents required by this section.<br><br>**SI EL DEUDOR NO HA PRESENTADO UNA DECLARACIÓN Y/O LISTA(S) DE ACREEDORES Y/U OTROS DOCUMENTOS REQUERIDOS,** tendrá que hacerlo dentro de un plazo de 14 días a partir de la fecha de presentación de la petición o tendrá que obtener una extensión del plazo para hacerlo. Si no cumple usted este requisito, o si no comparece a la junta 341(a) inicial de acreedores o a cualquier aplazamiento, esto resultará en que se declare sin lugar el caso, a menos de que obtenga un permiso del tribunal. Si no se ha declarado sin lugar el caso del acreedor, Y EL ACREEDOR NO HACE UNA DE LAS SIGUIENTES COSAS DENTRO DE UN PLAZO DE 45 DÍAS A PARTIR DE LA FECHA DE LA PETICIÓN, de acuerdo con lo dispuesto en la sección 521(i)(4) del Código de Quiebras, el juez DECLARARÁ el caso sin lugar a partir de la 46o día después de la fecha de presentación de petición sin más notificación: (1) registrar en actas todos los documentos que requiere la sección 521(a)(1) del Código de Quiebras; o (2) registrar y hacer entrega formal de una moción para pedir una orden que extienda el tiempo en que se pueden registrar en actas los documentos que requiere dicha sección. |
| **15. Bankruptcy Fraud and Abuse** | Any questions or information relating to bankruptcy fraud or abuse should be addressed to the Fraud Complaint Coordinator, Office of the United States Trustee, 3801 University Avenue Suite 720, Riverside, CA 92501-3200. |

**For more information, see pages 1 and 2 >**

EXHIBIT "4"

# EXHIBIT 2

# EXHIBIT 2

## CONESTOGA SETTLEMENT SERVICES, LLC

## POLICY SELECTION SHEET

**EXHIBIT A**

PARTICIPANT
NAME: Ellen O. Tackett                                    DATE: August 15, 2012

JOINT PARTICIP.
NAME: John E. Tackett                                     DATE: August 15, 2012

Participant(s) desires to purchase and become fractional owner(s) of certain life insurance policies' proceeds and elect to participate using $220,000.00 US Dollars for the policies and amounts selected below.

| Policy Code | Insurance Companies | Face Amount | Current Insured Age * & Gender | Original LE In months | Original Premium Reserve (In months) | Client Funds Placed | Expected Payout At Maturity | Estimated Annual Premium | Funds Designated For Premiums | Estimated Age When Premium Calls Begin | Age When Policy Purchase By Conestoga |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. TC042210JH | John Hancock | $10,000,000 | 81 M | 39 | 75 | $35,000 | $50,925 | $2,452 | $15,326 | 86 | 80 |
| 2. SR053110AE | AXA Equitable | $10,000,000 | 80 M | 40.5 | 76.5 | $35,000 | $51,538 | $1,507 | $9,605 | 84 | 78 |
| 3. BH051510JH | John Hancock | $7,000,000 | 79 M | 50.5 | 80.5 | $25,000 | $39,729 | $1,341 | $8,997 | 84 | 78 |
| 4. CP042210AE | AXA 6036 | $5,000,000 | 82 F | 50.5 | 86.5 | $25,000 | $39,729 | $1,060 | $7,640 | 88 | 81 |
| 5. CP051910AE | AXA 7278 | $5,000,000 | 82 F | 50.5 | 86.5 | $25,000 | $39,729 | $1,076 | $7,758 | 88 | 81 |
| 6. WM051510ING | ING | $5,000,000 | 81 F | 54 | 84 | $25,000 | $40,750 | $1,173 | $8,212 | 86 | 79 |
| 7. PE042210PF | Principal | $5,000,000 | 79 M | 55.5 | 85.5 | $25,000 | $41,188 | $700 | $4,989 | 85 | 78 |
| 8. ZJ042210LN | Lincoln National | $5,000,000 | 77 M | 55.5 | 85.5 | $25,000 | $41,188 | $710 | $6,059 | 82 | 74 |
| 9. MP0812CL | Columbus Life | $2,400,000 | 82 F | 44 | 80 | $0 | $0 | $0 | $0 | 89 | 82 |
| **$54,400,000** | | | | | | **$220,000** | **$344,775** | | **$67,586** | | |

\* As of 03/2012

CONESTOGA SETTLEMENT SERVICES, LLC has executed Policy Purchase Agreements for policies in this portfolio. However, the seller can withdraw policies until the insurance carriers complete the ownership change in their official company records. The policies above may no longer be available by the time your funds can be placed into the policies above. If any of the policies selected are withdrawn or are filled, they will be replaced with policies of comparable value and life expectancy.

_____ I elect to place my total participation in EQUAL PORTIONS among all policies available.
initial        ($5,000 MINIMUM PER POLICY SELECTED)

_____ I elect to place my total purchase in SELECTED AMOUNTS per the Exhibit A selections
initial        above, or in policies of comparable value ($5,000 MINIMUM PER POLICY SELECTED)

Participant Signature: (SIGN HERE) _____

Joint Participant
Signature: (SIGN HERE) _____

Page 1 of 1

EXHIBIT "4"

CONESTOGA SETTLEMENT SERVICES, LLC                    POLICY SELECTION SHEET

**EXHIBIT A**

PARTICIPANT NAME: Ellen O. Tackett                     DATE: May 31, 2012

JOINT PARTICIP. NAME: John E. Tackett                  DATE: May 31, 2012

Participant(s) desires to purchase and become fractional owner(s) of certain life insurance policies' proceeds and elect to participate using $30,000.00 US Dollars for the policies and amounts selected below.

| Policy Code | Face Amount | Insurance Companies | Current Insured Age* & Gender | Original LE In months | Original Premium Reserve (In months) | Client Funds Placed | Expected Payout At Maturity | Estimated Annual Premium | Funds Designated For Premiums | Estimated Age When Premium Calls Begin | Age When Policy Purchase By Conestoga |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. TO042210JH | $10,000,000 | John Hancock | 81 M | 39 | 75 | $7,500 | $10,913 | $525 | $3,284 | 86 | 80 |
| 2. SR053110AE | $10,000,000 | AXA Equitable | 80 M | 40.5 | 76.5 | $7,500 | $11,044 | $323 | $2,058 | 84 | 78 |
| 3. BH051510JH | $7,000,000 | John Hancock | 79 M | 50.5 | 80.5 | $6,000 | $7,946 | $288 | $1,799 | 84 | 78 |
| 4. CP042210AE | $5,000,000 | AXA 6036 | 82 F | 50.5 | 86.5 | $5,000 | $7,846 | $212 | $1,528 | 88 | 81 |
| 5. CP051910AE | $5,000,000 | AXA 7278 | 82 F | 50.5 | 86.5 | $5,000 | $7,846 | $215 | $1,552 | 88 | 81 |
| 6. WM051510ING | $5,000,000 | ING | 81 F | 54 | 84 | | $0 | $0 | $0 | 86 | 79 |
| 7. PE042210PF | $5,000,000 | Principal | 79 M | 55.5 | 85.5 | | $0 | $0 | $0 | 85 | 78 |
| 8. ZJ042210LN | $5,000,000 | Lincoln National | 77 M | 55.5 | 85.5 | | $0 | $0 | $0 | 82 | 74 |
| 9. MP0812CL | $2,400,000 | Columbus Life | 82 F | 44 | 80 | | $0 | $0 | $0 | 89 | 82 |
| | $54,400,000 | | | | | $30,000 | $45,794 | | $10,221 | | |

* As of 03/2012

CONESTOGA SETTLEMENT SERVICES, LLC has executed Policy Purchase Agreements for policies in this portfolio. However, the seller can withdraw policies until the insurance carriers complete the ownership change in their official company records. The policies above may no longer be available by the time your funds can be placed into the policies above. If any of the policies selected are withdrawn or are filled, they will be replaced with policies of comparable value and life expectancy.

_____ I elect to place my total participation in EQUAL PORTIONS among all policies available.
initial   ($5,000 MINIMUM PER POLICY SELECTED)

_____ I elect to place my total purchase in SELECTED AMOUNTS per the Exhibit A selections
initial   above, or in policies of comparable value ($5,000 MINIMUM PER POLICY SELECTED)

Participant Signature: (SIGN HERE) _____

Page 1 of 2

EXHIBIT "4"

# EXHIBIT 3

# EXHIBIT 3

**PROVIDENT**
TRUST GROUP

8880 W Sunset Road Ste 250
Las Vegas, NV 89148
Customer Service: 1.888.855.9856

For the Account of:
ELLEN & JOHN TACKETT IND CASH ACCT
Account Number: ES12060005

Date: JANUARY 1, 2015 THROUGH DECEMBER 31, 2015

ELLEN O. AND JOHN E. TACKETT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

EXHIBIT "4"





P PROVIDENT
TRUST GROUP

8880 W Sunset Road Ste 250
Las Vegas, NV 89148
Customer Service: 1.888.855.9856

For the Account of:
ELLEN & JOHN TACKETT IND CASH ACCT
Account Number: ES12060005

Date: JANUARY 1, 2015 THROUGH DECEMBER 31, 2015

## Portfolio Review

| Shares | Description | Estimated Unit Price | Cost | Market Value | Total Assets % |
|---|---|---|---|---|---|
| | Cash | | $0.00 | $0.00 | 0.00 |
| | Total Cash | | $0.00 | $0.00 | 0.00 |
| | CASH & EQUIVALENTS | | | | |
| | INTEREST BEARING ACCT.-OWN INS | | | | |
| 0.0800 | CASH IN BANK (CITIZENS) | $1.00 | $0.08 | $0.08 | 0.00 |
| | Total INTEREST BEARING ACCT.-OWN INS | | $0.08 | $0.08 | 0.00 |
| | Total CASH & EQUIVALENTS | | $0.08 | $0.08 | 0.00 |
| | OTHER | | | | |
| | INSURANCE POLICIES | | | | |
| 30,000.0000 | CN AXA EQUITABLE/ 157217278 CP/CP051910 (CN10060002) | $1.00 | $30,000.00 | $30,000.00 | 12.00 |
| 30,000.0000 | CN AXA EQUITABLE/157226036 CP/ CP042210 (CN10050010) | $1.00 | $30,000.00 | $30,000.00 | 12.00 |
| 25,000.0000 | CN ING/1609123 WM/ WM051510LN (CN10050015) | $1.00 | $25,000.00 | $25,000.00 | 10.00 |
| 42,500.0000 | CN JOHN HANCOCK/93681633 TC/ TC042210 (CN10050004) | $1.00 | $42,500.00 | $42,500.00 | 17.00 |
| 30,000.0000 | CN JOHN HANCOCK/93977726 BH/ BH051510 (CN10050007) | $1.00 | $30,000.00 | $30,000.00 | 12.00 |
| 42,500.0000 | CNAXA EQUITABLE/ 157212925 SR/SR053110AE (CN10060005) | $1.00 | $42,500.00 | $42,500.00 | 17.00 |
| 25,000.0000 | CNLINCOLN NATIONAL/JP5557032 ZJ/ZJ042210 (CN10050017) | $1.00 | $25,000.00 | $25,000.00 | 10.00 |
| 25,000.0000 | CNPRINCIPAL FINANCIAL/6095881PE/PE042210 (CN10050014) | $1.00 | $25,000.00 | $25,000.00 | 10.00 |
| | Total INSURANCE POLICIES | | $250,000.00 | $250,000.00 | 100.00 |
| | Total OTHER | | $250,000.00 | $250,000.00 | 100.00 |
| | Total Investments | | $250,000.08 | $250,000.08 | 100.00 |

EXHIBIT "4"

# PROVIDENT
TRUST GROUP

8880 W Sunset Road Ste 250
Las Vegas, NV 89148
Customer Service: 1.888.855.9856

For the Account of:
ELLEN & JOHN TACKETT IND CASH ACCT
Account Number: ES12060005
Date: JANUARY 1, 2015 THROUGH DECEMBER 31, 2015

## Transaction Detail

| Date | Description | Income Cash | Principal Cash | Investment Cost Basis |
|------|-------------|-------------|----------------|------------------------|
| | BEGINNING BALANCES | | | |
| | Net Money Market Buys and Sells | | | |
| | | No Activity for this Statement | | |
| | ENDING BALANCES | | | |

EXHIBIT "4"

8102-01-0005130-0003-0017805

# EXHIBIT 4

# EXHIBIT 4

## Rob Goe

**From:** Provident Trust Group <support@trustprovident.zohosupport.com>
**Sent:** Tuesday, August 23, 2016 3:51 PM
**To:** Rob Goe
**Subject:** Re: [##28270##] John & Ellen Tackett



View Account Online

Mr. Goe,

The account has been frozen.

Thank you,


Venita Salcido

Provident Trust Group


The information contained in this email should be considered confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify us by return email and delete this email from your system. Thank you.



© 2016 Provident Trust Group, LLC

8880 W. Sunset Rd., Suite 250,

Las Vegas, NV 89148


Privacy Policy

1
EXHIBIT "4"

How would you rate our customer service?

☒ Good

☒ Okay

☒ Bad

---- On Tue, 23 Aug 2016 11:20:48 -0800 **rgoe@goeforlaw.com** wrote ----

URGENT:  Please see attached.

- - -

Robert P. Goe, Esq.

GOE & FORSYTHE, LLP
18101 Von Karman Avenue

Suite 1200

Irvine, CA 92612

Phone (949) 798-2460
Fax     (949) 955-9437
rgoe@goeforlaw.com

**PRIVILEGED AND CONFIDENTIAL - ATTORNEY CLIENT COMMUNICATION**
This e-mail is covered by the Electronic Communications Privacy Act (18 U.S.C. 2510-2521) and is legally
privileged. Do NOT Forward This Message.

2

EXHIBIT "4"

This message originates from the law firm of Goe & Forsythe, LLP. The information contained herein is intended for the personal and confidential use of the recipient(s) named above. This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying, or other use of this communication or its attachments is strictly prohibited by law and is subject to criminal and civil penalties. All personal messages express solely the sender's views and not those of Goe & Forsythe, LLP. ANY TAX ADVICE CONTAINED IN THE BODY OF THIS E-MAIL WAS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY THE RECIPIENT FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED UNDER THE INTERNAL REVENUE CODE OR APPLICABLE STATE OR LOCAL TAX LAW PROVISIONS.

Please take into consideration the environment before printing this email...save a Tree.

# EXHIBIT 5

# EXHIBIT 5

# Law Offices
# Stefan Robert Pancer, P.C.

[Mailing Address] 700 E. Redlands Blvd., Suite U-299, Redlands, California 92373 / PH (909) 793-0370 FAX (866) 832-3988
E-Mail: stefan@pancerlaw.com

(By Appointment Only)
2130 N. Arrowhead Ave., Suite 203-C
San Bernardino, California 92405

(By Appointment Only)
1255 W. Colton Avenue
Redlands, California 92374

October 20, 2016

Robert P. Goe
GOE & FORSYTHE, LLP
18101 Von Karman Avenue, Ste.
Irvine, CA 92612

Steven M. Speier
Chapter 7 Trustee
Post Office Box 7637
Newport Beach, CA 92658

Re:                Bankruptcy of John & Ellen Tackett
Case No.:          16-bk-15813

Mr. Goe and Mr. Speier:

Enclosed please find a copy of a statement from Conestoga Trust.  Due to the freeze on
Provident Trust account the payment is now delinquent and could possibly be closed.
We are expressly requesting that you either remove the freeze or issue a payment in the
amount of $2,674.09 to Conestoga Trust to preserve the account.

Should you have any questions, comments, or concerns, please contact our office.

Thank you in advance for your professional courtesy and cooperation in this matter.

Sincerely,
*LAW OFFICES*
*STEFAN ROBERT PANCER, P.C.*

STEFAN R. PANCER, P.C.
Attorney at Law
SRP\ksj
Enclosure

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

January 16, 2017

## Required Premium Payment Due

BILL TO: ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

| Policy ID | Account Name/Type | Percentage owned | Current Premium | Estimated Coverage Period |
|---|---|---|---|---|
| TC042210 | ELLEN & JOHN TACKETT IND. CASH ACCT | 0.63% | $3397.49 | 12/21/2016 – 12/21/2017 |

The monies escrowed for the payment of premiums at the time of the purchase of this policy have been depleted. Pursuant to the provisions of the L i f e I n s u r a n c e Policy Funding Agreement, in order for you to maintain your interest in this policy, you must contribute your pro-rata share of the premium currently due. **PLEASE NOTE: IF YOU DO NOT MAKE THIS PAYMENT BY THE DATE INDICATED HEREIN, CONESTOGA WILL MAKE SUCH PAYMENT AND CONESTOGA WILL ASSUME YOUR INTEREST IN THIS POLICY. IN SUCH CASE, YOU WILL HAVE THIRTY (30) DAYS TO MAKE UP THE REQUIRED PAYMENT TO REDEEM YOUR INTEREST IN THIS POLICY. IF YOU FAIL TO REDEEM YOUR INTEREST IN THIS POLICY WITHIN SUCH THIRTY (30)-DAY PERIOD, YOU WILL LOSE YOUR RIGHT TO PARTICIPATE IN THIS POLICY.**

Please note, this request is made only to protect your interest and will be used to replenish the escrow account from which premiums are paid. No part of this payment is paid to Conestoga as a fee or other type of compensation.

In order to timely pay the premium due, please return the authorization below along with your payment in the enclosed postage-paid return envelope before **February 20, 2017**. Please make your check payable to **Dunham Trust Company FBO Conestoga Trust** and include on the check for reference the **Policy ID** listed in the chart above under Policy ID.

Should you have any questions, please contact Strategix Solutions at 702-852-6690 or Conestoga@cfoconsulting.net

DETACH  —   TO ENSURE PROPER CREDIT, DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT   —  DETACH  —

ELLEN & JOHN TACKETT IND CASH
ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

**Policy ID:** SR053110AE
**Account Number:** ES12060005

TOTAL PREMIUM DUE:  $3397.49 before 02/20/17

By enclosing your check for the above-referenced amount, you hereby authorize Conestoga to pay or cause to be paid premiums to the insurance carrier on your behalf. This amount reflects the payment of your pro-rata share of the premiums due on the above-referenced policy.

MAKE CHECK PAYABLE TO: DUNHAM TRUST COMPANY FBO CONESTOGA TRUST

SEND TO:

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

COPY



EXHIBIT "4"

p.2                    9098831935                    John & Ellen Tackett                    Jan 24 17 11:22a

# EXHIBIT 5

# EXHIBIT 5

**From:**          Rob Goe
**Sent:**          Thursday, February 23, 2017 9:02 AM
**To:**            Thomas Pat Washburn
**Cc:**            Don Reid; Steven Speier; 'lmorvant@glassratner.com'; Kerry Murphy
**Subject:**       RE: Case No. 6:16-bk-15813-MH; John E. Tackett and Ellen O. Tackett

Thomas while we evaluate the proposal please send us all docs concerning the debtors' $250k investment and why it would be reasonable to accept less than half of that.

Also confirm that no action has been taken in violation of the bankruptcy stay to impair Debtors' investment.

Thanks Rob

Robert P. Goe, Esq.


GOE & FORSYTHE, LLP
18101 Von Karman
Suite 1200
Irvine, CA 92612
Phone   (949) 798-2460
Direct   (949) 798-2461
Cell      (949) 283-1501
Fax      (949) 955-9437
rgoe@goeforlaw.com


**From:** Thomas Pat Washburn [mailto:pwashburn@dwlawtx.com]
**Sent:** Monday, February 20, 2017 10:19 AM
**To:** Rob Goe
**Subject:** Case No. 6:16-bk-15813-MH; John E. Tackett and Ellen O. Tackett

Mr. Goe:

Please be advised that this firm represents the Conestoga Trust.  In connection with our representation, we received a copy of your letter dated February 13, 2017 addressed to Conestoga Trust c/o Strategix Solutions, Ltd. regarding the bankruptcy estate of John E. Tackett and Ellen O. Tackett, in Case Number 6:16-bk-15813-MH.  It is our understanding that you represent Steven Speier, the chapter 7 trustee for the estate.

The Conestoga Trust is prepared to make an offer to the debtors' estate to redeem Mr. and Mrs. Tackett's participation interests in the policies held by the Conestoga Trust.
Conestoga would propose paying a total of $100,000 to the debtors' estate, payable with an initial payment of $20,000 upon the execution of a redemption and settlement agreement, and subsequent payments of $10,000 per month on the last day of each month thereafter, until the sum of $100,000 has been paid.

Please let me know if this offer is acceptable, and I will prepare a proposed redemption and settlement agreement for your review.

EXHIBIT "5"

Thomas P. Washburn

D  W   Thomas P. "Pat" Washburn
         Attorney

t. 512.478.5308        De Leon & Washburn, P.C.
f. 512.482.8628        901 South MoPac Expressway
e. pwashburn@dwlawtx.com   Barton Oaks Plaza V, Ste 230
w. www.dwlawtx.com     Austin, Texas 78746

CONFIDENTIALITY NOTICE:  This email and any attachments are for the exclusive and confidential use of the intended recipient.  If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system.  We do not waive attorney-client or work product privilege by the transmission of this message.

**PRIVILEGED AND CONFIDENTIAL - ATTORNEY CLIENT COMMUNICATION**
This e-mail is covered by the Electronic Communications Privacy Act (18 U.S.C. 2510-2521) and is legally privileged. Do NOT Forward This Message.

This message originates from the law firm of Goe & Forsythe, LLP. The information contained herein is intended for the personal and confidential use of the recipient(s) named above. This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying, or other use of this communication or its attachments is strictly prohibited by law and is subject to criminal and civil penalties. All personal messages express solely the sender's views and not those of Goe & Forsythe, LLP.
ANY TAX ADVICE CONTAINED IN THE BODY OF THIS E-MAIL WAS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY THE RECIPIENT FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED UNDER THE INTERNAL REVENUE CODE OR APPLICABLE STATE OR LOCAL TAX LAW PROVISIONS.

Please take into consideration the environment before printing this email…save a Tree.

# EXHIBIT 6

# EXHIBIT 6

| | |
|---|---|
| **From:** | Rob Goe |
| **Sent:** | Monday, July 17, 2017 11:59 AM |
| **To:** | Kerry Murphy |
| **Subject:** | FW: Case No. 6:16-bk-15813-MH; John E. Tackett and Ellen O. Tackett |

Robert P. Goe, Esq.

GOE & FORSYTHE, LLP
18101 Von Karman
Suite 1200
Irvine, CA 92612
Phone    (949) 798-2460
Direct    (949) 798-2461
Cell       (949) 283-1501
Fax        (949) 955-9437
rgoe@goeforlaw.com

---

**From:** Thomas Pat Washburn [mailto:pwashburn@dwlawtx.com]
**Sent:** Monday, July 10, 2017 8:59 AM
**To:** Don Reid; Rob Goe
**Subject:** RE: Case No. 6:16-bk-15813-MH; John E. Tackett and Ellen O. Tackett

Don –

My client wants to let you know that the settlement offer has been withdrawn.

Pat Washburn



Thomas P. "Pat" Washburn
Attorney

t. 512.478.5308          De Leon & Washburn, P.C.
f. 512.482.8628          901 South MoPac Expressway
e. pwashburn@dwlawtx.com  Barton Oaks Plaza V, Ste 230
w. www.dwlawtx.com       Austin, Texas 78746

CONFIDENTIALITY NOTICE:  This email and any attachments are for the exclusive and confidential use of the intended recipient.  If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system.  We do not waive attorney-client or work product privilege by the transmission of this message.

EXHIBIT "6"

**From:** Don Reid [mailto:dreid@goeforlaw.com]
**Sent:** Monday, July 10, 2017 10:39 AM
**To:** Thomas Pat Washburn <pwashburn@dwlawtx.com>; Rob Goe <rgoe@goeforlaw.com>
**Subject:** RE: Case No. 6:16-bk-15813-MH; John E. Tackett and Ellen O. Tackett

Pat,

Any update on this?  We need to get this finalized and approved.

Don

**From:** Thomas Pat Washburn [mailto:pwashburn@dwlawtx.com]
**Sent:** Wednesday, June 21, 2017 9:49 AM
**To:** Don Reid; Rob Goe
**Subject:** RE: Case No. 6:16-bk-15813-MH; John E. Tackett and Ellen O. Tackett

Don –

Let me check with my client on this matter.  I will report back.

Pat Washburn



Thomas P. "Pat" Washburn
Attorney

t. 512.478.5308
f. 512.482.8628
e. pwashburn@dwlawtx.com
w. www.dwlawtx.com

De Leon & Washburn, P.C.
901 South MoPac Expressway
Barton Oaks Plaza V, Ste 230
Austin, Texas 78746

CONFIDENTIALITY NOTICE:  This email and any attachments are for the exclusive and confidential use of the intended recipient.  If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system.  We do not waive attorney-client or work product privilege by the transmission of this message.

**From:** Don Reid [mailto:dreid@goeforlaw.com]
**Sent:** Wednesday, June 21, 2017 11:29 AM
**To:** Rob Goe <rgoe@goeforlaw.com>; Thomas Pat Washburn <pwashburn@dwlawtx.com>
**Cc:** Kerry Murphy <kmurphy@goeforlaw.com>; Steven Speier <sspeier@glassratner.com>; 'lmorvant@glassratner.com' <lmorvant@glassratner.com>
**Subject:** RE: Case No. 6:16-bk-15813-MH; John E. Tackett and Ellen O. Tackett

Pat,

We will you please send over a revised agreement with your proposed terms and we'll mark it up?  We can use your version of the agreement if you insist on this being a settlement versus a sale.  We'll have to add some language regarding bankruptcy court approval, trustee liability, etc. but that should not be too controversial.  We'd like to get this finalized soon.

Thanks,

Don

**From:** Rob Goe
**Sent:** Friday, June 02, 2017 4:57 PM
**To:** Thomas Pat Washburn; Don Reid
**Cc:** Kerry Murphy; Steven Speier; 'lmorvant@glassratner.com'
**Subject:** RE: Case No. 6:16-bk-15813-MH; John E. Tackett and Ellen O. Tackett

Pat –thanks-we will talk to trustee but in interim can you please mark up the agreement we sent you –also until all funds are paid the interests can't be transferred so advise how that will work.

Thanks Rob

Robert P. Goe, Esq.


GOE & FORSYTHE, LLP
18101 Von Karman
Suite 1200
Irvine, CA 92612
Phone    (949) 798-2460
Direct    (949) 798-2461
Cell      (949) 283-1501
Fax       (949) 955-9437
rgoe@goeforlaw.com


**From:** Thomas Pat Washburn [mailto:pwashburn@dwlawtx.com]
**Sent:** Friday, June 02, 2017 4:31 PM
**To:** Don Reid; Rob Goe
**Cc:** Kerry Murphy
**Subject:** RE: Case No. 6:16-bk-15813-MH; John E. Tackett and Ellen O. Tackett

Don and Rob –

Our client has authorized me to make the following offer.

Conestoga will pay a total of $150,000 to redeem the participation interest of John E. Tackett and Ellen O. Tackett in the life insurance policies owned by the Conestoga Trust.  That amount will be paid in three payments of $50,000 each, spread out over a period of 60 days.

The payments over time are necessary due to Conestoga's budgeting protocols.  In addition, there is approximately $1,400 remaining in premium escrow accounts for payment of premiums on these policies.

The structure of the transaction is a settlement, as Conestoga is not obligated to redeem the interest in the policies.

Please let me know if you have any questions regarding the above.

Pat Washburn

EXHIBIT "6"



**Thomas P. "Pat" Washburn**
Attorney

t. 512.478.5308
f. 512.482.8628
e. pwashburn@dwlawtx.com
w. www.dwlawtx.com

De Leon & Washburn, P.C.
901 South MoPac Expressway
Barton Oaks Plaza V, Ste 230
Austin, Texas 78746

CONFIDENTIALITY NOTICE:  This email and any attachments are for the exclusive and confidential use of  the intended recipient.  If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system.  We do not waive attorney-client or work product privilege by the transmission of this message.

**From:** Don Reid [mailto:dreid@goeforlaw.com]
**Sent:** Thursday, May 25, 2017 7:44 PM
**To:** Thomas Pat Washburn <pwashburn@dwlawtx.com>; Rob Goe <rgoe@goeforlaw.com>
**Cc:** Kerry Murphy <kmurphy@goeforlaw.com>
**Subject:** RE: Case No. 6:16-bk-15813-MH; John E. Tackett and Ellen O. Tackett

Pat,

Attached is our draft of the agreement.  We started afresh as this transaction is a sale, not a settlement.  Also, the Trustee is requesting $150,000 for the interests, considering the Debtors' initial investment was over $200,000.  Finally, the Trustee wants immediate payment and sees no reason why a large company like Conestoga cannot do so.  Please review and respond.

Thanks,

Donald W. Reid
GOE & FORSYTHE, LLP
18101 Von Karman, Suite 1200
Irvine, CA 92612
Phone (949) 798-2460
Fax   (949) 955-9437

PRIVILEGED AND CONFIDENTIAL - ATTORNEY CLIENT COMMUNICATION

This e-mail is covered by the Electronic Communications Privacy Act (18 U.S.C.  2510-2521) and is legally privileged.

Do NOT Forward This Message
This message originates from the law firm of Goe & Forsythe, LLP.
The information contained herein is intended for the personal and confidential use of the recipient(s) named above.  This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee.  If you are not the intended recipient, you should immediately stop reading this message and delete it from your system.   Any unauthorized reading, distribution, copying, or other use of this communication or its attachments is strictly prohibited by law and is subject to criminal and civil penalties.  All personal messages express solely the sender's views and not those of Goe & Forsythe, LLP.

ANY TAX ADVICE CONTAINED IN THE BODY OF THIS E-MAIL WAS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY THE RECIPIENT FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED UNDER THE INTERNAL REVENUE CODE OR APPLICABLE STATE OR LOCAL TAX LAW PROVISIONS.

**From:** Thomas Pat Washburn [mailto:pwashburn@dwlawtx.com]
**Sent:** Thursday, May 04, 2017 3:13 PM
**To:** Don Reid; Rob Goe
**Cc:** Kerry Murphy
**Subject:** RE: Case No. 6:16-bk-15813-MH; John E. Tackett and Ellen O. Tackett

Don and Rob:

I have attached an initial draft of the settlement agreement.  I understand that if the Trustee of the Tacketts' estate now owns this asset, we will need to change the parties to the agreement.

Please let me know if you have any questions.

Pat Washburn

 **Thomas P. "Pat" Washburn**
**Attorney**

........................................................................

t. 512.478.5308          De Leon & Washburn, P.C.
f. 512.482.8628          901 South MoPac Expressway
e. pwashburn@dwlawtx.com   Barton Oaks Plaza V, Ste 230
w. www.dwlawtx.com       Austin, Texas 78746

........................................................................

CONFIDENTIALITY NOTICE:  This email and any attachments are for the exclusive and confidential use of  the intended recipient.  If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system.  We do not waive attorney-client or work product privilege by the transmission of this message.

**PRIVILEGED AND CONFIDENTIAL - ATTORNEY CLIENT COMMUNICATION**
This e-mail is covered by the Electronic Communications Privacy Act (18 U.S.C. 2510-2521) and is legally privileged. Do NOT Forward This Message.

This message originates from the law firm of Goe & Forsythe, LLP. The information contained herein is intended for the personal and confidential use of the recipient(s) named above. This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying, or other use of this communication or its attachments is strictly prohibited by law and is subject to criminal and civil penalties. All personal messages express solely the sender's views and not those of Goe & Forsythe, LLP.
ANY TAX ADVICE CONTAINED IN THE BODY OF THIS E-MAIL WAS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY THE RECIPIENT FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED UNDER THE INTERNAL REVENUE CODE OR APPLICABLE STATE OR LOCAL TAX LAW PROVISIONS.

Please take into consideration the environment before printing this email…save a Tree.

**PRIVILEGED AND CONFIDENTIAL - ATTORNEY CLIENT COMMUNICATION**
This e-mail is covered by the Electronic Communications Privacy Act (18 U.S.C. 2510-2521) and is legally privileged. Do NOT Forward This Message.

This message originates from the law firm of Goe & Forsythe, LLP. The information contained herein is intended for the personal and confidential use of the recipient(s) named above. This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying, or other use of this communication or its attachments is strictly prohibited by law and is subject to criminal and civil penalties. All personal messages express solely the sender's views and not those of Goe & Forsythe, LLP.
ANY TAX ADVICE CONTAINED IN THE BODY OF THIS E-MAIL WAS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY THE RECIPIENT FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED UNDER THE INTERNAL REVENUE CODE OR APPLICABLE STATE OR LOCAL TAX LAW PROVISIONS.

Please take into consideration the environment before printing this email…save a Tree.

**PRIVILEGED AND CONFIDENTIAL - ATTORNEY CLIENT COMMUNICATION**
This e-mail is covered by the Electronic Communications Privacy Act (18 U.S.C. 2510-2521) and is legally privileged. Do NOT Forward This Message.

This message originates from the law firm of Goe & Forsythe, LLP. The information contained herein is intended for the personal and confidential use of the recipient(s) named above. This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying, or other use of this communication or its attachments is strictly prohibited by law and is subject to criminal and civil penalties. All personal messages express solely the sender's views and not those of Goe & Forsythe, LLP.
ANY TAX ADVICE CONTAINED IN THE BODY OF THIS E-MAIL WAS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY THE RECIPIENT FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED UNDER THE INTERNAL REVENUE CODE OR APPLICABLE STATE OR LOCAL TAX LAW PROVISIONS.

Please take into consideration the environment before printing this email…save a Tree.

**PRIVILEGED AND CONFIDENTIAL - ATTORNEY CLIENT COMMUNICATION**
This e-mail is covered by the Electronic Communications Privacy Act (18 U.S.C. 2510-2521) and is legally privileged. Do NOT Forward This Message.

This message originates from the law firm of Goe & Forsythe, LLP. The information contained herein is intended for the personal and confidential use of the recipient(s) named above. This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you should immediately stop reading this message and delete it from your system. Any unauthorized reading, distribution, copying, or other use of this communication or its attachments is strictly prohibited by law and is subject to criminal and civil penalties. All personal messages express solely the sender's views and not those of Goe & Forsythe, LLP.
ANY TAX ADVICE CONTAINED IN THE BODY OF THIS E-MAIL WAS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY THE RECIPIENT FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED UNDER THE INTERNAL REVENUE CODE OR APPLICABLE STATE OR LOCAL TAX LAW PROVISIONS.

Please take into consideration the environment before printing this email…save a Tree.

# EXHIBIT 7

# EXHIBIT 7

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

January 16, 2017

## Required Premium Payment Due

BILL TO: ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNARDINO, CA 92405

| Policy ID | Account Name/Type | Percentage owned | Current Premium | Estimated Coverage Period |
|---|---|---|---|---|
| TC042210 | ELLEN & JOHN TACKETT IND CASH ACCT | 0.63% | $3397.49 | 12/21/2016 – 12/21/2017 |

The monies escrowed for the payment of premiums at the time of the purchase of this policy have been depleted.  Pursuant to the provisions of the L i f e I n s u r a n c e  Policy Funding Agreement, in order for you to maintain your interest in this policy, you must contribute your pro-rata share of the premium currently due. **PLEASE NOTE: IF YOU DO NOT MAKE THIS PAYMENT BY THE DATE INDICATED HEREIN, CONESTOGA WILL MAKE SUCH PAYMENT AND CONESTOGA WILL ASSUME YOUR INTEREST IN THIS POLICY.  IN SUCH CASE, YOU WILL HAVE THIRTY (30) DAYS TO MAKE UP THE REQUIRED PAYMENT TO REDEEM YOUR INTEREST IN THIS POLICY.  IF YOU FAIL TO REDEEM YOUR INTEREST IN THIS POLICY WITHIN SUCH THIRTY (30)-DAY PERIOD, YOU WILL LOSE YOUR RIGHT TO PARTICIPATE IN THIS POLICY.**

Please note, this request is made only to protect your interest and will be used to replenish the escrow account from which premiums are paid. No part of this payment is paid to Conestoga as a fee or other type of compensation.

In order to timely pay the premium due, please return the authorization below along with your payment in the enclosed postage-paid return envelope before **February 20, 2017**. Please make your check payable to **Dunham Trust Company FBO Conestoga Trust** and include on the check for reference the **Policy ID** listed in the chart above under Policy ID.

Should you have any questions, please contact Strategix Solutions at 702-852-6690 or Conestoga@cfoconsulting.net

DETACH  —    TO ENSURE PROPER CREDIT, DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT    —  DETACH  —

ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

Policy ID: SR053110AE
Account Number: ES12060005

TOTAL PREMIUM DUE:  $3397.49 before 02/20/17

By enclosing your check for the above-referenced amount, you hereby authorize Conestoga to pay or cause to be paid premiums to the insurance carrier on your behalf. This amount reflects the payment of your pro-rata share of the premiums due on the above-referenced policy.

MAKE CHECK PAYABLE TO: **DUNHAM TRUST COMPANY FBO CONESTOGA TRUST**

SEND TO:

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

EXHIBIT "7"

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

March 3, 2017

## Required Premium Payment Due

BILL TO: ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

| Policy ID | Account Name/Type | Percentage owned | Current Premium | Estimated Coverage Period |
|---|---|---|---|---|
| BH051510JH | ELLEN & JOHN TACKETT IND CASH ACCT | 0.68% | $1,938.45 | 02/10/2017 – 02/10/2018 |

The monies escrowed for the payment of premiums at the time of the purchase of this policy have been depleted. Pursuant to the provisions of the Life Insurance Policy Funding Agreement, in order for you to maintain your interest in this policy, you must contribute your pro-rata share of the premium currently due. **PLEASE NOTE: IF YOU DO NOT MAKE THIS PAYMENT BY THE DATE INDICATED HEREIN, CONESTOGA WILL MAKE SUCH PAYMENT AND CONESTOGA WILL ASSUME YOUR INTEREST IN THIS POLICY. IN SUCH CASE, YOU WILL HAVE THIRTY (30) DAYS TO MAKE UP THE REQUIRED PAYMENT TO REDEEM YOUR INTEREST IN THIS POLICY. IF YOU FAIL TO REDEEM YOUR INTEREST IN THIS POLICY WITHIN SUCH THIRTY (30)-DAY PERIOD, YOU WILL LOSE YOUR RIGHT TO PARTICIPATE IN THIS POLICY.**

Please note, this request is made only to protect your interest and will be used to replenish the escrow account from which premiums are paid. No part of this payment is paid to Conestoga as a fee or other type of compensation.

In order to timely pay the premium due, please return the authorization below along with your payment in the enclosed postage-paid return envelope before **April 07, 2017**. Please make your check payable to **Dunham Trust Company FBO Conestoga Trust** and include on the check for reference the **Policy ID** listed in the chart above under Policy ID.

Should you have any questions, please contact Strategix Solutions at 702-852-6690 or Conestoga@cfoconsulting.net

DETACH   —   TO ENSURE PROPER CREDIT, DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT   —   DETACH   —

ELLEN & JOHN TACKETT IND CASH
ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

Policy ID:  BH051510JH
Account Number: ES12060005

TOTAL PREMIUM DUE:  $1,938.45 before 04/07/17

By enclosing your check for the above-referenced amount, you hereby authorize Conestoga to pay or cause to be paid premiums to the insurance carrier on your behalf. This amount reflects the payment of your pro-rata share of the premiums due on the above-referenced policy.

MAKE CHECK PAYABLE TO: **DUNHAM TRUST COMPANY FBO CONESTOGA TRUST**

SEND TO:

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

EXHIBIT "7"

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

May 5, 2017

## Required Premium Payment Due

BILL TO: ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

| Policy ID | Account Name/Type | Percentage owned | Current Premium | Estimated Coverage Period |
|-----------|-------------------|------------------|-----------------|---------------------------|
| WM051510LN | ELLEN & JOHN TACKETT IND CASH ACCT | 0.82% | $1,651.64 | 04/01/2017 – 04/01/2018 |

The monies escrowed for the payment of premiums at the time of the purchase of this policy have been depleted.  Pursuant to the provisions of the L i f e I n s u r a n c e  Policy Funding Agreement, in order for you to maintain your interest in this policy, you must contribute your pro-rata share of the premium currently due. **PLEASE NOTE: IF YOU DO NOT MAKE THIS PAYMENT BY THE DATE INDICATED HEREIN, CONESTOGA WILL MAKE SUCH PAYMENT AND CONESTOGA WILL ASSUME YOUR INTEREST IN THIS POLICY.  IN SUCH CASE, YOU WILL HAVE THIRTY (30) DAYS TO MAKE UP THE REQUIRED PAYMENT TO REDEEM YOUR INTEREST IN THIS POLICY.  IF YOU FAIL TO REDEEM YOUR INTEREST IN THIS POLICY WITHIN SUCH THIRTY (30)-DAY PERIOD, YOU WILL LOSE YOUR RIGHT TO PARTICIPATE IN THIS POLICY.**

Please note, this request is made only to protect your interest and will be used to replenish the escrow account from which premiums are paid. No part of this payment is paid to Conestoga as a fee or other type of compensation.

In order to timely pay the premium due, please return the authorization below along with your payment in the enclosed postage-paid return envelope before **June 9, 2017**. Please make your check payable to **Dunham Trust Company FBO Conestoga Trust** and include on the check for reference the **Policy ID** listed in the chart above under Policy ID.

Should you have any questions, please contact Strategix Solutions at 702-852-6730 or Conestoga@cfoconsulting.net

DETACH  →       TO ENSURE PROPER CREDIT, DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT   —  DETACH  —

ELLEN & JOHN TACKETT IND CASH
ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

Policy ID:  WM051510LN
Account Number: ES12060005

TOTAL PREMIUM DUE:  $1,651.64 before 06/09/17

By enclosing your check for the above-referenced amount, you hereby authorize Conestoga to pay or cause to be paid premiums to the insurance carrier on your behalf. This amount reflects the payment of your pro-rata share of the premiums due on the above-referenced policy.

MAKE CHECK PAYABLE TO: **DUNHAM TRUST COMPANY FBO CONESTOGA TRUST**

SEND TO:

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

EXHIBIT "7"

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

June 9, 2017

## Required Premium Payment Due

BILL TO: ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNARDINO, CA 92405

| Policy ID | Account Name/Type | Percentage owned | Current Premium | Estimated Coverage Period |
|---|---|---|---|---|
| PE042210 | ELLEN & JOHN TACKETT IND CASH ACCT | 0.82% | $1,633 | 06/1/2017 – 06/1/2018 |

The monies escrowed for the payment of premiums at the time of the purchase of this policy have been depleted. Pursuant to the provisions of the L i f e I n s u r a n c e Policy Funding Agreement, in order for you to maintain your interest in this policy, you must contribute your pro-rata share of the premium currently due. **PLEASE NOTE: IF YOU DO NOT MAKE THIS PAYMENT BY THE DATE INDICATED HEREIN, CONESTOGA WILL MAKE SUCH PAYMENT AND CONESTOGA WILL ASSUME YOUR INTEREST IN THIS POLICY. IN SUCH CASE, YOU WILL HAVE THIRTY (30) DAYS TO MAKE UP THE REQUIRED PAYMENT TO REDEEM YOUR INTEREST IN THIS POLICY. IF YOU FAIL TO REDEEM YOUR INTEREST IN THIS POLICY WITHIN SUCH THIRTY (30)-DAY PERIOD, YOU WILL LOSE YOUR RIGHT TO PARTICIPATE IN THIS POLICY.**

Please note, this request is made only to protect your interest and will be used to replenish the escrow account from which premiums are paid. No part of this payment is paid to Conestoga as a fee or other type of compensation.

In order to timely pay the premium due, please return the authorization below along with your payment in the enclosed postage-paid return envelope before **July 12, 2017**. Please make your check payable to **Dunham Trust Company FBO Conestoga Trust** and include on the check for reference the **Policy ID** listed in the chart above under Policy ID.

Should you have any questions, please contact Strategix Solutions at 702-852-6730 or Conestoga@cfoconsulting.net

DETACH ➤          TO ENSURE PROPER CREDIT, DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT    ➤ DETACH ➤

ELLEN & JOHN TACKETT IND CASH
ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

**Policy ID:** PE042210
**Account Number:** ELLEN & JOHN TACKETT IND CASH ACCT

TOTAL PREMIUM DUE: $1,633 before 07/12/17

By enclosing your check for the above-referenced amount, you hereby authorize Conestoga to pay or cause to be paid premiums to the insurance carrier on your behalf. This amount reflects the payment of your pro-rata share of the premiums due on the above-referenced policy.

MAKE CHECK PAYABLE TO: **DUNHAM TRUST COMPANY FBO CONESTOGA TRUST**

SEND TO:

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

EXHIBIT "7"

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

June 9, 2017

## Required Premium Payment Due

BILL TO: ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

| Policy ID | Account Name/Type | Percentage owned | Current Premium | Estimated Coverage Period |
|---|---|---|---|---|
| ZJ042210 | ELLEN & JOHN TACKETT IND CASH ACCT | 0.82% | $1808 | 06/01/2017-06/01/2018 |

The monies escrowed for the payment of premiums at the time of the purchase of this policy have been depleted. Pursuant to the provisions of the L i f e I n s u r a n c e Policy Funding Agreement, in order for you to maintain your interest in this policy, you must contribute your pro-rata share of the premium currently due. **PLEASE NOTE: IF YOU DO NOT MAKE THIS PAYMENT BY THE DATE INDICATED HEREIN, CONESTOGA WILL MAKE SUCH PAYMENT AND CONESTOGA WILL ASSUME YOUR INTEREST IN THIS POLICY. IN SUCH CASE, YOU WILL HAVE THIRTY (30) DAYS TO MAKE UP THE REQUIRED PAYMENT TO REDEEM YOUR INTEREST IN THIS POLICY. IF YOU FAIL TO REDEEM YOUR INTEREST IN THIS POLICY WITHIN SUCH THIRTY (30)-DAY PERIOD, YOU WILL LOSE YOUR RIGHT TO PARTICIPATE IN THIS POLICY.**

Please note, this request is made only to protect your interest and will be used to replenish the escrow account from which premiums are paid. No part of this payment is paid to Conestoga as a fee or other type of compensation.

In order to timely pay the premium due, please return the authorization below along with your payment in the enclosed postage-paid return envelope before **July 12, 2017**. Please make your check payable to **Dunham Trust Company FBO Conestoga Trust** and include on the check for reference the **Policy ID** listed in the chart above under Policy ID.

Should you have any questions, please contact Strategix Solutions at 702-852-6730 or Conestoga@cfoconsulting.net

DETACH  ➡        TO ENSURE PROPER CREDIT, DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT        ➡  DETACH  ➡

ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

Policy ID: ZJ042210
Account Number: ES12060005

TOTAL PREMIUM DUE: $1808 before 07/12/17

By enclosing your check for the above-referenced amount, you hereby authorize Conestoga to pay or cause to be paid premiums to the insurance carrier on your behalf. This amount reflects the payment of your pro-rata share of the premiums due on the above-referenced policy.

MAKE CHECK PAYABLE TO: **DUNHAM TRUST COMPANY FBO CONESTOGA TRUST**

SEND TO:

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

EXHIBIT "7"

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

July 28, 2017

## Required Premium Payment Due

BILL TO: ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

| Policy ID | Account Name/Type | Percentage owned | Current Premium | Estimated Coverage Period |
|-----------|-------------------|------------------|-----------------|---------------------------|
| CP051910 | ELLEN & JOHN TACKETT IND CASH ACCT | 0.95% | $2,146.81 | 07/01/2017 – 07/01/2018 |

The monies escrowed for the payment of premiums at the time of the purchase of this policy have been depleted. Pursuant to the provisions of the L i f e I n s u r a n c e  Policy Funding Agreement, in order for you to maintain your interest in this policy, you must contribute your pro-rata share of the premium currently due. **PLEASE NOTE: IF YOU DO NOT MAKE THIS PAYMENT BY THE DATE INDICATED HEREIN, CONESTOGA WILL MAKE SUCH PAYMENT AND CONESTOGA WILL ASSUME YOUR INTEREST IN THIS POLICY.  IN SUCH CASE, YOU WILL HAVE THIRTY (30) DAYS TO MAKE UP THE REQUIRED PAYMENT TO REDEEM YOUR INTEREST IN THIS POLICY.  IF YOU FAIL TO REDEEM YOUR INTEREST IN THIS POLICY WITHIN SUCH THIRTY (30)-DAY PERIOD, YOU WILL LOSE YOUR RIGHT TO PARTICIPATE IN THIS POLICY.**

Please note, this request is made only to protect your interest and will be used to replenish the escrow account from which premiums are paid. No part of this payment is paid to Conestoga as a fee or other type of compensation.

In order to timely pay the premium due, please return the authorization below along with your payment in the enclosed postage-paid return envelope before **August 30, 2017**. Please make your check payable to **Dunham Trust Company FBO Conestoga Trust** and include on the check for reference the Policy ID listed in the chart above under Policy ID.

Should you have any questions, please contact Strategix Solutions at 702-852-6730 or Conestoga@cfoconsulting.net

DETACH  ➞     TO ENSURE PROPER CREDIT, DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT   ➞   DETACH  ➞

ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

Policy ID: CP051910
Account Number: ES12060005

TOTAL PREMIUM DUE:  $2,146.81 before 08/30/17

By enclosing your check for the above-referenced amount, you hereby authorize Conestoga to pay or cause to be paid premiums to the insurance carrier on your behalf. This amount reflects the payment of your pro-rata share of the premiums due on the above-referenced policy.

MAKE CHECK PAYABLE TO: **DUNHAM TRUST COMPANY FBO CONESTOGA TRUST**

SEND TO:

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

EXHIBIT "7"

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

## Required Premium Payment Due

BILL TO: ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNARDINO, CA 92405

| Policy ID | Account Name/Type | Percentage owned | Current Premium | Estimated Coverage Period |
|-----------|-------------------|------------------|-----------------|---------------------------|
| CP042210 | ELLEN & JOHN TACKETT IND CASH ACCT | 0.95% | $2,146.67 | 07/15/2017 – 07/15/2018 |

The monies escrowed for the payment of premiums at the time of the purchase of this policy have been depleted. Pursuant to the provisions of the L i f e I n s u r a n c e  Policy Funding Agreement, in order for you to maintain your interest in this policy, you must contribute your pro-rata share of the premium currently due. **PLEASE NOTE: IF YOU DO NOT MAKE THIS PAYMENT BY THE DATE INDICATED HEREIN, CONESTOGA WILL MAKE SUCH PAYMENT AND CONESTOGA WILL ASSUME YOUR INTEREST IN THIS POLICY. IN SUCH CASE, YOU WILL HAVE THIRTY (30) DAYS TO MAKE UP THE REQUIRED PAYMENT TO REDEEM YOUR INTEREST IN THIS POLICY. IF YOU FAIL TO REDEEM YOUR INTEREST IN THIS POLICY WITHIN SUCH THIRTY (30)-DAY PERIOD, YOU WILL LOSE YOUR RIGHT TO PARTICIPATE IN THIS POLICY.**

Please note, this request is made only to protect your interest and will be used to replenish the escrow account from which premiums are paid. No part of this payment is paid to Conestoga as a fee or other type of compensation.

In order to timely pay the premium due, please return the authorization below along with your payment in the enclosed postage-paid return envelope before **August 30, 2017**. Please make your check payable to **Dunham Trust Company FBO Conestoga Trust** and include on the check for reference the Policy ID listed in the chart above under Policy ID.

Should you have any questions, please contact Strategix Solutions at 702-852-6730 or Conestoga@cfoconsulting.net

DETACH  —    TO ENSURE PROPER CREDIT, DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT    —  DETACH  —

ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNARDINO, CA 92405

Policy ID: CP042210
Account Number: ES12060005

TOTAL PREMIUM DUE:  $2,146.67 before 08/30/17

By enclosing your check for the above-referenced amount, you hereby authorize Conestoga to pay or cause to be paid premiums to the insurance carrier on your behalf. This amount reflects the payment of your pro-rata share of the premiums due on the above-referenced policy.

MAKE CHECK PAYABLE TO: **DUNHAM TRUST COMPANY FBO CONESTOGA TRUST**

SEND TO:

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

EXHIBIT "7"

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

# Required Premium Payment Due

BILL TO: ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

## SECOND AND FINAL NOTICE

| Policy ID | Account Name/Type | Percentage owned | Current Premium | Estimated Coverage Period |
|-----------|-------------------|------------------|-----------------|---------------------------|
| SR053110AE | ELLEN & JOHN TACKETT IND CASH ACCT | 0.63% | $2,674.09 | 10/01/2016 – 10/01/2017 |

The monies escrowed for the payment of premiums at the time of the purchase of this policy have been depleted.  Pursuant to the provisions of the Life Insurance Policy Funding Agreement, in order for you to maintain your interest in this policy, you must contribute your pro-rata share of the premium currently due. **PLEASE NOTE: IF YOU DO NOT MAKE THIS PAYMENT BY THE DATE INDICATED HEREIN, CONESTOGA WILL MAKE SUCH PAYMENT AND CONESTOGA WILL ASSUME YOUR INTEREST IN THIS POLICY.  IN SUCH CASE, YOU WILL HAVE THIRTY (30) DAYS TO MAKE UP THE REQUIRED PAYMENT TO REDEEM YOUR INTEREST IN THIS POLICY.  IF YOU FAIL TO REDEEM YOUR INTEREST IN THIS POLICY WITHIN SUCH THIRTY (30)-DAY PERIOD, YOU WILL LOSE YOUR RIGHT TO PARTICIPATE IN THIS POLICY.**

Please note, this request is made only to protect your interest and will be used to replenish the escrow account from which premiums are paid. No part of this payment is paid to Conestoga as a fee or other type of compensation.

In order to timely pay the premium due, please return the authorization below along with your payment in the enclosed postage-paid return envelope before **November 20, 2016**. Please make your check payable to **Dunham Trust Company FBO Conestoga Trust** and include on the check for reference the **Policy ID** listed in the chart above under Policy ID.

Should you have any questions, please contact Strategix Solutions at 702-852-6690 or Conestoga@cfoconsulting.net

DETACH  —    TO ENSURE PROPER CREDIT, DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT    —  DETACH

ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

Policy ID:  SR053110AE
Account Number: ES12060005

TOTAL PREMIUM DUE: $2,674.09 before 11/20/16

By enclosing your check for the above-referenced amount, you hereby authorize Conestoga to pay or cause to be paid premiums to the insurance carrier on your behalf. This amount reflects the payment of your pro-rata share of the premiums due on the above-referenced policy.

MAKE CHECK PAYABLE TO: **DUNHAM TRUST COMPANY FBO CONESTOGA TRUST**

SEND TO:

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

EXHIBIT "7"

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

## Required Premium Payment Due

BILL TO: ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNARDINO, CA 92405

| Policy ID | Account Name/Type | Percentage owned | Current Premium | Estimated Coverage Period |
|-----------|-------------------|------------------|-----------------|---------------------------|
| SR053110AE | ELLEN & JOHN TACKETT IND CASH ACCT | 0.63% | $2,674.09 | 10/01/2016 – 10/01/2017 |

The monies escrowed for the payment of premiums at the time of the purchase of this policy have been depleted.  Pursuant to the provisions of the L i f e I n s u r a n c e  Policy Funding Agreement, in order for you to maintain your interest in this policy, you must contribute your pro-rata share of the premium currently due.  **PLEASE NOTE: IF YOU DO NOT MAKE THIS PAYMENT BY THE DATE INDICATED HEREIN, CONESTOGA WILL MAKE SUCH PAYMENT AND CONESTOGA WILL ASSUME YOUR INTEREST IN THIS POLICY.  IN SUCH CASE, YOU WILL HAVE THIRTY (30) DAYS TO MAKE UP THE REQUIRED PAYMENT TO REDEEM YOUR INTEREST IN THIS POLICY.  IF YOU FAIL TO REDEEM YOUR INTEREST IN THIS POLICY WITHIN SUCH THIRTY (30)-DAY PERIOD, YOU WILL LOSE YOUR RIGHT TO PARTICIPATE IN THIS POLICY.**

Please note, this request is made only to protect your interest and will be used to replenish the escrow account from which premiums are paid. No part of this payment is paid to Conestoga as a fee or other type of compensation.

In order to timely pay the premium due, please return the authorization below along with your payment in the enclosed postage-paid return envelope before November 20, 2016. Please make your check payable to **Dunham Trust Company FBO Conestoga Trust** and include on the check for reference the **Policy ID** listed in the chart above under Policy ID.

Should you have any questions, please contact Strategix Solutions at 702-852-6690 or Conestoga@cfoconsulting.net

DETACH  —  TO ENSURE PROPER CREDIT, DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT  —  DETACH

ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

**Policy ID:** SR053110AE
**Account Number:** ES12060005

TOTAL PREMIUM DUE: $2,674.09 before 11/20/16

By enclosing your check for the above-referenced amount, you hereby authorize Conestoga to pay or cause to be paid premiums to the insurance carrier on your behalf. This amount reflects the payment of your pro-rata share of the premiums due on the above-referenced policy.

MAKE CHECK PAYABLE TO: **DUNHAM TRUST COMPANY FBO CONESTOGA TRUST**

SEND TO:

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

# EXHIBIT 8

# EXHIBIT 8

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

May 3, 2017

## FORFEITURE NOTICE
## NOTICE OF RIGHT TO REDEEM

BILL TO: ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

| Policy ID | Account Name/Type | Percentage owned | Current Premium | Estimated Coverage Period |
|---|---|---|---|---|
| TC042210 | ELLEN & JOHN TACKETT IND CASH ACCT | 0.63% | $3397.49 | 12/21/2016 – 12/21/2017 |

**YOU HAVE PREVIOUSLY BEEN NOTIFIED OF ADDITIONAL PREMIUMS DUE ON THE ABOVE-REFERENCED POLICY(IES). THE CONESTOGA TRUST HAS NOT RECEIVED THE REQUIRED REMIUMS FROM YOU. IN ACCORDANCE WITH THE PROVISIONS OF YOUR PARTICIPATION AGREEMENT WITH THE CONESTOGA TRUST, YOUR BENEFICIAL INTEREST IN THE ABOVE-REFERENCED POLICY(IES) HAS BEEN FORFEITED.**

**PLEASE NOTE: IF YOU PAY THE ADDITIONAL PREMIUM REQUIRED ON THE ABOVE-REFERENCED POLICY(IES) WITHIN THIRTY (30) DAYS FROM THE DATE OF THIS NOTICE, YOU MAY REDEEM OUR FORFEITED BENEFICIAL INTEREST IN SUCH POLICY(IES). IF YOU FAIL TO REDEEM YOUR FORFEITED BENEFICIAL INTEREST IN SUCH POLICY(IES) WITHIN THIRTY (30) DAYS FROM THE DATE OF THIS NOTICE, CONESTOGA WILL ASSUME YOUR INTEREST, AND YOU WILL LOSE ALL RIGHTS WITH RESPECT TO SUCH INTEREST.**

In order to redeem your interest in the above-referenced policy(ies), please return the authorization below along with your payment in the enclosed postage-paid return envelope before 06/05/2017. Please make your check payable to **Dunham Trust Company FBO Conestoga Trust** and include on the check for reference the **Policy ID** listed in the chart above under Policy ID.

Should you have any questions, please contact Strategix Solutions at 702-852-6690 or Conestoga@cfoconsulting.net

DETACH —     TO ENSURE PROPER CREDIT, DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT     — DETACH —

ELLEN & JOHN TACKETT IND CASH
ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

**Policy ID:** TC042210
**Account Number:** ES12060005

TOTAL PREMIUM DUE: $3397.49 before 06/05/17

By enclosing your check for the above-referenced amount, you hereby authorize Conestoga to pay or cause to be paid premiums to the insurance carrier on your behalf. This amount reflects the payment of your pro-rata share of the premiums due on the above-referenced policy.

MAKE CHECK PAYABLE TO: **DUNHAM TRUST COMPANY FBO CONESTOGA TRUST**

SEND TO:
Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

EXHIBIT "8"

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

May 4, 2017

## FORFEITURE NOTICE
## NOTICE OF RIGHT TO REDEEM

BILL TO: ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

| Policy ID | Account Name/Type | Percentage owned | Current Premium | Estimated Coverage Period |
|---|---|---|---|---|
| BH051510JH | ELLEN & JOHN TACKETT IND CASH ACCT | 0.68% | $1,938.45 | 02/10/2017 - 02/10/2018 |

**YOU HAVE PREVIOUSLY BEEN NOTIFIED OF ADDITIONAL PREMIUMS DUE ON THE ABOVE-REFERENCED POLICY(IES). THE CONESTOGA TRUST HAS NOT RECEIVED THE REQUIRED REMIUMS FROM YOU. IN ACCORDANCE WITH THE PROVISIONS OF YOUR PARTICIPATION AGREEMENT WITH THE CONESTOGA TRUST, YOUR BENEFICIAL INTEREST IN THE ABOVE-REFERENCED POLICY(IES) HAS BEEN FORFEITED.**

**PLEASE NOTE: IF YOU PAY THE ADDITIONAL PREMIUM REQUIRED ON THE ABOVE-REFERENCED POLICY(IES) WITHIN THIRTY (30) DAYS FROM THE DATE OF THIS NOTICE, YOU MAY REDEEM OUR FORFEITED BENEFICIAL INTEREST IN SUCH POLICY(IES). IF YOU FAIL TO REDEEM YOUR FORFEITED BENEFICIAL INTEREST IN SUCH POLICY(IES) WITHIN THIRTY (30) DAYS FROM THE DATE OF THIS NOTICE, CONESTOGA WILL ASSUME YOUR INTEREST, AND YOU WILL LOSE ALL RIGHTS WITH RESPECT TO SUCH INTEREST.**

In order to redeem your interest in the above-referenced policy(ies), please return the authorization below along with your payment in the enclosed postage-paid return envelope before June 6, 2017. Please make your check payable to **Dunham Trust Company FBO Conestoga Trust** and include on the check for reference the **Policy ID** listed in the chart above under Policy ID.

Should you have any questions, please contact Strategix Solutions at 702-852-666730 or Conestoga@cfoconsulting.net

DETACH —   TO ENSURE PROPER CREDIT, DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT   — DETACH —

ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

Policy ID: BH051510JH
Account Number: ES12060005

TOTAL PREMIUM DUE: $1,938.45 before 06/06/2017

By enclosing your check for the above-referenced amount, you hereby authorize Conestoga to pay or cause to be paid premiums to the insurance carrier on your behalf. This amount reflects the payment of your pro-rata share of the premiums due on the above-referenced policy.

MAKE CHECK PAYABLE TO: **DUNHAM TRUST COMPANY FBO CONESTOGA TRUST**

SEND TO:

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

EXHIBIT "8"

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

June 12. 2017

## FORFEITURE NOTICE
## NOTICE OF RIGHT TO REDEEM

BILL TO: ELLEN & JOHN TACKETT IND CASH ACCT
      3464 N ARROWHEAD AVE.
      SAN BERNARDINO, CA 92405

| Policy ID | Account Name/Type | Percentage owned | Current Premium | Estimated Coverage Period |
|-----------|-------------------|------------------|-----------------|---------------------------|
| WM051510JH | ELLEN & JOHN TACKETT IND CASH ACCT | 0.82% | $1651.64 | 04/01/2017 – 04/01/2018 |

**YOU HAVE PREVIOUSLY BEEN NOTIFIED OF ADDITIONAL PREMIUMS DUE ON THE ABOVE-REFERENCED POLICY(IES). THE CONESTOGA TRUST HAS NOT RECEIVED THE REQUIRED REMIUMS FROM YOU. IN ACCORDANCE WITH THE PROVISIONS OF YOUR PARTICIPATION AGREEMENT WITH THE CONESTOGA TRUST, YOUR BENEFICIAL INTEREST IN THE ABOVE-REFERENCED POLICY(IES) HAS BEEN FORFEITED.**

**PLEASE NOTE: IF YOU PAY THE ADDITIONAL PREMIUM REQUIRED ON THE ABOVE-REFERENCED POLICY(IES) WITHIN THIRTY (30) DAYS FROM THE DATE OF THIS NOTICE, YOU MAY REDEEM OUR FORFEITED BENEFICIAL INTEREST IN SUCH POLICY(IES). IF YOU FAIL TO REDEEM YOUR FORFEITED BENEFICIAL INTEREST IN SUCH POLICY(IES) WITHIN THIRTY (30) DAYS FROM THE DATE OF THIS NOTICE, CONESTOGA WILL ASSUME YOUR INTEREST, AND YOU WILL LOSE ALL RIGHTS WITH RESPECT TO SUCH INTEREST.**

In order to redeem your interest in the above-referenced policy(ies), please return the authorization below along with your payment in the enclosed postage-paid return envelope before July 14, 2017. Please make your check payable to **Dunham Trust Company FBO Conestoga Trust** and include on the check for reference the **Policy ID** listed in the chart above under Policy ID.

Should you have any questions, please contact Strategix Solutions at 702-852-6730 or Conestoga@cfoconsulting.net

DETACH  —  TO ENSURE PROPER CREDIT, DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT  —  DETACH  —

ELLEN & JOHN TACKETT IND CASH
ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

**Policy ID:** WM051510LN
**Account Number:** ES12060005

TOTAL PREMIUM DUE:  $1651.64 before 07/14/17

By enclosing your check for the above-referenced amount, you hereby authorize Conestoga to pay or cause to be paid premiums to the insurance carrier on your behalf. This amount reflects the payment of your pro-rata share of the premiums due on the above-referenced policy.

MAKE CHECK PAYABLE TO: **DUNHAM TRUST COMPANY FBO CONESTOGA TRUST**

SEND TO:

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

EXHIBIT "8"

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

July 13, 2017

## FORFEITURE NOTICE
## NOTICE OF RIGHT TO REDEEM

BILL TO: ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNARDINO, CA 92405

| Policy ID | Account Name/Type | Percentage owned | Current Premium | Estimated Coverage Period |
|-----------|-------------------|------------------|-----------------|---------------------------|
| ZJ042210 | ELLEN & JOHN TACKETT IND CASH ACCT | 0.82% | $1808 | 12/21/2016 – 12/21/2017 |

**YOU HAVE PREVIOUSLY BEEN NOTIFIED OF ADDITIONAL PREMIUMS DUE ON THE ABOVE-REFERENCED POLICY(IES). THE CONESTOGA TRUST HAS NOT RECEIVED THE REQUIRED REMIUMS FROM YOU. IN ACCORDANCE WITH THE PROVISIONS OF YOUR PARTICIPATION AGREEMENT WITH THE CONESTOGA TRUST, YOUR BENEFICIAL INTEREST IN THE ABOVE-REFERENCED POLICY(IES) HAS BEEN FORFEITED.**

**PLEASE NOTE: IF YOU PAY THE ADDITIONAL PREMIUM REQUIRED ON THE ABOVE-REFERENCED POLICY(IES) WITHIN THIRTY (30) DAYS FROM THE DATE OF THIS NOTICE, YOU MAY REDEEM OUR FORFEITED BENEFICIAL INTEREST IN SUCH POLICY(IES). IF YOU FAIL TO REDEEM YOUR FORFEITED BENEFICIAL INTEREST IN SUCH POLICY(IES) WITHIN THIRTY (30) DAYS FROM THE DATE OF THIS NOTICE, CONESTOGA WILL ASSUME YOUR INTEREST, AND YOU WILL LOSE ALL RIGHTS WITH RESPECT TO SUCH INTEREST.**

In order to redeem your interest in the above-referenced policy(ies), please return the authorization below along with your payment in the enclosed postage-paid return envelope before August 16, 2017. Please make your check payable to **Dunham Trust Company FBO Conestoga Trust** and include on the check for reference the **Policy ID** listed in the chart above under Policy ID.

Should you have any questions, please contact Strategix Solutions at 702-852-6730 or Conestoga@cfoconsulting.net

DETACH  —  TO ENSURE PROPER CREDIT, DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT  —  DETACH  —

ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

Policy ID: ZJ042210
Account Number: ES12060005

TOTAL PREMIUM DUE:  $1808 before 08/16/2017

By enclosing your check for the above-referenced amount, you hereby authorize Conestoga to pay or cause to be paid premiums to the insurance carrier on your behalf. This amount reflects the payment of your pro-rata share of the premiums due on the above-referenced policy.

MAKE CHECK PAYABLE TO: **DUNHAM TRUST COMPANY FBO CONESTOGA TRUST**

SEND TO:
Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas. NV 89148

July 13 2017

## FORFEITURE NOTICE
## NOTICE OF RIGHT TO REDEEM

BILL TO: ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

| Policy ID | Account Name/Type | Percentage owned | Current Premium | Estimated Coverage Period |
|-----------|-------------------|------------------|-----------------|---------------------------|
| PE042210 | ELLEN & JOHN TACKETT IND CASH ACCT | 0.82% | $1,633 | 12/21/2016 – 12/21/2017 |

YOU HAVE PREVIOUSLY BEEN NOTIFIED OF ADDITIONAL PREMIUMS DUE ON THE ABOVE-REFERENCED POLICY(IES). THE CONESTOGA TRUST HAS NOT RECEIVED THE REQUIRED REMIUMS FROM YOU. IN ACCORDANCE WITH THE PROVISIONS OF YOUR PARTICIPATION AGREEMENT WITH THE CONESTOGA TRUST, YOUR BENEFICIAL INTEREST IN THE ABOVE-REFERENCED POLICY(IES) HAS BEEN FORFEITED.

PLEASE NOTE: IF YOU PAY THE ADDITIONAL PREMIUM REQUIRED ON THE ABOVE-REFERENCED POLICY(IES) WITHIN THIRTY (30) DAYS FROM THE DATE OF THIS NOTICE, YOU MAY REDEEM OUR FORFEITED BENEFICIAL INTEREST IN SUCH POLICY(IES). IF YOU FAIL TO REDEEM YOUR FORFEITED BENEFICIAL INTEREST IN SUCH POLICY(IES) WITHIN THIRTY (30) DAYS FROM THE DATE OF THIS NOTICE, CONESTOGA WILL ASSUME YOUR INTEREST, AND YOU WILL LOSE ALL RIGHTS WITH RESPECT TO SUCH INTEREST.

In order to redeem your interest in the above-referenced policy(ies), please return the authorization below along with your payment in the enclosed postage-paid return envelope before August 16, 2017. Please make your check payable to **Dunham Trust Company FBO Conestoga Trust** and include on the check for reference the Policy ID listed in the chart above under Policy ID.

Should you have any questions, please contact Strategix Solutions at 702-852-6730 or Conestoga@conestogaconsulting.net

DETACH — TO ENSURE PROPER CREDIT, DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT — DETACH —

ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

Policy ID: PE042210
Account Number: ES12060005

TOTAL PREMIUM DUE: $1,633 before 08/16/17

By enclosing your check for the above-referenced amount, you hereby authorize Conestoga to pay or cause to be paid premiums to the insurance carrier on your behalf. This amount reflects the payment of your pro-rata share of the premiums due on the above-referenced policy.

MAKE CHECK PAYABLE TO: **DUNHAM TRUST COMPANY FBO CONESTOGA TRUST**

SEND TO:
Conestoga Trust
c/o Strategix Solutions. Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

EXHIBIT "8"

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

August 30, 2017

## FORFEITURE NOTICE
## NOTICE OF RIGHT TO REDEEM

BILL TO: ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

| Policy ID | Account Name/Type | Percentage owned | Current Premium | Estimated Coverage Period |
|-----------|-------------------|------------------|-----------------|---------------------------|
| CP051910 | ELLEN & JOHN TACKETT IND CASH ACCT | 0.95% | $2,146.81 | 07/01/2017 – 07/01/2018 |

**YOU HAVE PREVIOUSLY BEEN NOTIFIED OF ADDITIONAL PREMIUMS DUE ON THE ABOVE-REFERENCED POLICY(IES). THE CONESTOGA TRUST HAS NOT RECEIVED THE REQUIRED REMIUMS FROM YOU. IN ACCORDANCE WITH THE PROVISIONS OF YOUR PARTICIPATION AGREEMENT WITH THE CONESTOGA TRUST, YOUR BENEFICIAL INTEREST IN THE ABOVE-REFERENCED POLICY(IES) HAS BEEN FORFEITED.**

**PLEASE NOTE: IF YOU PAY THE ADDITIONAL PREMIUM REQUIRED ON THE ABOVE-REFERENCED POLICY(IES) WITHIN THIRTY (30) DAYS FROM THE DATE OF THIS NOTICE, YOU MAY REDEEM OUR FORFEITED BENEFICIAL INTEREST IN SUCH POLICY(IES). IF YOU FAIL TO REDEEM YOUR FORFEITED BENEFICIAL INTEREST IN SUCH POLICY(IES) WITHIN THIRTY (30) DAYS FROM THE DATE OF THIS NOTICE, CONESTOGA WILL ASSUME YOUR INTEREST, AND YOU WILL LOSE ALL RIGHTS WITH RESPECT TO SUCH INTEREST.**

In order to redeem your interest in the above-referenced policy(ies), please return the authorization below along with your payment in the enclosed postage-paid return envelope before 10/02/2017. Please make your check payable to **Dunham Trust Company FBO Conestoga Trust** and include on the check for reference the **Policy ID** listed in the chart above under Policy ID.

Should you have any questions, please contact Strategix Solutions at 702-852-6730 or Conestoga@cfoconsulting.net

DETACH   —   TO ENSURE PROPER CREDIT, DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT   —   DETACH

ELLEN & JOHN TACKETT IND CASH
ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

**Policy ID:** CP051910
**Account Number:** ES12060005

TOTAL PREMIUM DUE:  $2,146.81 before 10/02/17

By enclosing your check for the above-referenced amount, you hereby authorize Conestoga to pay or cause to be paid premiums to the insurance carrier on your behalf. This amount reflects the payment of your pro-rata share of the premiums due on the above-referenced policy.

MAKE CHECK PAYABLE TO: **DUNHAM TRUST COMPANY FBO CONESTOGA TRUST**

SEND TO:
Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

EXHIBIT "8"

Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road. Suite 190
Las Vegas, NV 89148

August 30, 2017

## FORFEITURE NOTICE
## NOTICE OF RIGHT TO REDEEM

BILL TO: ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

| Policy ID | Account Name/Type | Percentage owned | Current Premium | Estimated Coverage Period |
|-----------|-------------------|------------------|-----------------|---------------------------|
| CP042210 | ELLEN & JOHN TACKETT IND CASH ACCT | 0.95% | $2,146.67 | 07/15/2017-7/15/2018 |

**YOU HAVE PREVIOUSLY BEEN NOTIFIED OF ADDITIONAL PREMIUMS DUE ON THE ABOVE-REFERENCED POLICY(IES). THE CONESTOGA TRUST HAS NOT RECEIVED THE REQUIRED REMIUMS FROM YOU. IN ACCORDANCE WITH THE PROVISIONS OF YOUR PARTICIPATION AGREEMENT WITH THE CONESTOGA TRUST, YOUR BENEFICIAL INTEREST IN THE ABOVE-REFERENCED POLICY(IES) HAS BEEN FORFEITED.**

**PLEASE NOTE: IF YOU PAY THE ADDITIONAL PREMIUM REQUIRED ON THE ABOVE-REFERENCED POLICY(IES) WITHIN THIRTY (30) DAYS FROM THE DATE OF THIS NOTICE, YOU MAY REDEEM OUR FORFEITED BENEFICIAL INTEREST IN SUCH POLICY(IES). IF YOU FAIL TO REDEEM YOUR FORFEITED BENEFICIAL INTEREST IN SUCH POLICY(IES) WITHIN THIRTY (30) DAYS FROM THE DATE OF THIS NOTICE, CONESTOGA WILL ASSUME YOUR INTEREST, AND YOU WILL LOSE ALL RIGHTS WITH RESPECT TO SUCH INTEREST.**

In order to redeem your interest in the above-referenced policy(ies), please return the authorization below along with your payment in the enclosed postage-paid return envelope before 10/02/2017. Please make your check payable to **Dunham Trust Company FBO Conestoga Trust** and include on the check for reference the **Policy ID** listed in the chart above under Policy ID.

Should you have any questions, please contact Strategix Solutions at 702-852-6730 or Conestoga@cfoconsulting.net

DETACH —      TO ENSURE PROPER CREDIT DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT      — DETACH —

ELLEN & JOHN TACKETT IND CASH ACCT
3464 N ARROWHEAD AVE.
SAN BERNADINO, CA 92405

Policy ID: CP042210
Account Number: ES12060005

TOTAL PREMIUM DUE: $2,146.67 before 10/02/2017

By enclosing your check for the above-referenced amount, you hereby authorize Conestoga to pay or cause to be paid premiums to the insurance carrier on your behalf. This amount reflects the payment of your pro-rata share of the premiums due on the above-referenced policy.

MAKE CHECK PAYABLE TO: **DUNHAM TRUST COMPANY FBO CONESTOGA TRUST**

SEND TO:
Conestoga Trust
c/o Strategix Solutions, Ltd.
8880 W. Sunset Road, Suite 190
Las Vegas, NV 89148

EXHIBIT "8"

# EXHIBIT 9

# EXHIBIT 9

February 8, 2017


Ellen O. & John E. Tackett

3464 N. Arrowhead Avenue

San Bernardino, CA 92405


Conestoga Trust

C/o Strategix Solutions, Ltd.

8880 W. Sunset Road, Suite 190

Las Vegas, NV 89148


Dear Sirs;

This response is to the disturbing receipt of a second Required Premium Payment Due billing for Policy ID TC042210JH dated January 16, 2017 which my husband, John and I have sought counsel from a trusted advisor as to the validity of this Premium Call. We are certain this is an oversight on your part and not a breach of the two contracts titled 'Policy Selection Sheet' signed on May 31, 2012 and August 15, 2012.

Upon further review and investigation of these two contracts known as Policy Selection Sheets, we have been advised of a miscalculation on your part of the due dates of Premium Calls. We find no documentation stating any different timeframe other than shown on those two contracts. Policy ID TC042210JH states on the May 31, 2012 contract a 75 month Premium Reserve as well as on the contract dated August 15, 2012 for the same policy of a 75 month timeframe. Using your contract documentation of the May 31, 2012 date, the first Premium Call on Policy ID TC042210JH of 75 months would come due August 31, 2018 and the August 15, 2012 date using the same projections would come due November 15, 2018. Thusly, the timeframe for Policy ID SR053110AE, the first policy we received a Premium Call for, from the May 31, 2012 contract stating a 76.5 month Premium Reserve would be due on October 15, 2018 and from the August 15, 2012 stating the same 76.5 would be December 31, 2018.

We will not pay any monies incorrectly billed by your company due to these miscalculations. We have received threatening letters from your representative company, Strategix Solutions, Ltd. in regards to the incorrect billing of Policy ID SR053110AE pressuring us to redeem the inherited monies upon my mother's death in February of 2012 that we chose trustingly to invest with Conestoga Trust through premium payment and noted in bold, capital lettering that if we do not comply by the payment date of February 20, 2017 as indicated on the Required Premium Payment Due notice for Policy ID SR053110AE, Conestoga will make such payment and after a 30-day grace period in which we have the opportunity to redeem our interest Conestoga Trust will then assume ownership. We can only presume if we do not make payment billed for Policy ID TC042210JH by the February 20, 2017 date stated on the miscalculated and incorrectly billed notice that the same threatening divisive letter will be mailed. As

1

stated above, we choose to believe this is a miscalculation and an oversight on your part and not a breach of the two contracts we signed as we could easily assume them to be as this is how they appear.

As we are very uncomfortable with this action taken by your company, we are demanding written confirmation that our policy TC042210JH is intact and that the true Life Expectancy premium date will be explained fully and comprehensively in this letter. We further demand a like accounting for the first policy SR053110AE upon which we received a Required Premium Payment Due notice in October of 2016 and the Second and Final Notice giving us until November 20, 2016 with the 30-day grace period to redeem our interest in our investment is also intact. As our full confidence and trust in all the contracts into which we entered with your company are in such a precarious position at the writing of this response, we further demand a full review and account for all our paperwork in writing for all the policies we have invested in to be sent to us within 30 days of the date of this response to you being March 10, 2017. Attached for your convenience you will find copies of said contract documents listing the Policy ID numbers and information provided by Conestoga Settlement Services, LLC. as of the date shown of 03/2012.

If we do not find full satisfaction in the security of our invested inheritance monies of $30,000.00 on May 31, 2012 and $220,000.00 on August 15, 2012, made with Conestoga Settlement Services, LLC. C/o Strategix Solutions, Ltd., and affiliated parties of Provident Trust Group (Account ES12060005), and Dunham Trust Company FBO Conestoga Trust, we will be forced to contact federal and state agencies to ensure we are protected and have not become the victims of an illegal insurance fraud scheme.

We further have been advised by our trusted counsel due to our comfortability of the security of our inherited monies and our effort to create a stable retirement income for our future that we should consider a possible full cash-out of the entire investment. We also have friends and colleagues who we are aware have invested with your company as well, have been challenged in the same manner and in which we remain in conferring contact in this matter who we understand have received satisfaction.

Thank you for your prompt response in advance.

Respectively,

Ellen O. & John E. Tackett

2

EXHIBIT "9"

# EXHIBIT 10

# EXHIBIT 10

June 8, 2012


PROVIDENT Trust
GROUP

ELLEN O. AND JOHN E. TACKETT
3464 N Arrowhead Ave.
San Bernadino, CA 92405

Re:    Provident Group Acct # **ES12060005**  ELLEN O. AND JOHN E. TACKETT INDEPENDENT ACCOUNT

Dear ELLEN O. AND JOHN E. TACKETT,

We are pleased to welcome you to Provident Trust Group ("PTG"). As Custodian for your Independent Account and Escrow Agent for Conestoga Settlement Services, LLC ("CSS"), we have received and deposited funds per the Policy Selection sheet you submitted.  As noted below, your total deposits have been allocated to the following CSS escrow accounts in the increments shown:

| Policy Code # | Face Amount | Insurance Companies | Age & Gender of Insured | Life Expectancy (months) | Premiums In Escrow (months) | Client Participation | Payout At Maturity |
|---|---|---|---|---|---|---|---|
| 1.  TC042210JH | $10,000,000 | John Hancock | 79.5M | 39 | 75 | $7,500.00 | $10,912.50 |
| 2.  SR053110AE | $10,000,000 | AXA Equitable | 78.5M | 40.5 | 76.5 | $7,500.00 | $11,043.75 |
| 3.  BH051510JH | $7,000,000 | John Hancock | 77.6M | 50.5 | 80.5 | $5,000.00 | $7,945.83 |
| 4.  CP042210AE | $5,000,000 | AXA 6036 | 80.5F | 50.5 | 86.5 | $5,000.00 | $7,945.83 |
| 5.  CP051910AE | $5,000,000 | AXA 7278 | 80.5F | 50.5 | 86.5 | $5,000.00 | $7,945.83 |
| 6.  WM051510LN | $5,000,000 | Lincoln National | 79.4F | 54 | 84 | | $0.00 |
| 7.  PE042210PF | $5,000,000 | Principal | 77.7M | 55.5 | 85.5 | | $0.00 |
| 8.  ZJ042210LN | $5,000,000 | Lincoln National | 75.3M | 55.5 | 85.5 | | $0.00 |
| | $52,000,000 | | | | | $30,000.00 | $45,793.75 |

NOTE:  Please remember that Exhibit A of your Life Insurance Policy Funding Agreement allowed CSS to replace any unavailable policies with another life insurance policy on the life of an insured with a similar life expectancy to that of such withdrawn policy.  If you would like to reject any of the policies listed above, you must notify PTG by fax at 702.253.7565 or by e-mail at conestoga@providentira.com within ten (10) business days of receiving this letter.  You will then be allowed to choose an alternative existing policy.  Enclosed is a copy of the policy selections currently available.  If we do not receive a rejection notice within the required timeframe, all policy selections will become FINAL.

Toll Free: 888.855.9856
Fax: 702.253.7565
info@trustprovident.com

8880 W. Sunset Rd., Ste 250
Las Vegas, NV 89148
www.trustprovident.com

EXHIBIT "10"